1   G. WHITNEY LEIGH (SBN 153457)
    GONZALEZ & LEIGH, LLP
2   744 Montgomery Street, Fifth Floor
    San Francisco, CA  94111
3   Telephone:  415-912-5950
    Facsimile:  415-912-5951
4
    Attorney for Plaintiffs
5   DENIZ BOLBOL and SHANNON CAMPBELL

6   DAVID J. BEAUVAIS (SBN 84275)
    LAW OFFICE OF DAVID J. BEAUVAIS
7   409-13th Street, 20th Floor
    Oakland, CA  94612
8   Telephone:  510-832-3605
    Facsimile:  510-832-3610
9
    Attorney for Plaintiff
10  MARK ENNIS

11  JOSEPH P. CUVIELLO
    P.O. Box 2834
12  Redwood City, CA  94064
    Telephone:  650-654-9955
13
    Plaintiff In Pro Se
14
                    UNITED STATES DISTRICT COURT
15
                    EASTERN DISTRICT OF CALIFORNIA
16
    JOSEPH P. CUVIELLO, DENIZ BOLBOL,        Case No.
17  SHANNON CAMPBELL AND MARK
    ENNIS, individually,                     **COMPLAINT FOR INJUNCTIVE AND**
18                                           **DECLARATORY RELIEF AND**
                         Plaintiffs,         **DAMAGES**
19        v.

20  CAL EXPO, a public entity, CAL EXPO
    GENERAL MANAGER NORBERT
21  BARTOSIK, CAL EXPO DEPUTY
    GENERAL MANAGER BRIAN MAY,
22  CAL EXPO POLICE CHIEF ROBERT
    CRAFT, CAL EXPO POLICE SERGEANT
23  WALTON, CAL EXPO POLICE OFFICER
    MAYES, CAL EXPO POLICE OFFICER
24  WHITTINGTON, CAL EXPO POLICE
    OFFICER MENARD, CAL EXPO POLICE
25  OFFICER ROBILLARD, CAL EXPO
    POLICE OFFICER TARTARSIK, and
26  DOES 1-20, in their individual and official
    capacities, Jointly and Severally,
27
                         Defendants.
28

1    Plaintiffs, for their Complaint against Defendants, state as follows:

2                                **JURISDICTION**

3        1.      This is a civil rights action arising from Defendants' unreasonable seizure of

4    Plaintiffs on May 20, 2011, and violation of Plaintiffs' rights to freedom of speech, press,

5    assembly, association, and conscience, in connection with the Carson & Barnes Circus between:

6    (1) May 20- May 22, 2011 at the Cal Expo, in the City of Sacramento, Sacramento County,

7    California; (2) May 23-May 26, 2011 at the Westfield Solano Mall, in Fairfield, California; and

8    (3) May 27-28, 2011 at the San Joaquin Fairgrounds, in Stockton, California.  This action is

9    brought pursuant to 42 USC §§ 1983, 1985 and 1988, and the First, Fourth and Fourteenth

10   Amendments to the United States Constitution.  Jurisdiction is founded upon 28 USC §§ 1331

11   and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

12   Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 USC §1367 to

13   hear and decide claims arising under state law.

14                        **INTRADISTRICT ASSIGNMENT**

15       2.      All of the events and/or omissions complained of herein occurred in the Cities of

16   Sacramento in Sacramento County, California, Fairfield in San Joaquin County, California and

17   Stockton in San Joaquin County, California and this action is properly assigned to the

18   Sacramento Division of the United States District Court for the Eastern District of California.

19       3.      Plaintiffs have complied with the California Government Tort Claims Act Section

20   910, et seq.

21                               **INTRODUCTION**

22       4.      This complaint seeks relief against Defendants based on their May 20, 2011,

23   arrest of Plaintiffs, while Plaintiffs were engaged in constitutionally protected free speech and

24   press activity, and Defendants' continued violation of Plaintiffs' constitutionally protected rights

25   at the Cal Expo, in Sacramento, California, from May 20 through May 22, 2011, at the Westfield

26   Solano Mall, in Fairfield, California, from May 23 through May 26, 2011 and at the San Joaquin

27   Fairgrounds, in Stockton, California, from May 27-28, 2011.

28   / /

5.      This complaint requests monetary damages, declaratory and injunctive relief against Government Defendants for committing acts under color of law, which deprived Plaintiffs of rights secured by the United States and California Constitutions and the laws of the United States and the State of California; for conspiring for the purpose of impeding and hindering the due course of justice with the intent to deny Plaintiffs equal protection of laws; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

6.      Government Defendants, while acting in their capacities as General Manager, Deputy General Manager, Cal Expo Police Chief and police officers of Cal Expo, in the City of Sacramento, California, deprived Plaintiffs of their liberty without due process of law, thereby depriving Plaintiffs of their rights, privileges and immunities as guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 1, Article I, Section 2(a), Article I, Section 7(a), and Article I, Section 13 of the California Constitution.

**PARTIES AND PROCEDURE**

7.      Each Plaintiff herein is a resident of the State of California.

8.      Defendant CAL EXPO is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Cal Expo which employs other defendants in this action. The State of California owns and/or controls the Cal Expo.

9.      DEFENDANT CAL EXPO operates, manages, directs, and/or controls the Cal Expo.

10.     DEFENDANTS CAL EXPO GENERAL MANAGER NORBERT BARTOSIK, CAL EXPO DEPUTY GENERAL MANAGER BRIAN MAY, CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD and CAL EXPO POLICE OFFICER TARTARSIK, are individuals who were at all material times employed as managers

/ /

1   and law enforcement officers by DEFENDANT CAL EXPO, and were acting within the course

2   and scope of their employment.

3        11.    DOES 1-20, on information and belief, were at all material times persons

4   employed by and/or business entities doing business at or around the Cal Expo, Sacramento,

5   California.  Plaintiffs are further informed and believe, and thereon allege that at all material

6   times these Defendants owned, operated, managed, directed, controlled, and/or employed other

7   defendants in this action.  The true names and capacities of these Defendants are unknown to

8   Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will seek

9   leave to amend this complaint to show their true names and capacities when the same are

10  ascertained.

11       12.    Plaintiffs are informed and believe and thereon allege that each of the Defendants

12  sued herein was negligently, wrongfully, and otherwise responsible in some manner for the

13  events and happenings as hereinafter described, and proximately caused injuries and damages to

14  Plaintiffs.  Further, one or more Doe defendants were at all material times responsible for the

15  hiring, training, supervision, and discipline of other defendants, and/or directly responsible for

16  violation of Plaintiffs' rights.

17       13.    Each individual defendant is sued in his/her individual and official capacities.

18       14.    Plaintiffs are informed and believe, and thereon allege, that each of the defendants

19  was at all material times a managing agent, agent, servant, employee, partner, joint venturer, co-

20  conspirator, and/or alter ego of the remaining defendants, and in doing the things herein alleged,

21  was acting within the course and scope of that relationship.  Plaintiffs are further informed and

22  believe, and thereon allege, that each of the defendants herein gave consent, aid, and assistance

23  to each of the remaining defendants, and ratified and/or authorized the acts or omissions of each

24  defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

25       15.    At all material times, each defendant was jointly engaged in tortious activity,

26  resulting in the deprivation of Plaintiffs' Constitutional rights and other harm.

27       16.    At all material times, each defendant acted under color of the laws, statutes,

28  ordinances, and regulations of the State of California.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1    17.    At all material times, DEFENDANTS CAL EXPO GENERAL MANAGER

2    NORBERT BARTOSIK, CAL EXPO DEPUTY GENERAL MANAGER BRIAN MAY, CAL

3    EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL

4    EXPO POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL

5    EXPO POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD and CAL

6    EXPO POLICE OFFICER TARTARSIK, and Does 1-20 acted pursuant to the actual customs,

7    policies, practices and procedures of DEFENDANT CAL EXPO.

8    18.    This complaint may be pled in the alternative pursuant to FRCivP 8(e)(2).

9    **FACTUAL ALLEGATIONS**

10   19.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

11   here.

12   20.    PLAINTIFFS JOSEPH CUVIELLO, DENIZ BOLBOL, SHANNON

13   CAMPBELL and MARK ENNIS are members of Humanity through Education, a San Francisco

14   Bay Area grassroots group dedicated to the humane treatment of animals and educating the

15   public about the abuse and mistreatment of animals in circuses.

16   21.    Plaintiffs' speech and association includes holding signs and banners, exhibiting

17   video footage of various circuses' treatment of different animals, and offering leaflets with

18   information about the condition and treatment of animals kept by circuses. Plaintiffs' speech also

19   includes videotaping said treatment of animals used by circuses.  Plaintiffs use the videotape to

20   educate the public, and provide news media information about the abuse and mistreatment of

21   animals by circuses.

22   22.    Plaintiffs' speech and association is on matters of great public concern locally,

23   nationally, and internationally – the abuse and mistreatment of animals, including but not limited

24   to endangered species, tigers, and Asian elephants – by circuses and other "entertainment"

25   entities.

26   23.    Plaintiffs have documented many instances of animal abuse and mistreatment

27   committed by circuses over the years.  Plaintiffs use the evidence they document on video to

28   speak out against these abuses of animals, and to associate with others for the purpose of

4
**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  expressing their views and educating people about the issue of abuse and mistreatment of

2  animals used in circuses.

3       24.     Additionally, Plaintiffs use their videos to speak to the media and provide news

4  and law enforcement organizations with information about the abuse and mistreatment of

5  animals.

6       25.     Plaintiffs' videotapes have been used and broadcast by local and national news

7  media, including but not limited to *ABC World News Tonight with Peter Jennings,* NBC Channel

8  3 News, KGO TV, CBS Channel 5 News, ABC 7 News, KRON 4 News, *Mornings on 2,* in

9  addition to news organizations in other markets, such as San Diego and Connecticut.

10       26.     On April 26 and 27, 2011, Plaintiffs demonstrated against the Carson &Barnes

11  Circus without incident on the San Benito County Fairgrounds, a publicly owned property in

12  Hollister, California. The San Benito County Fairgrounds is the 33rd District Agricultural

13  Association owned by the State of California.

14       27.     On April 28 thru May 1, 2011, Plaintiffs demonstrated against the Carson &

15  Barnes Circus without incident at the Northridge Mall, a privately owned property in Salinas

16  California.

17       28.     On May 2 and 3, 2011, Plaintiffs demonstrated against the Carson &Barnes

18  Circus without incident on the Contra Costa Fairgrounds, a publicly owned property in Antioch,

19  California. The Contra Costa Fairgrounds is the 23rd District Agricultural Association owned by

20  the State of California.

21       29.     On May 12 and 15, 2011, Plaintiffs demonstrated against the Carson &Barnes

22  Circus without incident at the Fruit Yard, a privately owned property in Modesto, California.

23       30.     From May 20 through May 22, 2011, the Carson & Barnes Circus leased Parking

24  Lot A at the Cal Expo and set-up and performed in parking Lot A at the Cal Expo in Sacramento,

25  California.

26       31.     The Cal Expo complex is public property, owned by the State of California.

27       32.     The parking lots and pedestrian walkways at the Cal Expo are traversed by the

28  public to attend events at the arena.

33.     The parking lots and pedestrian walkways outside Cal Expo are public fora.

*Events Of May 20, 2011*

34.     On May 20, 2011, at approximately 3:07 p.m. PLAINTIFFS CUVIELLO and BOLBOL faxed a letter to DEFENDANTS CAL EXPO GENERAL MANAGER NORBERT BARTOSIK and CAL EXPO POLICE CHIEF ROBERT CRAFT informing them of their intention to demonstrate against the Carson & Barnes Circus' use of animals, at the Cal Expo from May 20-May 22, 2011. The letter listed PLAINTIFFS CUVIELLO and BOLBOL as the persons to contact if DEFENDANTS BARTOSIK and CRAFT had any questions or comments.

35.     While PLAINTIFFS CUVIELLO, BOLBOL and CAMPBELL were driving from San Mateo, California, to the Cal Expo in Sacramento, PLAINTIFF BOLBOL received a phone call from DEFENDANT CAL EXPO DEPUTY GENERAL MANAGER BRIAN MAY. The phone call was transferred to the Bluetooth connection in PLAINTIFFS CUVIELLO and BOLBOL's car so that PLAINTIFF CUVIELLO could listen and participate in the phone conversation. DEFENDANT MAY told PLAINTIFFS CUVIELLO and BOLBOL that Cal Expo's policy is that demonstrators should apply for a permit 72 hours in advance of their demonstration and because PLAINTIFFS CUVIELLO and BOLBOL had not applied for a permit 72 hours in advance of their demonstration they would not be allowed on the Cal Expo property for purposes of demonstrating against the circus.

36.     PLAINTIFFS CUVIELLO and BOLBOL informed DEFENDANT MAY that Plaintiffs had a constitutional right to access Cal Expo property for purposes of demonstrating and that the permit requirement was unconstitutional as Cal Expo property is publicly-owned property freely open to the public. DEFENDANT MAY reiterated his position and also informed Plaintiffs that their letter mistakenly referred to Cal Expo as the 52nd District Agricultural Association and that Cal Expo has their own "Free Speech Guidelines" which could be accessed online.  PLAINTIFF CUVIELLO assured Mr. MAY that although Plaintiff may have inadvertently referred to Cal Expo, in his letter, as the 52nd District Agricultural Association, Plaintiff did download and read Cal Expo's "Free Speech Guidelines" and the "Free Speech

/ /

1  Guidelines" referenced in Plaintiffs' letter to Cal Expo were Cal Expo's "Free Speech

2  Guidelines." All parties reiterated their positions and the conversation ended.

3       37.     A short time after their conversation with DEFENDANT MAY, CUVIELLO

4  picked-up PLAINTIFF MARK ENNIS and informed him of their conversation with

5  DEFENDANT MAY.

6       38.     When PLAINTIFFS JOSEPH P. CUVIELLO, DENIZ BOLBOL, SHANNON

7  CAMPBELL AND MARK ENNIS arrived at the Cal Expo in Sacramento, California, they

8  parked their car on Heritage Lane, across the street from Cal Expo's main entrance on Exposition

9  Boulevard. Plaintiffs grabbed their demonstration signs, banners, aprons, leaflets and their video

10 cameras and walked towards the main entrance. As Plaintiffs crossed the street and walked onto

11 Cal Expo property they were greeted by DEFENDANT CAL EXPO POLICE OFFICER

12 MAYES, who was sitting in the driver's seat of a Cal Expo police car near the entrance to the

13 Cal Expo.

14      39.     DEFENDANT MAYES asked Plaintiffs if they were going to do some protesting

15 and after PLAINTIFF CUVIELLO answered yes DEFENDANT MAYES asked if Plaintiffs got

16 a permit from Cal Expo to protest. PLAINTIFF CUVIELLO informed DEFENDANT MAYES

17 that the permit requirement was an unconstitutional policy and DEFENDANT MAYES told

18 Plaintiffs that they were not allowed to access Cal Expo property but that Plaintiffs could

19 demonstrate on the public sidewalk. PLAINTIFF CUVIELLO then repeatedly asked MAYES

20 what would happen if Plaintiffs access the property for the purpose of demonstrating.

21 DEFENDANT MAYES just kept repeating that Plaintiffs could not be there, so PLAINTIFF

22 CUVIELLO informed MAYES that he was going onto the property and DEFENDANT MAYES

23 said if that's what you choose to do. PLAINTIFFS CUVIELLO, BOLBOL and CAMPBELL

24 walked onto the Cal Expo property, and proceeded towards the circus tent in parking Lot A.

25      40.     PLAINTIFF MARK ENNIS remained and continued the conversation with

26 DEFENDANT MAYES. PLAINTIFF ENNIS asked MAYES what would happen if the activists

27 entered the Cal Expo property and MAYES told ENNIS that the activists would be asked to

28 leave and if they did not leave they would be cited for trespassing. Soon after, PLAINTIFF

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1    ENNIS walked onto the Cal Expo property and joined up with PLAINTIFFS CUVIELLO,

2    BOLBOL and CAMPBELL and informed them of what DEFENDANT MAYES had told him.

3         41.    When Plaintiffs reached the circus tent in parking Lot A, they were met by some

4    other circus demonstrators who informed PLAINTIFF CUVIELLO that they were told they

5    could not be on the property, even to videotape. Soon after DEFENDANT CAL EXPO POLICE

6    OFFICER TARTARSIK told PLAINTIFF CUVIELLO that the demonstrators were not allowed

7    on the Cal Expo property without a permit, but could demonstrate on the sidewalk out front.

8    PLAINTIFF CUVIELLO informed TARTARSIK that he had a constitutional right to

9    demonstrate on the Cal Expo property and told TARTARSIK that if he was going to threaten

10   Plaintiffs with arrest they will leave but if he is not going to arrest Plaintiffs they won't leave.

11   TARTARSIK told PLAINTIFF CUVIELLO that it all depends what the chief wants and

12   PLAINTIFF CUVIELLO told TARTARSIK that he hopes the Cal Expo police warn them before

13   arresting them. TARTARSIK responded that Plaintiffs have already been warned and

14   CUVIELLO asked TARTARSIK if he was threatening him with arrest. TARTARSIK said "no,

15   I'm not."  PLAINTIFF CUVIELLO informed TARTARSIK that he did not want to be arrested

16   and asked TARTARSIK to inform him if the Cal Expo police intended to arrest him.

17   DEFENDANT TARTARSIK again told PLAINTIFF CUVIELLO to consider yourself warned.

18        42.    PLAINTIFFS stood, with approximately seven other demonstrators, in parking

19   Lot A, near the entrance to the circus, and peacefully and without interference, held signs and

20   banners, and offered circus patrons leaflets and videotaped the animals used by the circus for

21   approximately one and one half hours. During this time a police officer in a police car sat near

22   the entrance to parking Lot A.

23        43.    Shortly before the end of the demonstration, PLAINTIFFS CAMPBELL and

24   ENNIS walked down a road connected to parking Lot A, adjacent to the circus tent, to videotape

25   the animals used by the circus. PLAINTIFFS CAMPBELL and ENNIS did not cross any

26   barriers, ropes, or warning tape on the road, and did not experience any problems while

27   videotaping from this road.

28   //

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

44.     During this time PLAINTIFF CUVIELLO witnessed a man walking a dog on the dirt area adjacent to the same road and a man on a bike traveling down the same road.

45.     At approximately 7:40 p.m. PLAINTIFFS JOSEPH P. CUVIELLO and DENIZ BOLBOL informed the other demonstrators that the demonstration was over for the day and began to pack up their materials, while the other demonstrators dispersed and left the property.

46.     Just after PLAINTIFFS CUVIELLO and BOLBOL picked –up their bag of signs, two banners, aprons and leaflets, and started to walk out of the Cal Expo parking Lot A, approximately six Cal Expo police cars drove up to Plaintiffs from different aisles of the parking lot. At this time PLAINTIFF BOLBOL called PLAINTIFFS CAMPBELL and ENNIS and informed them that the police had surrounded her and PLAINTIFF CUVIELLO.

47.     DEFENDANTS CAL EXPO POLICE CHIEF ROBERT CRAFT and SERGEANT WALTON approached PLAINTIFFS CUVIELLO and BOLBOL and asked them for identification. PLAINTIFF CUVIELLO asked why and CHIEF CRAFT stated because Plaintiff was asked to leave earlier and did not. PLAINTIFF CUVIELLO handed CHIEF CRAFT his driver's license identification and PLAINTIFF BOLBOL told CHIEF CRAFT she did not have any identification on her.

48.     CHIEF CRAFT told PLAINTIFF CUVIELLO to put down the two banners he was holding and PLAINTIFF CUVIELLO complied. CHIEF CRAFT then handed CUVIELLO'S identification to WALTON, who walked off. PLAINTIFF BOLBOL asked CHIEF CRAFT what she was being detained for and CHIEF CRAFT told her and PLAINTIFF CUVIELLO that they were trespassing and walked off. CUVIELLO asked DEFENDANT WHITTINGTON if he was being arrested and WHITTINGTON said he did not know. PLAINTIFF CUVIELLO started to walk over to ask CHIEF CRAFT if he was under arrest, and at this time DEFENDANT MAYES and another officer approached PLAINTIFF CUVIELLO and told him to put the camera down;  CUVIELLO asked why and MAYES told CUVIELLO he was being arrested. PLAINTIFF CUVIELLO asked what he was being arrested for and DEFENDANT MAYES told him trespassing. CUVIELLO asked what section of Penal Code

/ /

1   602 and MAYES refused to inform him of the section. The officers grabbed CUVIELLO's arms

2   and twisted them behind his back, took his camera and placed handcuffs on his wrists.

3        49.      At this same time two officers grabbed PLAINTIFF BOLBOL's arms and, using

4   excessive force, started twisting her arms behind her back and pushing her to the ground.

5   PLAINTIFFS ENNIS and CAMPBELL walked up to where the officers were arresting

6   CUVIELLO and BOLBOL and witnessed BOLBOL screaming in pain as the three officers were

7   twisting her arms behind her back, pushing her to the ground, taking her camera and placing

8   handcuffs on her wrists.

9        50.      As PLAINTIFF ENNIS was videotaping the officers arresting BOLBOL,

10  DEFENDANT CAL EXPO POLICE SERGEANT WALTON grabbed, with both hands,

11  ENNIS's hand and the camera he was holding in his hand, and demanded that ENNIS give him

12  the camera. ENNIS attempted to comply but SERGEANT WALTON forced PLAINTIFF

13  ENNIS's hand toward the ground and shook his hand until the camera slipped out of ENNIS's

14  hand and onto the ground.

15       51.      SERGEANT WALTON picked-up the camera and told ENNIS to put his hands

16  behind his back and ENNIS complied. As SERGEANT WALTON was placing handcuffs on

17  ENNIS's wrists, ENNIS asked what he was being arrested for and SERGEANT WALTON told

18  him 602. ENNIS asked what section of 602 and SERGEANT WALTON told him it would be

19  determined later.

20       52.      At this same time PLAINTIFF CAMPBELL also had her camera taken from her

21  and was being arrested and handcuffed.

22       53.      After being handcuffed, PLAINTIFFS ENNIS and CUVIELLO were frisked and

23  some of their personal possessions, such as cell phones and car keys were confiscated. While

24  SERGEANT WALTON was putting  ENNIS into his car he was ordered by CHIEF CRAFT to

25  put ENNIS into the back of DEFENDANT MAYES' car and pointed to ENNIS and said 602.

26  CHIEF CRAFT then pointed to PLAINTIFFS CUVIELLO, BOLBOL AND CAMPBELL and

27  said 602 for each of them.

28  //

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

54.     PLAINTIFFS ENNIS and CUVIELLO were put into the backseat of a police car driven by DEFENDANT MAYES and PLAINTIFFS BOLBOL and CAMPBELL were put into the backseat of another police car driven by DEFENDANT OFFICER WHITTINGTON.  All Plaintiffs were driven to the Cal Expo Police station, approximately three minutes away.

55.     On the ride to the police station PLAINTIFF CUVIELLO told DEFENDANT MAYES that he was being illegally arrested and MAYES said he was just doing his job. CUVIELLO told MAYES that his job was to enforce the law and by arresting him MAYES was violating the law. CUVIELLO also told MAYES that since the alleged crime was a non-violent non-drug related crime we all should be cited and released.

56.     When all Plaintiffs arrived at the Cal Expo police station they were all taken inside the front area of the police station, told to sit on a bench and then handcuffed to the bench.

57.     Once inside the police station, PLAINTIFF CUVIELLO told the officers that because Plaintiffs were being arrested for a non-violent, non-drug related crime they should be cited and released as per law. DEFENDANT MAYES told CUVIELLO that Cal Expo Police were not going to cite and release Plaintiffs because they were likely to continue to commit the alleged crime if they were cited and released. MAYES then told Plaintiffs they would be transferred to the Sacramento Jail and cited and released from there. PLAINTIFF CUVIELLO asked MAYES why he thought Plaintiffs were likely to continue to commit the alleged crime when: (1) there were no more circus performances scheduled for the night; and (2) Plaintiffs were actually leaving the property when Cal Expo police arrested them. PLAINTIFF BOLBOL then asked DEFENDANT MAYES: if he thinks Plaintiffs are likely to continue committing the alleged crime if Cal Expo police cites and releases them, why isn't the Cal Expo police concerned that Plaintiffs are likely to continue committing the alleged crime when they are cited and released from the Sacramento Jail. MAYES didn't answer either question but simply reiterated that Plaintiffs were likely to continue to commit the alleged crime if Cal Expo cited and released them.

58.     For the next one and one-half to two hours, DEFENDANT OFFICERS WHITTINGTON, MENARD, MAYES and ROBILLARD asked personal questions of

PLAINTIFFS BOLBOL, CAMPBELL, ENNIS and CUVIELLO, respectively, and filled out the

citation for each one of the Plaintiffs.

59.     During this time, all of Plaintiffs' confiscated personal property, including

demonstration materials and cameras, were brought into the police station. PLAINTIFF

CUVIELLO asked what was going to happen to Plaintiffs' property and was told that Plaintiffs

would be given a receipt for their property and anything that would not fit into an,

approximately, eight inch by eight inch plastic zip-lock bag would have to picked-up by

Plaintiffs during weekday business hours, 9 a.m. to 4 p.m. Plaintiffs were told that everything in

the plastic bags would be transferred, along with Plaintiffs, to the Sacramento County Jail and

returned to Plaintiffs upon release. DEFENDANT MAYES told Plaintiffs that their cameras

would be placed into the plastic bags and their videotapes (two from PLAINTIFF CUVIELLO

and one from PLAINTIFF ENNIS), along with CUVIELLO's personal legal papers, one apron

and a stack of leaflets, would be booked into evidence.

60.     At one point DEFENDANT OFFICER ROBILLARD took PLAINTIFF

CUVIELLO into a nearby room and read him his Miranda rights and asked if he understood

them. CUVIELLO told ROBILLARD that he did understand his rights, and when ROBILLARD

asked CUVIELLO if he wished to make a statement CUVIELLO declined.

61.     After PLAINTIFF CUVIELLO was returned to the front area of the police station

and re-handcuffed to the bench, Plaintiffs, concerned that their video evidence would not be

preserved, asked if they would be given a receipt for their videotapes. DEFENDANT MAYES

told them they would not be given a receipt for the videotapes. At this point, PLAINTIFF

CUVIELLO asked DEFENDANT ROBILLARD if he could go ahead and make a statement

because he wanted to put on the record that three videotapes were confiscated from Plaintiffs.

ROBILLARD did not respond. PLAINTIFF ENNIS also requested to make a statement

regarding his videotape but DEFENDANT WALTON refused his request.

62.     Between, approximately, 10 and 10:30 p.m. PLAINTIFFS CUVIELLO and

ENNIS were taken to the Sacramento County Jail by DEFENDANT MENARD and

PLAINTIFFS BOLBOL and CAMPBELL were taken to the Sacramento County Jail by

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1   DEFENDANT WHITTINGTON. Plaintiffs were not given a receipt for their banners, signs and

2   leaflets that were confiscated by DEFENDANT OFFICERS.

3        63.    BOLBOL and CAMPBELL were released from the Sacramento County Jail at

4   approximately 5 a.m. the next morning, CUVIELLO was released from the Sacramento County

5   Jail at approximately 5:30 a.m. the next morning and ENNIS was released from the Sacramento

6   County Jail at approximately 9:45 a.m. the next morning.

7        64.    Upon their release all Plaintiffs were given an "Agreement To Appear" form

8   which informed them that they had been arrested for violation of California Penal Code Sections

9   602(o), 602.1(a) and 602.6.

10       65.    From the time Plaintiffs were arrested, until the time of their release, all Plaintiffs

11  were emotionally distressed by the loss of their liberty and their property, the uncertainty of their

12  release and the environment of their confinement.

13       ***Events Of May 21-22, 2011***

14       66.    After PLAINTIFFS CUVIELLO, BOLBOL and CAMPBELL were released from

15  the Sacramento County Jail, on Saturday morning, May 21, 2011, they were feeling distressed

16  because they had scheduled a 3 p.m. and a 6 p.m demonstration against the circus at the Cal

17  Expo that day, and their demonstration materials, i.e., signs and banners, which were made

18  specifically to target the Carson & Barnes Circus, had been confiscated by the Cal Expo police,

19  who told Plaintiffs they could only pick them up during the weekday business hours from 9 a.m.

20  to 4 p.m. Plaintiffs frantically called a friend to ask her to print up a few Carson & Barnes

21  specific signs and she agreed, but the signs were inferior to Plaintiffs' confiscated signs.

22       67.    At approximately 8:30 a.m., PLAINTIFFS CUVIELLO, BOLBOL and

23  CAMPBELL drove to CUVIELLO and BOLBOL'S home in San Mateo County to take care of

24  their dogs and cats and to pick up some inferior generic demonstration materials, i.e., banners

25  and signs. At approximately 9:30 am PLAINTIFF ENNIS was released from the Sacramento

26  County Jail and remained in Sacramento to attend the circus demonstration later that day. At

27  approximately 12:30 p.m., CUVIELLO, BOLBOL and CAMPBELL drove back to the Cal Expo

28  / /

1 in Sacramento to host the 3 p.m. demonstration, where they met up with ENNIS and other

2 demonstrators.

3       68.     When PLAINTIFFS CUVIELLO, BOLBOL and CAMPBELL arrived at Cal

4 Expo at approximately 3:10 p.m. they parked their car on Heritage Lane, across the street from

5 Cal Expo's main entrance on Exposition Boulevard. Plaintiffs grabbed their demonstration signs,

6 banners, leaflets and their video cameras and walked towards the main entrance, where they met

7 other demonstrators. Plaintiffs informed the demonstrators of the arrests the night before and told

8 them they would be relegated to demonstrating on the public sidewalk outside the Cal Expo, far

9 away from the circus.

10      69.     During the 3:00 p.m demonstration the Cal Expo police continually harassed,

11 threatened and intimidated Plaintiffs and other demonstrators. During the demonstration

12 PLAINTIFF CUVIELLO set down a bag of signs on the public sidewalk and leaned it against

13 the light pole that was situated in the grass right next to the public sidewalk. DEFENDANT

14 POLICE CHIEF CRAFT walked up to CUVIELLO and told him to move his bag of signs off of

15 the pole because the pole was on state property. CHIEF CRAFT then informed CUVIELLO that

16 if any of the demonstrators crossed onto Cal Expo property they would be arrested for

17 trespassing.

18      70.     The Cal Expo officers, including DEFENDANT CHIEF CRAFT and OFFICER

19 ROBILLARD, told Plaintiffs and the other demonstrators that there was a State property line

20 running along the public sidewalk and through the roadway areas, next to the sidewalk, that the

21 demonstrators were not allowed to cross.  When CUVIELLO asked the officers to clearly mark

22 the state property line in the roadways and on the public sidewalk so he, and the other

23 demonstrators, could avoid arrest for trespassing, CHIEF CRAFT told CUVIELLO that they

24 didn't have to mark a line, and continued to tell Plaintiffs and other demonstrators that certain

25 areas, such as the crosswalks and crosswalk buttons were on state property. Plaintiffs and other

26 demonstrators were very concerned and upset that, because the Cal Expo police would not

27 clearly mark the line they did not want Plaintiffs and other demonstrators to cross, they might be

28 arrested by Cal Expo police officers for crossing the invisible property line.

71.     At one point PLAINTIFF ENNIS being unaware of DEFENDANT CRAFT'S demand that demonstrators not cross the invisible property line, crossed the road using the marked cross walk. As ENNIS approached the sidewalk CRAFT told ENNIS he would be arrested if he didn't leave the area. ENNIS fearing being arrested for trespassing retreated back across the street and remained there until he was informed, a short time later, by CUVIELLO that KRAFT stated there was a State property line but refused to clarify where the line actually was. As a result ENNIS was forced to cross the road outside the marked crosswalk to avoid being arrested

72.     A short time after, two Sacramento police officers approached PLAINTIFF CUVIELLO and told him that they will not supercede DEFENDANT CRAFT'S order to the deomnstrators. Sacramento police officer Redlich, also, would not tell CUVIELLO where the property line was and if CHIEF CRAFT'S order to CUVIELLO to remove his bag of signs from the light pole was legal.  Officer Redlich told PLAINTIFFS CUVIELLO and BOLBOL that he would call his watch commander but Plaintiffs never heard from the watch commander.

73.     Later that day, at the 6 p.m. demonstration, the Cal Expo police were present but did not approach Plaintiffs or other demonstrators.

74.     On Sunday, May 22, 2011, all Plaintiffs again travelled to Sacramento to attend their planned 3 p.m. demonstration. The Cal Expo police were present but did not approach Plaintiffs or other demonstrators.

75.     During the May 21, 2011, 3 p.m. and 6 p.m. demonstrations and during the May 22, 2011, 3 p.m. demonstration Plaintiffs ability to effectively disseminate their message, by holding signs and banners, offering leaflets to patrons and showing patrons video of the circus' cruel treatment of the animals, was severely restricted, impaired and hindered, because Plaintiffs signs and banners that specifically targeted the Carson & Barnes Circus were confiscated and because Plaintiffs were relegated to the public sidewalk on Exposition Boulevard, outside the Cal Expo property, far away form the circus and the patrons, the majority of which drove onto and parked on Cal Expo property.

/ /

76.     The May 20, 2011, arrests of Plaintiffs and the subsequent harassment, threats and intimidation, on May 21, 2011, had a chilling effect on Plaintiffs' and the other demonstrators free speech activities on May 21 and 22, 2011, at the Cal Expo.

***Events of May 23-26, 2011***

77.     On May 23, 2011, PLAINTIFFS CUVIELLO and BOLBOL had a planned 6 p.m. demonstration against the Carson & Barnes Circus on the privately owned property of Westfield Solano Mall, in Fairfield, California, and they wanted to use the demonstration materials that specifically targeted the Carson & Barnes Circus; the materials that were confiscated by the Cal Expo police on May 20, 2011. Because Plaintiffs were told by DEFENDANT OFFICERS, on May 20, 2011, that they could pick-up their confiscated property anytime during Cal Expo's weekday business hours, 9 a.m. to 4 p.m., CUVIELLO and BOLBOL decided they would first travel to the Cal Expo in Sacramento to pick-up their confiscated property, including their banners and signs that specifically targeted the Carson & Barnes Circus and their stack of leaflets, the apron and CUVIELLO'S legal papers.

78.     CUVIELLO and BOLBOL arrived at the Cal Expo police station about 15 minutes before 4 p.m. and talked, outside the station, to Cal Expo police officer Gonzalez, who told Plaintiffs he did not know where their property was and that he would go inside and call DEFENDANT POLICE CHIEF CRAFT to inquire. When officer Gonzalez returned he told Plaintiffs that CHIEF CRAFT told him to tell Plaintiffs to call on Tuesday, May 24, 2011, and talk to CHIEF CRAFT about getting their property returned.

79.     After not being able to obtain their confiscated property, all Plaintiffs, again, were forced to use inferior demonstration materials, which lessened their effectiveness, for their demonstration against the Carson & Barnes Circus in Fairfield, California on May 23, 2011.

80.     On May 24, 2011, PLAINTIFFS CUVIELLO, BOLBOL and ENNIS, again, had a 6:00 p.m. demonstration planned at the Carson & Barnes Circus in Fairfield, California. Plaintiffs wanted to get their confiscated Carson & Barnes Circus specific demonstration materials back from the Cal Expo police to utilize them at the demonstration. As he was instructed to do the day before by Cal Expo officer Gonzalez, on the morning May 24, 2011,

1    PLAINTIFF CUVIELLO called the Cal Expo police station to talk with CHIEF CRAFT about

2    obtaining his confiscated demonstration materials.  CUVIELLO talked with a woman named

3    Kathy and explained his situation and she took CUVIELLO'S phone number and told him

4    someone would get back to him.

5        81.    On May 24, 2011, no one from the Cal Expo police department returned

6    CUVIELLO'S phone call, and Plaintiffs, again, were forced to use inferior demonstration

7    materials, which lessened their effectiveness, at the Carson & Barnes Circus demonstration that

8    night.

9        82.    On May 25, 2011, PLAINTIFFS CUVIELLO, BOLBOL and ENNIS, again, had

10   a 6:00 p.m. demonstration planned at the Carson & Barnes Circus in Fairfield, California, and

11   desired to get their confiscated Carson & Barnes Circus specific demonstration materials back

12   from the Cal Expo police to utilize them at the demonstration. All day CUVIELLO waited for a

13   return call from the Cal Expo police department and never received one. Plaintiffs were again

14   forced to use inferior demonstration materials, which lessened their effectiveness, at the Carson

15   & Barnes Circus demonstration that night.

16       83.    On May 26, 2011, PLAINTIFFS CUVIELLO, BOLBOL and ENNIS, again, had

17   a 6 p.m. demonstration planned at the Carson & Barnes Circus in Fairfield, California, and

18   desired to get their confiscated Carson & Barnes Circus specific demonstration materials back

19   from the Cal Expo police to utilize them at the demonstration. As no one from the Cal Expo

20   police department had returned PLAINTIFF CUVIELLO'S May 24, 2011, phone call, as

21   promised, Plaintiffs decided that their best course of action would be to have PLAINTIFF

22   BOLBOL'S attorney, G. Whitney Leigh, send a letter to DEFENDANT POLICE CHIEF

23   CRAFT demanding the return of Plaintiffs' confiscated property.

24       84.    Although the letter was not sent by 4 p.m. that day, at approximately 3: 30 p.m.,

25   PLAINTIFFS CUVIELLO and BOLBOL received a call from DEFENDANT CAL EXPO

26   POLICE SERGEANT WALTON regarding the return of their property. DEFENDANT

27   WALTON was leaving a message on Plaintiffs' phone message machine when BOLBOL

28   answered the phone and talked with WALTON.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

85.     WALTON told PLAINTIFFS CUVIELLO and BOLBOL that they could pick-up their confiscated demonstration materials until 10:30 p.m. that day and also offered PLAINTIFFS CUVIELLO and BOLBOL a limited time frame on Saturday, May 28, 2011, to pick-up their materials. BOLBOL asked WALTON what materials would be returned to Plaintiffs and WALTON told her that they were returning two banners and a plastic bag of signs. BOLBOL asked WALTON if he was returning Plaintiffs' apron and leaflets and WALTON said no and told BOLBOL that he did not know anything about the apron and leaflets. BOLBOL told WALTON that she did not want to have to her materials released piecemeal as she did not want to travel to Sacramento more than once to pick-up her materials. WALTON told BOLBOL that she was making demands on him, at which point BOLBOL told WALTON that he could deal with her attorney and hung up the phone.

86.     PLAINTIFF BOLBOL'S attorney called the Cal expo police department that night and the next day, Friday May 27, 2011, but never received a return call.

87.     At the last minute, PLAINTIFFS decided to demonstrate against the Carson & Barnes Circus at the San Joaquin Fairgrounds in Stockton, California on May 27-28, 2011. However, because Cal Expo Police Department still had not returned Plaintiffs' property Plaintiffs were again relegated to using inferior demonstrations materials. The San Joaquin Fairgrounds is the 2nd District Agricultural Association owned by the State of California.

88.     The Cal Expo Police Department did not return PLAINTIFFS' property until the day of PLAINTIFFS' arraignment on June 15, 2011. At PLAINTIFFS' arraignment the court informed them that the District Attorney had dropped all charges against all PLAINTIFFS. PLAINTIFFS then went to the District Attorney's office and were given a letter stating that all charges were dropped which PLAINTIFFS presented to the Cal Expo Police Department who then returned all of PLAINTIFFS' property.

89.     All Defendants herein planned, authorized, directed, ratified, and/or personally participated in the following conduct, which includes but is not limited to:

a.     Retaliating against Plaintiffs for their exercise of their First Amendment rights;

18
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1          b.      Arresting Plaintiffs for engaging in constitutionally protected

2                 activity on Cal Expo property, including holding banners and

3                 signs, leafleting patrons and/or videotaping the handling of

4                 the animals and their living conditions;

5          c.      Refusing to allow Plaintiffs access to the public areas on Cal

6                 Expo property for the purpose of exercising their United

7                 States and California constitutional rights;

8          d.      Singling out of these Plaintiffs because of their viewpoints

9                 and the perceived content of their expression;

10         e.      Refusing to return Plaintiffs' property; and

11         f.      Using threats, intimidation and coercion to violate Plaintiffs'

12                 rights.

13      90.     At all material times, Plaintiffs were peacefully exercising their Constitutionally

14 protected First Amendment rights to free speech, press, association, conscience, and beliefs, both

15 collecting and disseminating information on matters of great public concern in a public forum.

16      91.     At all material times, Plaintiffs herein acted lawfully, never threatened any

17 person, and never resisted any lawful order by any police officer.

18      92.     Plaintiffs' speech, association, conscience and beliefs were on matters of great

19 public concern, being the subject of numerous news reports, discussions, debates, investigations,

20 and animal rights projects throughout the world.

21      93.     Defendants' speech-related conduct, practices, policies and customs, and

22 Defendants' arrests of Plaintiffs, threats to arrest Plaintiffs and confiscation of Plaintiffs

23 demonstration materials have had a chilling effect on Plaintiffs', free speech, press, expression,

24 and associations, and further constitute content-based regulation of Plaintiffs' speech, and prior

25 restraints on protected expression and associations.

26      94.     Defendants' speech-related conduct, practices, policies and customs are

27 overbroad, and are not narrowly tailored to accomplish any rational, legitimate, important,

28 substantial, significant or compelling interest of Defendants.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

95.     Defendants' illegal seizure and retention of Plaintiffs' property, (two banners, a bag of signs, an apron, videotapes and leaflets) constitutes a prior restraint on Plaintiffs' First Amendment Right to free speech.

96.     Defendants' conduct was objectively unreasonable under the circumstances.

97.     All Defendants, their employees, and agents, engaged in a concert of action and joint venture to deny Plaintiffs their rights to freedom of speech, press, association, conscience and beliefs through threats, intimidation and coercion without Plaintiffs' consent and in furtherance of a common scheme to violate these Plaintiffs' aforementioned rights, with knowledge of the conspiracy and its unlawful purpose.

98.     Defendants' conduct described herein was intended, and was reasonably likely, to deter and/or chill Plaintiffs' exercise of constitutionally protected rights, and/or was in retaliation for Plaintiffs' political views and their exercise of constitutionally protected rights.

99.     Defendants' conduct described herein had a chilling effect on Plaintiffs' exercise of their First Amendment rights.

100.    At all material times, Defendants' restrictions on Plaintiffs' protected First Amendment activity was unreasonable as to time, place, and manner.

101.    Plaintiffs' exercise of their First Amendment rights to freedom of speech, press, assembly, association, conscience, and beliefs, and the content and/or viewpoint of Plaintiffs' protected expression, or perceived expression, was a substantial or motivating factor for Defendants' conduct described herein.

102.    At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to each Plaintiff's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

103.    As a direct and proximate result of each Defendant's conduct as set forth above, each Plaintiff sustained the following further injuries and damages, past and future, among others:

        a.      Mental suffering and emotional distress;

        b.     Interference with and irreparable damage to their constitutional rights;

        c.     All damages and penalties recoverable under 42 USC §1983 and federal civil rights law;

        d.     Suppression of speech and interference with beliefs and associations.

104.    With regard to all the causes of action that follow against DEFENDANTS CAL EXPO, CAL EXPO POLICE DEPARTMENT, CAL EXPO GENERAL MANAGER NORBERT BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER BRIAN MAY, CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO POLICE OFFICER TARTARSIK, and DOES 1-20, Plaintiffs allege upon belief that DEFENDANTS CAL EXPO and CAL EXPO POLICE DEPARTMENT developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons at the Cal Expo, which caused the violation of Plaintiffs' rights.

105.    It was the policy and/or custom of DEFENDANTS CAL EXPO and CAL EXPO POLICE DEPARTMENT to treat the Cal Expo as a non-public forum, if demonstrators did not fill out a permit 72 hours in advance and to arrest Plaintiffs and deny Plaintiffs their constitutional rights

106.    It was the policy and/or custom of DEFENDANTS CAL EXPO and CAL EXPO POLICE DEPARTMENT to inadequately supervise and train its police officers, including the defendant officers, thereby failing to adequately discourage constitutional rights violations on the part of its officers.

107.    The above described policies and customs demonstrate a deliberate indifference on the part of policy makers at DEFENDANT CAL EXPO and DEFENDANT CAL EXPO POLICE DEPARTMENT to protect the constitutional rights of people demonstrating at Cal Expo and said policies and customs were the cause of the violations of Plaintiffs' rights alleged herein.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1

## CAUSES OF ACTION

2

### FIRST CAUSE OF ACTION
**– 42 USC § 1983 –**
**Violation of the following rights under the United States Constitution:**
**First Amendment Right to Free Exercise of Speech and Press;**
**Fourth Amendment Right Against Unlawful Seizure,**
**False Arrest and Excessive Force; and Fourteenth Amendment**
**Right to Due Process and Equal Protection of the Laws**
*(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)*

3

4

5

6

7   108.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

8   here.

9   109.   DEFENDANTS CAL EXPO, CAL EXPO GENERAL MANAGER NORBERT

10   BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER BRIAN MAY, CAL EXPO

11   POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO

12   POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO

13   POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO

14   POLICE OFFICER TARTARSIK, and DOES 1-20, acted under color of law when they

15   threatened to arrest and arrested Plaintiffs, and confiscated their property, for leafleting patrons

16   of the circus and for videotaping the handling and living conditions of the animals used by the

17   circus on public property, in a public forum, without warrant, probable cause or other legal

18   right, and had them incarcerated and charged in violation of law, thereby depriving

19   Plaintiffs of the clearly-established and well-settled constitutional rights protected by the

20   First, Fourth, and Fourteenth Amendment to U.S. Constitution, specifically:

21   a.   The right to be free from unreasonable searches and seizures as secured by

22   the Fourth Amendment;

23   b.   The right to be free from wrongful arrest, detention, and imprisonment as

24   secured by the Fourth Amendment;

25   c.   The right to be free from interference with, or retaliation for, their exercise of

26   constitutionally protected rights, including but not limited to speech,

27   association, conscience, and beliefs, as secured by the First and Fourteenth

28   Amendments;

22

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

d.    The right to be free from the deprivation of equal protection

of the law as secured by the Fourteenth Amendment;

e.    The right to due process of the law as secured by the Fourteenth

Amendment; and

f.    The right to be free from malicious prosecution as secured by the First,

Fourth and Fourteenth Amendments.

***(PLAINTIFF BOLBOL AGAINST DEFENDANTS
CAL EXPO POLICE CHIEF ROBERT CRAFT AND OFFICER MENARD)***

g.    The right to be free from excessive force as secured by the Fourth Amendment.

110.    As a direct and proximate result of Defendants' acts and/or omissions as set forth

above, Plaintiffs sustained injuries and damages as set forth above.

111.    The conduct of DEFENDANTS CAL EXPO, CAL EXPO GENERAL

MANAGER NORBERT BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER

BRIAN MAY, CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE

SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE

OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE

OFFICER ROBILLARD, CAL EXPO POLICE OFFICER TARTARSIK, and DOES 1-20,

entitles Plaintiffs to punitive damages and penalties allowable under 42 USC §1983.

**SECOND CAUSE OF ACTION
---42 U.S.C. § 1983---
---42 U.S.C. § 1985---
Conspiracy to Violate And Violation Of
The First, Fourth, And Fourteenth Amendments of The United States Constitution
And Article 1 Section 2(a) Of The California Constitution**

***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)***

112.    Plaintiffs incorporate the allegations contained in the above paragraphs as

though fully set forth herein.

113.    DEFENDANTS CAL EXPO, CAL EXPO GENERAL MANAGER NORBERT

BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER BRIAN MAY, CAL EXPO

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO

2  POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO

3  POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO

4  POLICE OFFICER TARTARSIK, and DOES 1-20, acted under color of law when they

5  threatened with arrest, and arrested, plaintiffs for distributing leaflets and videotaping

6  events on public property, in a public forum, depriving plaintiffs of their rights under the

7  United States and California Constitution, and are therefore liable to plaintiffs under 42 USC

8  §§ 1983 and 1985.

9      114.   DEFENDANTS CAL EXPO, CAL EXPO GENERAL MANAGER NORBERT

10  BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER BRIAN MAY, CAL EXPO

11  POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO

12  POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO

13  POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO

14  POLICE OFFICER TARTARSIK, and DOES 1-20, acted under color of law when they

15  conspired to adopt the "trespassing" speech-denial policy and acted to threaten and arrest

16  Plaintiffs, and confiscate their property, which led to Plaintiffs' being denied access to

17  public property, to hold banners, signs, distribute leaflets and videotape in a public forum,

18  and in a designated public forum, thereby depriving plaintiffs of their rights under the

19  United States and California Constitution, and are therefore liable to Plaintiffs under 42

20  U.S.C. §§ 1983 and 1985.

21      115.   DEFENDANTS CAL EXPO, CAL EXPO GENERAL MANAGER NORBERT

22  BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER BRIAN MAY, CAL EXPO

23  POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO

24  POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO

25  POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO

26  POLICE OFFICER TARTARSIK, and DOES 1-20, aided, abetted, encouraged, facilitated

27  and participated in assisting one another in setting forth and executing upon the pre-

28  textual "trespassing" free speech-denial policy at issue in this litigation to act to threaten

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

and arrest Plaintiffs, and confiscate their property, which resulted in Plaintiffs' wrongful

arrests and seizure of their property and deprivation of their Federal and State

Constitutional Rights.

116.    As a direct and proximate result of Defendants' acts and/or omissions as set

forth above, Plaintiffs sustained injuries and damages as set forth above.

117.    The conduct of DEFENDANTS CAL EXPO, CAL EXPO GENERAL

MANAGER NORBERT BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER

BRIAN MAY, CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE

SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE

OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE

OFFICER ROBILLARD, CAL EXPO POLICE OFFICER TARTARSIK, and DOES 1-20,

entitles Plaintiffs to damages, punitive damages, attorneys' fees, costs, injunctive relief, and

penalties under allowable under 42 USC §§ 1983 and 1985.

**THIRD CAUSE OF ACTION**
**Violation of Article 1, Section 2(a) of the California Constitution**
**Liberty Of Speech**

***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)***

118.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

herein.

119.    DEFENDANTS CAL EXPO, CAL EXPO GENERAL MANAGER NORBERT

BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER BRIAN MAY, CAL EXPO

POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO

POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO

POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO

POLICE OFFICER TARTARSIK, and DOES 1-20, acted under color of law when they

threatened to arrest and arrested Plaintiffs for leafleting patrons of the circus and for videotaping

the handling and living conditions of the animals used by the circus on public property, in a

public forum, without warrant, probable cause or other legal right, and had them

1 | incarcerated and charged in violation of law, thereby depriving Plaintiffs of the clearly-
2 | established and well-settled constitutional rights protected by Article 1, Section 2(a) of the
3 | California Constitution.

4 |      120.    As a direct and proximate result of Defendants' acts and/or omissions as set forth
5 | above, Plaintiffs sustained injuries and damages as set forth above.

6 |      121.    The conduct of DEFENDANTS CAL EXPO, CAL EXPO GENERAL
7 | MANAGER NORBERT BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER
8 | BRIAN MAY, CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE
9 | SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE
10 | OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE
11 | OFFICER ROBILLARD, CAL EXPO POLICE OFFICER TARTARSIK, and DOES 1-20,
12 | entitles Plaintiffs to punitive damages and penalties allowable under California law.

13 |
**FOURTH CAUSE OF ACTION**
**Facial And As Applied Challenge To California Penal Code Section 853.6(I)(7)**
14 | **A Person Arrested By A Peace Officer For A Misdemeanor Shall Be Released Unless**
**"Reasonable Likelihood That The Offense Or Offenses Would Continue Or Resume"**
15 |

16 | ***(ALL PLAINTIFFS AGAINST THE STATE OF CALIFORNIA)***

17 |      122.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth
18 | here.

19 |      123.    California Penal Code Section 853.6(i)(7) reads in pertinent part: "Whenever any
20 | person is arrested *by a peace officer* for a misdemeanor, that person shall be released according
21 | to the procedures set forth by this chapter unless…there was a reasonable likelihood that the
22 | offense or offenses would continue or resume, or that the safety of persons or property would be
23 | imminently endangered by release of the person arrested."

24 |      124.    Facially, California Penal Code Section 853.6(i)(7) is unconstitutionally vague as
25 | it fails to provide any standards for the police to determine if there is a reasonable likelihood that
26 | the offense will continue, thus delegating too much discretion to the police officer without
27 | sufficient guards against arbitrary deprivations of liberty.

28 | // 

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

125.    As applied, Defendant officers relinquished their duty to cite and release Plaintiffs, as required by California Penal Code Sections 836.5(c) and 853.6, and, without probable cause to believe that Plaintiffs would likely continue to commit the alleged crime of trespassing, applied Section 853.6(I)(7) merely as a means to punish and harass Plaintiffs by continuing to deny them their liberty.

126.    As a result of this unconstitutionally vague statute and Defendants' wrongful application of the statute PLAINTIFFS BOLBOL and CAMPBELL were denied their liberty for 9 hours, PLAINTIFF CUVIELLO was denied his liberty for 9 and 1/2 hours and PLAINTIFF ENNIS was denied his liberty for 13 and 1/2 hours.

127.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth above.

### FIFTH CAUSE OF ACTION
**Facial And As Applied Challenge To The "Free Speech Activities Guidelines"
Of Cal Expo As A Violation Of Plaintiffs' Rights Under
The First Amendment and Article 1, Section 2(a) of the California Constitution**

*(ALL PLAINTIFFS AGAINST CAL EXPO)*

128.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

129.    DEFENDANT CAL EXPO'S  "Free Speech Activities Guidelines," which relegate free speech activities to "free expression zones," limit the size of signs and banners to 30 inches by 30 inches and require registration 72 hours in advance of demonstrating are in violation of the First Amendment to he United States Constitution and Article 1, Section 2(a) to the California Constitution.

### SIXTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

*(ALL PLAINTIFFS AGAINST DEFENDANT CAL EXPO POLICE OFFICERS)*

130.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth herein.

//

131.   DEFENDANTS CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD and CAL EXPO POLICE OFFICER TARTARSIK under color of state law, caused and will cause Plaintiffs to be subjected to the deprivation of their rights under California law.

132.   DEFENDANT POLICE OFFICERS' conduct was outrageous when they intentionally falsely arrested and imprisoned PLAINTIFFS causing them to feel emotionally distressed at the lose of their liberty, the security of their homes and animal companions and their responsibility as the organizers of the demonstrations scheduled the next day. DEFENDANT POLICE OFFICERS also confiscated PLAINTIFFS' property, including evidence of the arrest, demonstration materials that were specific to the Carson & Barnes Circus and personal property, without providing PLAINTIFFS with a receipt for their confiscated property. Although DEFENDANT POLICE OFFICERS told PLAINTIFFS' they could retrieve their demonstration materials and some personal property the following Monday during business hours, (10 am to 4 pm), DEFENDANT POLICE OFFICERS refused to relinquish PLAINTIFFS' property when MS. BOLBOL and MR. CUVIELLO travelled from San Mateo County to Cal Expo in Sacramento to retrieve their property. Due to the fact that PLAINTIFFS did not have the proper demonstration materials to utilize during their scheduled demonstrations at the Northern California Carson & Barnes Circus events, including at the Cal Expo, for the following week caused PLAINTIFFS emotional distress. PLAINTIFFS were also emotionally distressed due to the fact that DEFENDANT POLICE OFFICERS threatened PLAINTIFFS with arrest on May 21-22 if they so much as stepped on Cal Expo property, which DEFENDANT POLICE OFFICERS would not clearly define. As well, because PLAINTIFFS were not able to properly access the circus patrons to disseminate their message also caused PLAINTIFFS emotional distress.  As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth above.

/ /

133.   The conduct of DEFENDANTS CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD and CAL EXPO POLICE OFFICER TARTARSIK , entitles Plaintiffs to punitive damages and penalties allowable under California law.

**SEVENTH CAUSE OF ACTION**
**California Common Law Tort Of**
**False Arrest & False Imprisonment**

***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)***

134.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth herein.

135.   DEFENDANTS CAL EXPO, CAL EXPO GENERAL MANAGER NORBERT BARTOSIK, CAL EXPO ASSISTANT XPO POLICE SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXGENERAL MANAGER BRIAN MAY, CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EPO POLICE OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO POLICE OFFICER TARTARSIK, and DOES 1-20, under color of state law arrested and/or caused to be arrested and/or authorized, ordered, procured, tolerated, or ratified the arrest of Plaintiffs without warrant, probable cause or other legal right, and had Plaintiffs incarcerated in violation of law and their constitutional rights.

136.   As a direct and proximate result of Defendants' false arrest of Plaintiffs, Plaintiffs sustained injuries and damages as set forth above, and are further entitled to damages, penalties, and costs as otherwise allowed under California law.

**EIGHTH CAUSE OF ACTION**
**Violation Of California Civil Code Section 52.1**

***(ALL PLAINTIFFS AGAINST ALL DEFENDANTS )***

137.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth herein.

138.    DEFENDANTS CAL EXPO, CAL EXPO GENERAL MANAGER NORBERT BARTOSIK, CAL EXPO ASSISTANT GENERAL MANAGER BRIAN MAY, CAL EXPO POLICE CHIEF ROBERT CRAFT, CAL EXPO POLICE SERGEANT WALTON, CAL EXPO POLICE OFFICER MAYES, CAL EXPO POLICE OFFICER WHITTINGTON, CAL EXPO POLICE OFFICER MENARD, CAL EXPO POLICE OFFICER ROBILLARD, CAL EXPO POLICE OFFICER TARTARSIK, and DOES 1-20, omissions, customs, and policies, as described above, violated Plaintiff's rights under California Civil Code §52.1, by interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California, including but not limited to 42 U.S.C. § 1983 and the following clearly-established rights under the United States Constitution and the California Constitution:

The right to be free from interference with, or retaliation for, their exercise of constitutionally protected rights, including but not limited to speech, press, association, conscience, and beliefs, as secured by the First and Fourteenth Amendments;

The right to be free from the deprivation of equal protection and due process of the law as secured by the Fourteenth Amendment;

The right to be free from illegal arrest, illegal seizure of property and excessive force as secured by the Fourth Amendment;

The right to freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press, as secured by the California Constitution, Article I, Section 2(a);

The right to be free from deprivation of equal protection and due process of the laws, as secured by the California Constitution, Article I, Section 7(a);

The right to be free from illegal arrest, illegal seizure of property and excessive force as secured by the California Constitution, Article I, Section 13;

The right to liberty as secured by the California

1    Constitution, Article I, Section 1;

2    The right to be free from bodily restraint or harm as
     provided by California Civil Code 43.
3

4    139.    As a direct and proximate result of DEFENDANTS' violation of California Civil

5    Code §52.1, Plaintiffs sustained injuries and damages as set forth above. Further, Plaintiffs claim

6    all damages and penalties allowed by law, including California Civil Code §§52 and 52.1, and

7    including costs, treble damages, and civil penalties.

8                                          **PRAYER FOR RELIEF**

9            WHEREFORE, Plaintiffs respectfully request the following relief against each and every

10   Defendant herein, jointly and severally:

11        a.    A court order for declaratory and injunctive relief declaring that the

12             present policy of prohibiting citizens from exercising free speech rights on

13             the Cal Expo property without a permit, restricting demonstrators to free speech

14             zones and limiting the size of a sign or banner to 30 inches by 30 inches violates

15             the Constitution of the United States and Constitution of the State of California

16             and prohibiting such restrictions in future years, and requiring defendants to

17             undertake training and other prophylactic measures to ensure defendants' acts are

18             not repeated in future years.

19        b.    Compensatory, general, and special damages against all defendants

20             in an amount according to proof which is just and fair.

21        c.    Exemplary damages against each individual defendant, excluding

22             Defendant CAL EXPO, in an amount sufficient to deter and to make an

23             example of those defendants.

24        d.    The cost of this suit and such other relief as the court finds just and proper.

25        e.    A civil penalty of $25,000 for each violation of rights under California

26             Civil Code Section 52.1(b).

27   //

28   //

---
**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1    f.      All other damages, penalties, costs, and interest as allowed by 42 USC §§

2          1983, 1988, Cal. Civil Code §§ 52, 52.1, and as otherwise allowed by law.

3

4    Dated:  September 14, 2011            GONZALEZ & LEIGH, LLP

5

6                                         By:  _/s/ G. Whitney Leigh_____
                                                G. Whitney Leigh

7                                               Attorney for Plaintiffs
                                                DENIZ BOLBOL

8                                               SHANNON CAMPBELL

9

10   Dated:  September 14, 2011            By:  _/s/ Joseph Cuviello_____
                                                JOSEPH CUVIELLO

11                                              Plaintiff In Pro Se

12

13   Dated: September 14, 2011            LAW OFFICE OF DAVID J. BEAUVAIS

14

15                                         By:  _/s/ David J. Beauvais_____
                                                David J. Beauvais

16                                              Attorney for Plaintiff
                                                MARK ENNIS

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand trial by jury on the claims raised herein.

3

Dated:  September 14, 2011                    GONZALEZ & LEIGH, LLP

4

5

By:  _/s/ G. Whitney Leigh_____

6                                                                          G. Whitney Leigh
                                                                          Attorney for Plaintiffs

7                                                                          DENIZ BOLBOL
                                                                          SHANNON CAMPBELL

8

9

Dated:  September 14, 2011           By:  _/s/ Joseph Cuviello_____

10                                                                        JOSEPH CUVIELLO
                                                                          Plaintiff In Pro Se

11

12

Dated: September 14, 2011                     LAW OFFICE OF DAVID J. BEAUVAIS

13

14

By:  _/s/ David J. Beauvais_____

15                                                                        David J. Beauvais
                                                                          Attorney for Plaintiff

16                                                                        MARK ENNIS

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**