1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH P. CUVIELLO, et al.,

11            Plaintiffs,                    Civ. No. S-11-2456 KJM EFB

12       vs.
                                            ORDER
13   CAL EXPO, et al.,

14            Defendants.
    _____/

15          This case was on calendar on February 10, 2012 for argument on the individual

16   defendants' motion to dismiss.  Plaintiff Joseph Cuviello appeared pro se; Gilbert Leigh

17   appeared for plaintiffs Deniz Bolbol and Shannon Campbell; David Beauvais appeared

18   telephonically for plaintiff Mark Ennis; George Acero and David King appeared for defendants

19   Cal Expo, Norbert Bartosik, Brian May, Robert Craft, Craig Walton, Robert Whittington, Larry

20   Menard, Everest Robillard and John Tatarakis; and Matthew Liedle appeared for Rocky Mayes

21   and orally joined the motion to dismiss.  After considering the parties' argument, the court

22   GRANTS in part and DENIES in part defendants' motion.

23   I.  Standards For A Motion To Dismiss

24          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

25   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

26

dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and  accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).

A court's consideration of documents attached to a complaint or incorporated by reference or as a matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d

977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).  In this case, defendants have provided a copy of Cal Expo's Free Speech Activities Guidelines in conjunction with their motion to dismiss.  ECF No. 10-3 at 5-12.  As plaintiffs challenge those guidelines both facially and as applied, their complaint depends on the contents of these guidelines and the court's consideration of them does not convert this into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

II.   Background

Plaintiffs Joseph Cuviello, Deniz Bolbol, Shannon Campbell and Mark Ennis are members of a group that seeks to educate the public about the abuse and mistreatment of circus animals.  Complaint, ECF No. 2 ¶ 20.[1]  As part of their educational activities, they hold signs and banners, offer informational leaflets and show video footage of the mistreatment of circus animals.  ¶ 21.

The Carson and Barnes Circus leased Parking Lot A on the grounds of Cal Expo for performances from May 20-22, 2011.  ¶ 30.

On May 20, Cuviello and Bolbol faxed a letter to defendant Norbert Bartosik, Cal Expo's general manager, and defendant Robert Craft, Cal Expo's police chief, informing them of their intention to protest Carson and Barnes' use of animals.  ¶ 34.  While Cuviello, Campbell and Bolbol were en route to Sacramento, Bolbol received a call from defendant Brian May, the Deputy General Manager of Cal Expo, who said that they would not be allowed onto Cal Expo property to demonstrate because they had not applied for a permit seventy-two hours in advance, as required by Cal Expo's Free Speech Guidelines.  ¶¶ 35-36.  These guidelines provide, in relevant part, that activities are deemed to be "on-site" if they occur within Cal Expo's grounds and parking lots; that a "public forum" is an event wherein the facilities are available to members

---

[1] Further references in this section are to the complaint unless otherwise specified.

1   of the public for debate of social issues; that with the exception of the State Fair, no public forum

2   events occur on Cal Expo's ground, but it is Cal Expo's policy to allow free speech activity

3   when it is not inconsistent with Cal Expo's normal operations; that the parking areas become

4   congested with vehicle traffic during events; that free expression zones are therefore necessary to

5   balance the needs of those involved in free speech activities with the safety and needs of the

6   patrons, who use narrow walkways to and from the parking areas; that groups wishing to engage

7   in free speech activities should register with Cal Expo seventy-two hours before the event so as

8   to allow Cal Expo to assign space for the free speech activities; that Cal Expo will not

9   discriminate on the basis of ideas or beliefs in evaluating permit requests; that violations of any

10  of the conditions shall be grounds for expulsion from Cal Expo's grounds, preceded, where

11  possible, by an initial warning, though in the alternative, officers may issue a permit.  ECF No.

12  10-3 at 7-10.

13          Plaintiff Ennis joined Cuviello, Bolbol and Campbell and the group proceeded to

14  Cal Expo.  ECF No. 2 ¶¶ 37.  Defendant Mayes, a Cal Expo police officer, asked the plaintiffs if

15  they were going to protest and asked for their permit.  ¶ 39.  When he learned they did not have

16  one, Mayes told plaintiffs they could protest on the sidewalk but not come onto the grounds.  ¶

17  39.  Cuviello, Bolbol and Campbell entered Cal Expo property and headed toward the circus tent

18  in Parking Lot A while Ennis remained to talk to Mayes.  *Id*.  Mayes told Ennis that the group

19  would be asked to leave and then cited for trespassing.

20          Defendant Tatarakis, another Cal Expo police officer, told plaintiffs they were not

21  allowed on Cal Expo property without a permit but they could demonstrate on the sidewalk.

22  ¶ 41.  He said he was not threatening plaintiffs with arrest, but they "had been warned." *Id*.

23  Plaintiffs remained in Parking Lot A near the entrance to the circus without incident for about an

24  hour and a half and Campbell and Ennis videotaped the animals.  ¶ 42.

25          Around 7:40 p.m., plaintiffs gathered their materials and began to leave Parking

26  Lot A when six police cars arrived.  ¶¶ 45-46.  Defendant Craft and defendant Walton, a Cal

Expo police chief, asked Cuviello and Bolbol for identification.  ¶ 47.  Craft said the protestors had refused to leave earlier when asked to do so and so they were being detained for trespassing. ¶¶ 47-48.  Defendant Mayes told Cuviello to put his camera down because he was being arrested for trespassing.  ¶ 48.  Walton knocked Ennis's camera to the ground, handcuffed him, and said he was arresting Ennis for "602."  ¶ 51.  Officers took Campbell's camera and arrested him. ¶ 52.  Two other officers grabbed Bolbol's arms, twisted them behind her back and pushed her to the ground.  ¶ 49.  Defendant Craft pointed to the plaintiffs and said "602."  ¶ 53.

Cuviello asked that they be cited and released.  ¶ 57.  Mayes refused because he believed plaintiffs would continue in their activities.  Cuviello countered that they were leaving because the circus had concluded for the evening.  *Id*.  Later Whittington, Mayes, Robillard and Menard questioned plaintiffs and filled out citations.  ¶ 58.  Mayes told Cuviello any personal property that would fit into an eight by eight inch bag would be booked into Sacramento County Jail with them and that they could pick up the rest during business hours.  ¶ 59.  Plaintiffs' demonstration materials, leaflets, and cameras were seized; Mayes told plaintiffs the materials would be booked into evidence.  *Id*.

Plaintiffs were booked into Sacramento County Jail and when they were released early the next morning, they were given Notices To Appear, listing the charges as violations of California Penal Code §§ 602(o), 602.1(a) and 602.6.  ¶¶ 64-65.

Plaintiffs returned to Cal Expo later on May 21 to resume protests, but did not have the signs, banners and leaflets seized by the Cal Expo officers.  ¶¶ 66-67.  Although plaintiffs remained on the sidewalk for their protest, defendant Craft told them they would be arrested for trespassing if they crossed onto Cal Expo property; he refused to show plaintiffs the property line.  ¶¶ 69-71.

Plaintiffs protested on May 22, 2011 but were not approached by Cal Expo police officers.  ¶ 74.  Because their materials specific to the Carson and Barnes Circus had not been
/////

returned, their ability to disseminate their message was hampered.  ¶ 75.  Because they were relegated to the sidewalk, they were unable to reach a wide audience.  *Id*.

Although plaintiffs arrived at the Cal Expo business office around 3:45 p.m. on May 23, 2011, they were unable to retrieve their confiscated materials.  ¶ 78.  The next morning plaintiff Cuviello called, as he had been instructed to do, but no one from Cal Expo returned his telephone call that day or the next.  ¶¶ 80-83.  On May 26, 2011, Walton told Cuviello and Bolbol they could retrieve their confiscated banners and a plastic bag of signs the next morning or on the morning of May 28; he said he did not know anything about additional materials.  ¶ 85. The Cal Expo police department did not return plaintiffs' materials until the charges against plaintiffs were dropped, on June 15, 2011.  ¶ 88.

Plaintiffs allege that all defendants "planned, authorized, directed, ratified, and/or personally participated in" retaliation against plaintiffs for the exercise of their First Amendment rights; arrested plaintiffs for engaging in constitutionally protected activities; refused to allow plaintiffs access to public areas of the Cal Expo complex in order to exercise their First Amendment rights; singled out plaintiffs because of their viewpoints; refused to return plaintiffs' property; and used threats and intimidation against plaintiffs.  ¶ 89.

The complaint contains eight claims.  The first, by all plaintiffs against all defendants, is based on violations of the First Amendment right to free exercise of speech, Fourth Amendment right against unlawful seizure, false arrest, excessive force, and malicious prosecution; the Fourteenth Amendment right to due process and equal protection of laws, all alleged as part of a claim brought under Title 42 U.S.C. § 1983; it includes Bolbol's claim of excessive force against defendants Craft and Menard.  The second, by all plaintiffs against all defendants, alleges a conspiracy to violate plaintiffs' First, Fourth and Fourteenth Amendment rights and is brought under 42 U.S.C. §§ 1983 and 1985.  The third, brought by all plaintiffs against all defendants, alleges a violation of Article I, section 2(a) of the California Constitution. The fourth, brought by all plaintiffs against the State of California, is a facial and as applied

challenge to California Penal Code § 853.6(i)(7), which gives officers the discretion to book, rather than cite and release, if the officer believes the offense would continue or resume if the arrestee is released.[2]  The fifth, brought by all plaintiffs against Cal Expo, is a facial and as applied challenge to Cal Expo's "Free Speech Activities Guidelines."  The sixth, by all plaintiffs against defendants Cal Expo Police Officers, is for intentional infliction of emotional distress.  The seventh, by all plaintiffs against all defendants, is for false arrest and false imprisonment.  The eighth, by all plaintiffs against all defendants, is for a violation of California Civil Code section 52.1 (Bane Act).  They name as defendants Cal Expo; Norbert Bartosik, General Manager of Cal Expo; Brian May, Deputy General Manager; Police Chief Robert Craft; Sergeant Craig Walton; and Officers Robert Whittington, Larry Menard, Everest Robillard and John Tatarakis.

        The individual defendants mount a multi-pronged attack on the complaint.  Each claim will be addressed separately below.

III.  The § 1983 Claim (First Claim)

        The individual defendants argue they are entitled to qualified immunity from plaintiffs' claim under the Civil Rights Act because they were enforcing Cal Expo's presumptively valid free speech guidelines.  They also argue that the complaint does not state a claim against defendants Bartosik and May, as there are no allegations showing their connection to the arrest and detention of plaintiffs or against defendants Menard and Robillard, whose involvement began only after plaintiffs were detained.

        Plaintiffs argue that the individual defendants who did not directly participate in the arrests are nonetheless liable as part of a conspiracy to deny plaintiffs their First and Fourteenth Amendment rights and defendants are not entitled to qualified immunity because they

_____

        [2]  The State of California is not named in the caption nor is there is any indication that the State of California has been served.   The single summons issued lists defendants Menard, Whittington, Bartosik, Cal Expo, Craft, May, Mayes, Robillard, and Walton.   ECF No. 4

1    were not enforcing a law, but rather guidelines without the force of law.  Defendants counter that

2    the officers' reasonable basis for their actions - a belief that plaintiffs were trespassing because

3    they had not obtained a permit for their activities - entitles them to qualified immunity.

4           A claim under 42 U.S.C. § 1983 has two elements: (1)  A violation of a federal

5    constitutional right, (2) committed by a person acting under state law.  *Long v. County of Los*

6    *Angeles*, 442 F.3d, 1178, 1185 (9th Cir. 2006).  Defendants do not dispute that the complaint

7    adequately pleads these elements, but rather argue they were not involved or are entitled to

8    qualified immunity.

9           Government officials performing discretionary functions generally are shielded

10   from liability for civil damages insofar as their conduct does not violate clearly established

11   statutory or constitutional rights of which a reasonable person would have known.  *Harlow v.*

12   *Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant raises qualified immunity, "a ruling on

13   that issue should be made early in the proceedings. . . ."  *Saucier v. Katz*, 533 U.S. 194, 200

14   (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  "[A]

15   district court should decide the issue of qualified immunity as a matter of law when 'the material,

16   historical facts are not in dispute, and the only disputes involve what inferences properly may be

17   drawn from those historical facts.'"  *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012)

18   (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003)).

19          In determining whether a governmental officer is immune from suit based on the

20   doctrine of qualified immunity, the court generally considers two questions.  The district court

21   may decide the order of addressing these questions and answer only the second, in accordance

22   with fairness and efficiency and in light of the circumstances of a particular case.  *Pearson*, 555

23   U.S. at 236.  The first is, taken in the light most favorable to the party asserting the injury, do the

24   facts alleged show the officer's conduct violated a constitutional right?  *Saucier v. Katz*, 533 U.S.

25   194, 201 (2001).  A negative answer ends the analysis, with qualified immunity protecting

26   defendant from liability.  *Id*.  If a constitutional violation occurred, a court must further inquire

1    "whether the right was clearly established." *Id*.  "If the law did not put the [defendant] on notice

2    that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is

3    appropriate." *Id*. at 202.  A right is clearly established when all reasonable officers would

4    understand that their actions violate that right; precedent at the time of the alleged violation

5    "must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*,

6    ___ U.S. ___, 132 S. Ct. 2088, 2093 (2012) (internal citation, quotation omitted).  The Supreme

7    Court has emphasized that "the qualified immunity inquiry must be undertaken in light of the

8    specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

9            If the right is clearly established, an official is entitled to qualified immunity if he

10   or she "acted reasonably" under that law,  even if "another reasonable, or more reasonable

11   interpretation of the events can be constructed. . . ." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

12           A.  Fourth Amendment And False Arrest

13           Plaintiffs allege that their rights to be free of unreasonable seizure and arrest and

14   from wrongful arrest, detention and imprisonment were violated when defendants arrested them

15   for trespassing and confiscated their protest materials.

16           A plaintiff may bring a claim for wrongful arrest and seizure under the Fourth

17   Amendment if the arrest was not justified by probable cause.  *Rosenbaum v. Washoe County*,

18   663 F.3d 1071, 1076 (9th Cir. 2011).  A warrantless arrest is reasonable when an officer has

19   probable cause to believe an offense is being committed.  *Devenpeck v. Alford*, 543 U.S. 146,

20   153 (2004).  "Probable cause exists when, under the totality of the circumstances known to the

21   arresting officers (or within the knowledge of the other officers at the scene), a prudent person

22   would believe the suspect had committed a crime." *Dubner v. City & County of San Francisco*,

23   266 F.3d 959, 964 (9th Cir. 2001).

24           Defendants arrested plaintiffs for trespassing in violation of California Penal

25

26

1    Code §§ 602(o), 602.1(a) and 602.6,[3] after ascertaining that they did not have a permit to protest

2    on Cal Expo's grounds while the circus was making use of the facility.  As plaintiffs allege, they

3    were aware of the permit requirement, yet proceeded to Cal Expo without having secured

4    permission to protest.  ECF No. 2 ¶ 36.  When plaintiffs entered the grounds defendant Mayes

5    asked if they had a permit as required by the Free Speech Guidelines and told them they would

6    be cited for trespass if they protested.  *Id.* ¶¶ 39-40.  Defendant Tartarkis warned plaintiffs they

7    needed a permit to continue their protest on the grounds and said that whether they would be

8    arrested "depended on what the chief wants."  *Id.* ¶ 41.  Defendant Craft, the Cal Expo police

9    chief, told plaintiffs they were being arrested for trespassing because they had refused to leave

10   when asked.  *Id.* ¶ 47.

11         In *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010), *cert. denied* 132

12   S.Ct. 112 (2011), Norse was removed from a Santa Cruz City Council meeting and arrested after

13   he gave a Nazi salute.  In a subsequent meeting he was ejected for whispering to another person

14   in attendance.  He sued city officials challenging the council's decorum policy, facially and as

15   applied, and the sergeant-at-arms who ejected him, claiming false arrest and excessive force.

16

17         [3]  Section 602(o) provides in relevant part that one is guilty of trespass for "[r]efusing or
     failing to leave land, real property, or structures belonging to or lawfully occupied by another

18   and not open to the general public, upon being requested to leave by (1) a peace officer at the
     request of the owner, the owner's agent, or the person in lawful possession, and upon being

19   informed by the peace officer that he or she is acting at the request of the owner, the owner's
     agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in

20   lawful possession. . . .  Section 602.1(a) provides in relevant part: "Any person who intentionally
     interferes with any lawful business or occupation carried on by the owner or agent of a business

21   establishment open to the public, by obstructing or intimidating those attempting to carry on
     business, or their customers, and who refuses to leave the premises of the business establishment

22   after being requested to leave by the owner or the owner's agent, or by a peace officer acting at
     the request of the owner or owner's agent, is guilty of a misdemeanor . . . ."  Section 602.6

23   provides: "Every person who enters or remains in, or upon, any state, county, district, or citrus
     fruit fair buildings or grounds, when the buildings or grounds are not open to the general public,

24   after having been ordered or directed by a peace officer or a fair manager to leave the building or
     grounds and when the order or direction to leave is issued after determination that the person has

25   no apparent lawful business or other legitimate reason for remaining on the property, and fails to
     identify himself or herself and account for his or her presence, is guilty of a misdemeanor."

26

1   The court recognized that to prevail on a claim of false arrest brought under § 1983, a plaintiff

2   must demonstrate there was no probable cause for the arrest.  *Id*. at 978.  Plaintiff's complaint

3   had alleged that he had spoken in violation of the rules of decorum as the council attempted to

4   eject him.  The court concluded that a reasonable officer could have believed that probable cause

5   existed to arrest Norse for causing a disturbance of a public meeting or assembly because the

6   violation of the council's rules gave rise to probable cause to arrest for a violation of a penal

7   statute.  *Id*.

8         In *Way v. County of Ventura*, 445 F.3d 1157 (9th Cir. 2006), the plaintiff was

9   arrested for being under the influence of cocaine and taken to Ventura County Jail where she was

10  subjected to a strip search in conformance with jail policy, even though she was not released into

11  general population.  *Id*. at 1158.  The Ninth Circuit agreed with the district court that the blanket

12  policy, not based on individualized suspicion, was unconstitutional, but concluded that the

13  officers were entitled to qualified immunity, as the right was not clearly established at the time

14  of the search.  The court said it could "not conclude that a reasonable officer would necessarily

15  have realized that relying on a Department policy . . . and subjecting Way to a strip search with

16  visual cavity inspection to it, was unconstitutional," in light of the fact that the law was not

17  clearly established at that time.  *Id*. at 1163.  In *Way*, then, the officers' reliance on departmental

18  policy to undertake a search entitled them to qualified immunity.

19        In *Reza v. Pierce*, No. CV 11-01170-PHX-FJM, 2011WL 5024265 (D. Ariz., Oct.

20  21, 2011), the President of the Arizona State Senate directed that plaintiff not be allowed into the

21  Senate building because of earlier disruptive behavior.  When plaintiff again entered the

22  building, public safety officers told him he was not allowed in the building, and told him he was

23  trespassing, handcuffed and arrested him.  *Id*. at *1.  Plaintiff brought a § 1983 action claiming

24  the officers did not have probable cause to arrest him; the officers asserted qualified immunity.

25  The court agreed with the officers, noting that rules of the Senate gave the President the

26  authority to bar someone from the building and a reasonable officer would rely on the

1  President's direction in determining that plaintiff was trespassing.  *Id*. at *2.  *See also Grossman*

2  *v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (existence of ordinance justifying the

3  action supports conclusion that reasonable officer would find conduct in conformance with it

4  constitutional).

5          This case is similar to those reviewed above: given Cal Expo's Free Speech

6  Guidelines, the individual defendants could reasonably have believed that plaintiffs' protest

7  activities without a permit - occurring during a time when it appeared that the grounds were not

8  open as a public forum- violated the guidelines and plaintiffs' continued protest, after plaintiffs

9  were told they could not come onto the grounds without a permit and had been asked to leave the

10 area of the circus tent in Parking Lot A constituted a trespass in violation of Penal Code §§

11 602(o), 602.1 and 602.6.  Defendants are entitled to qualified immunity for plaintiffs' Fourth

12 Amendment claims based on the arrest; even viewing the allegations of the complaint in the light

13 most favorable to plaintiffs, defendants' belief was reasonable, whether or not it was mistaken.

14 *Hunter*, 502 U.S. at 228-29.  The motion to dismiss this portion of the complaint is granted

15 without leave to amend.

16          B.  Other Claims

17          Although defendants argue in conclusory fashion they are entitled to qualified

18 immunity for plaintiffs' § 1983 claim, they analyze only the claims relating to the arrest and

19 detention.   Plaintiffs have also argued that defendants' actions interfered with their First

20 Amendment rights to speech and against retaliation for the exercise of their right to protest, the

21 right to due process, the right to be free from malicious prosecution and the right to equal

22 protection of the laws.  They also argue that defendants violated their Fourth Amendment right

23 by confiscating their protest materials and refusing to return them in a timely fashion and that

24 officers used excessive force against plaintiff Bolbol.  Defendants' general argument – that

25 plaintiffs must plead around qualified immunity – does not substitute for an analysis of how

26 defendants' actions as described in the complaint entitle them to qualified immunity on these

disparate claims.  *See, e.g., Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (elements of First Amendment claim); *Skoog v. County of Clackamas*, 469 F.3d 122, 1234-35 (9th Cir. 2006) (First Amendment retaliation claim may proceed even when there is probable cause for arrest); *but see Reichle*, 132 S. Ct. at 2093; *Spingola v. Regents of the University of California*, No. C-99-1076 CRB, 2000 WL 1780260, at *8 (N.D. Cal. Nov. 21, 2000) (analyzing claim that arrest violated First Amendment rights by examining  time, place, and manner restrictions).

C.  Defendants Menard, Robillard, Bartosik, and May

Defendants argue the complaint does not connect these defendants with plaintiffs' arrest.  For example, plaintiffs allege only that they faxed a letter about their protest activities to Bartosik; that May told them they had to comply with the Free Speech Guidelines; and that Menard and Robillard filled out some forms and asked questions after plaintiffs were arrested. They do name Menard in that part of the cause of action claiming excessive force against Bolbol, but do not name him in the paragraph describing the officers' actions against her.  *Compare* ECF No. 2 ¶ 49 with ¶ 109g.  These allegations do not connect these defendants with the alleged deprivations of plaintiffs' rights.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (conclusory allegations of official participation in civil rights violation not sufficient to withstand motion to dismiss).

Plaintiffs argue, however, that these defendants are liable because they conspired with the other defendants; as discussed below, however, their conspiracy claims are similarly insufficient.  This portion of the complaint is dismissed but plaintiffs are given leave to amend if they are able to do so subject to Federal Rule of Civil Procedure 11.

IV.  Conspiracy Under 42 U.S.C. §§ 1983 And 1985 (Second Claim)

Plaintiffs allege that defendants conspired to adopt the "'trespassing speech-denial policy," to threaten and arrest plaintiffs and confiscate their property, which led to their

/////

being denied access to public property to hold banners and distribute leaflets and videotape, which in turned violated their constitutional rights.  ECF No. 2 ¶¶ 114-116.

Defendants argue that the conspiracy claims are too vaguely pleaded, that they are barred by the intra-corporate conspiracy doctrine, and that the § 1983 conspiracy claim fails because there are no viable underlying § 1983 claims.  They also argue that the § 1985 conspiracy claim is not based on a discriminatory animus.

The elements of a conspiracy claim under § 1983 are (1) the existence of an agreement, either express or implied, to deprive plaintiffs of their constitutional rights and (2) a deprivation of rights resulting from the agreement.  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).  In addition, although the conspiratorial agreement need not be overt, a complaint must include some factual basis to support the inference that defendants' acts were propelled by the agreement.  *Mendocino Environmental Center*, 192 F.3d at 1301; *Harris v. Clearlake Police Dept.*, No. 12-0864-YGR, 2012 WL 304294, at *9 (N.D. Cal. July 25, 2012).  The plaintiffs "must state specific facts to support the existence of the claimed conspiracy."  *Burns v. County of Kings*, 883 F.2d 819, 821 (9th Cir. 1989); *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  As plaintiffs' complaint says only that the defendants conspired with each other and provides no facts supporting even an inference that defendants conspired, the complaint is insufficient.  Plaintiffs will be given leave to amend this portion of the complaint if they are able.

A conspiracy claim under § 1985 has four elements:  "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of privilege of a citizen of the United States.'"  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983).  In connection with the second element, a plaintiff not only must identify a legally protected right but must also allege a deprivation of that

right "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  *Id.* (quoting *Griffin v. Breckenridge*, 403 US. 88, 102 (1971)); *Maric v. Fresno County*, No. 1:12-cv-00102 LJO GSA, 2012 WL 1301222, at *6 (E.D. Cal. Apr. 13, 2012).  As plaintiffs' complaint contains no suggestion that any of the complained-of acts were motivated by a class-based animus, the motion to dismiss is granted.  *See Cuviello v. City of Stockton*, No. Civ. S-07-1625 LKK/KJM, 2009 U.S. Dist. Lexis 4896, at *62 (E.D. Cal. Jan. 26, 2009) (a group of people attempting to exercise a protected right is not a "class" for § 1985 purposes).  As this is not the first time plaintiffs have raised this claim without sufficiently alleging it, the court declines to grant them leave to amend this portion of the complaint.

V.   Violation Of Article 1, Section 2(a) Of The California Constitution (Third Claim)

Article 1, section 2(a) of the California Constitution provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right.  A law may not restrain or abridge liberty of speech or press."

Defendants argue that the California Supreme Court has held that this section does not create a private right of action and also that various immunities in the Civil Code apply to constitutional rights of action.  Plaintiffs contend, however, that the Supreme Court's decision cannot be read as holding broadly that there is no private right of action and that the determination must be made by applying a number of factors.

In *Degrassi v. Cook*, 29 Cal.4th 333 (2002), the plaintiff, a city councilwoman, alleged that city officials interfered with the performance of her duties and brought a suit for money damages claiming that the defendants' actions violated her California constitutional right to liberty of speech.  The court recognized that the section supports an action "by a private plaintiff against a proper defendant" for declaratory or injunctive relief.  *Id.* at 338 (internal citation & quotation marks omitted).  It "decline[d] to recognize a constitutional tort action for damages to remedy the asserted violation of article I, section 2(a), alleged in the present case.

/////

1    This does not mean that the free speech clause, in general, never will support an action for

2    money damages." *Id.* at 344.

3          Approaching the question, the California Supreme Court employed the analytical

4    framework it developed in *Katzberg v. Regents of the University of California*, 29 Cal.4th 300

5    (2002).  In the first step, a court must determine whether there is evidence suggesting an

6    intention to authorize or withhold a damages remedy.  *Id.* at 317.  It turned first to the language

7    of the provision, observing the free speech clause "does not speak to or manifest any intent to

8    include a damages remedy. . . ." *Degrassi v. Cook*, 29 Cal.4th at 338.  From there, it examined

9    the legislative history of the provision, concluding that the history did not show the voters

10   "considered, much less intended either to create or foreclose, a damages remedy. . . ." *Id.* at 364.

11    It concluded by finding no support in the common law history suggesting that the constitutional

12   provision created a damages action.  *Id.* at 341.

13          If the court finds no affirmative intent regarding a damages remedy, the court must

14   then "undertake the 'constitutional tort' analysis adopted by *Bivens [v. Six Unknown Federal*

15   *Narcotic Agents*, 403 U.S. 388 (1971)] . . . ." *Katzberg*, 29 Cal. 4th at 317.  Factors relevant to

16   this inquiry include "whether an adequate remedy exists, the extent to which a constitutional tort

17   action would change established tort law, and the nature and significance of the constitutional

18   provision." *Id.*  If those factors "militate against recognizing the constitutional tort, our inquiry

19   ends." *Id.*  If they favor recognizing the tort, however, the court must examine "any special

20   factors counseling hesitation . . . including deference to legislative judgment, avoidance of

21   adverse policy consequences, considerations of government fiscal policy, practical issues of

22   proof, and the competence of courts to assess particular types of damages." *Id.*; *Motevalli v. Los*

23   *Angeles Unified School Dist.*, 122 Cal. App. 4th 97, 119 (2004) (courts consider whether damages

24   are readily ascertainable).  Although the California Supreme Court found that the factors militated

25   against finding a constitutional tort, it also examined the special factors and concluded that the

26   /////

1    potential for interference in what were essentially legislative functions counseled against

2    recognizing a damages remedy.  *Degrassi*, 29 Cal. 4th at 343.

3              Although this court may rely on the California Supreme Court's conclusion that

4    there is no affirmative intent concerning a damages remedy embodied in the free speech clause, it

5    does not adopt that court's constitutional tort analysis, for this case and thus the analysis to be

6    undertaken are much different.  In their initial briefing, defendants simply cited to *Degrassi* and

7    *Motevalli* as conclusive and in their reply chided plaintiffs for doing no more than simply reciting

8    the *Motevalli* factors.  *See* ECF Nos. 10-1 at 17, 19 at 7.  Defendants' own discussion in their

9    reply brief is only a little less conclusory.  ECF No. 19 at 7.  Because the parties' examination of

10   the second *Katzberg* factor is conclusory, the court is not equipped to undertake a nuanced

11   constitutional tort analysis.   *See Adams v. Kraft*, No. 5:10-CV-00602 LHK, 2011 WL 3240598,

12   at *16 (N.D. Cal. July 29, 2011) (declining to determine whether a damages remedy is available

13   under § 2 because of inadequate briefing on the *Katzberg* factors; collecting cases which did the

14   same).

15            Defendants next argue that California's statutory immunities, California Penal

16   Code § 847 and California Government Code §§ 820.6 and 821.6, apply to this constitutional tort

17   and thus require dismissal of this cause of action.  They cite several cases, none of which apply

18   these provisions to this particular constitutional provision, and ask this court to extend these cases

19   to the instant situation.  *See Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 392 (1995)

20   (rejecting store owner's attempt to bring inverse condemnation action for property damage

21   sustained during police apprehension of a suspect; court said plaintiff's remedy was tort action,

22   subject to Government Code immunities); *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 961

23   (2007) (litigation privilege in Cal. Civ. Code § 47 barred action based on constitutional right to

24   privacy); *Richardson-Tunnell v. Schools Ins. Program for Employees*, 157 Cal. App. 4th 1056,

25   1066 (2007) (constitutional right to privacy does not limit scope of preexisting statutory

26   immunity; relied on *Jacob B.*, which based its conclusion on an examination of the legislative

history of the privacy provisions).  The court declines to undertake the analysis, which was defendants' to perform.

Defendants' motion is denied as to this claim.

VI.  Challenge To Cal Expo's Free Speech Guidelines (Fifth Claim)

Defendants have withdrawn their challenge to this cause of action upon plaintiffs' clarification they are not seeking damages.

VII.  California's Statutory Immunities And The State Law Claims[4]
      (Sixth Through Eighth Claims)

Defendants argue they are immune from all, or at least most, of the state law claims because of an interlocking group of statutory immunities, which are part of California's Tort Claims Act and the Penal Code.   They also argue that various causes of action fail to state a claim either completely or against certain defendants.

A.   Intentional Infliction Of Emotional Distress (Sixth Cause of Action)

Plaintiffs' claim for intentional infliction of emotional distress stems from their arrest, the confiscation of their protest materials and subsequent refusal to return them, their fear of being arrested again when they returned to protest on the sidewalk and defendants refused to define the boundary, and their resulting inability to gain access to circus patrons to communicate their message.  ECF No. 2 ¶ 132.

Defendants argue that plaintiffs' complaint is deficient in that they do not plead that they suffered severe or extreme emotional distress.  Plaintiffs do not address the deficiencies in their pleading of emotional distress claims.  Defendants also claim that they are completely or partially immune under Penal Code § 847(b) and Government Code §§ 820.6 and 821.6.

/////

/////

---

[4]  All statutory citations in this section are to the California Codes.

1                  1.  <u>Penal Code § 847(b)</u>

2                  Penal Code § 847(b)(1) provides in relevant part that [t]here shall be no civil

3 liability on the part of, and no cause of action shall arise against, any peace officer . . . or law

4 enforcement officer . . ., acting within the scope of his or her authority, for false arrest or false

5 imprisonment arising out of any arrest" if "[t]he arrest was lawful, or the peace officer, at the time

6 of the arrest, had reasonable cause to believe the arrest was lawful."  Defendants have cited

7 nothing that extends this exemption from liability to an intentional infliction of emotional distress

8 claim derivative of the false arrest cause of action, and do not otherwise explain why this

9 particular immunity should extend beyond the tort named in the statute.  *Compare Gillan v. City*

10 *of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007) (immunity under Government Code § 821.6

11 is not limited to malicious prosecution but extends to other causes of action arising from conduct

12 protected under the statute, including intentional infliction of emotional distress).

13                  2.  <u>Government Code § 820.6</u>

14                  Government Code § 820.6 provides that "[i]f a public employee acts in good faith,

15 without malice, and under apparent authority of an enactment that is unconstitutional, invalid or

16 inapplicable, he is not liable for an injury caused thereby. . . ."

17                  In *O'Toole v. Superior Court*, 140 Cal. App. 4th 488 (2006), relied upon by

18 defendants, the California Court of Appeal held that this provision provided immunity to campus

19 police officers who arrested and removed a protestor from the Mesa College campus because he

20 did not have a permit, as required by college policy.  The court found that even though the policy

21 was constitutionally suspect, the defendants were entitled to immunity because of their good faith

22 reliance on it.  *Id*. at 505-06.

23                  As plaintiffs point out, however, the parties in *O'Toole* conceded that the policy

24 qualified as an enactment within the meaning of § 820.6, a concession plaintiffs here are not

25 making.  *Id*., at n.9.  They cite to *Hansen v. California Dept. of Corrections*, 920 F. Supp. 1480,

26 1501-02 (N.D. Cal. 1996), where the court found that a Department of Corrections policy,

adopted in conformance with a regulation, did not qualify as an enactment within the meaning of § 820.6.  *See also* GOV'T CODE §§ 810.6, 811.6 (an enactment is a constitutional provision, statute, charter provision, ordinance or regulation; a regulation is a rule, regulation, order or standard having the force of law adopted under the federal or state administrative procedures); *Tilton v. Reclamation Dist. No. 800*, 142 Cal. App. 4th 848, 862 (2006) (Army Corps of Engineers' manual not a "regulation" and so is not an "enactment").  Because defendants were not acting under apparent authority of an unconstitutional enactment, this provision does not apply.

### 3. Government Code § 821.6

Government Code § 821.6 provides that "[a] public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  It does not provide immunity for false arrest or imprisonment,[5] but does extend not only to the filing of a criminal complaint but also to "'[a]cts taken during an investigation prior to the institution of a judicial proceeding'" even if the authorities later decide not to file charges.  *County of Los Angeles v. Superior Court (West)*, 181 Cal. App. 4th 218, 229 (2009) ("*West*").  In *West*, officers seized the parties' property under the authority of a search warrant and retained some of it despite the parties' repeated requests that it be released.  The Court of Appeal concluded that the officers were entitled to immunity under § 821.6 for retaining the seized property.  In this case as well the officers are entitled to qualified immunity for any claim arising from retention of the protest materials seized in connection with the arrest and held until the charges were dropped.  *Gillan*, 147 Cal. App. 4th at 1048.

Even though defendants are not entitled to immunity as to the complete claim, the complaint as currently drafted is insufficient.  To state a claim for intentional infliction of

---

[5]  In California, false arrest and false imprisonment are not separate torts.  *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 753 n.3 (1997).

1    emotional distress, plaintiff must allege "(1) extreme and outrageous conduct by [defendants]

2    with the intention of causing, or reckless disregard of the probability of causing, emotional

3    distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

4    proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v.*

5    *Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotations omitted).  "A defendant's conduct is 'outrageous'

6    when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community'

7    [and] the defendant's conduct must be 'intended to inflict injury or engaged in with the realization

8    that injury will result.'" *Id.* at 1050-51 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th

9    965, 1001 (1993)).  Plaintiffs' complaint says only that plaintiffs were "emotionally distressed"

10   by the officers' actions.  ECF No. 2 ¶ 132.  This is insufficient.

11          To the extent the sixth claim rests on the seizure and retention of the protest

12   materials, the complaint is dismissed without leave to amend.  Otherwise, plaintiffs will be given

13   the opportunity to file an amended claim.

14       B. <u>False Imprisonment (Seventh Claim)</u>

15          In California, the tort of false imprisonment requires "nonconsensual, intentional

16   confinement of a person, without lawful privilege, for an appreciable length of time, however

17   short." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994) (citation, quotation marks omitted).

18   Although the restraint need not be accomplished by physical force, there must be some

19   unreasonable duress that prevents a person from leaving.  *Id.*

20          The complaint does not allege that defendants Bartosik or May were at all

21   involved the application of any duress or other means of confining plaintiffs.  *See, e.g., Bolbol v.*

22   *City of Daly City*, 754 F. Supp. 2d 1095, 1113-14 (N.D. Cal. 2010) (dismissing defendant whose

23   only role was telephone call with plaintiff before the protest).  Moreover, Penal Code § 847(b)(1)

24   provides that an officer may not be civilly liable for false imprisonment or arrest when he

25   reasonably believed that the arrest was lawful.  *Blankenhorn v. City of Orange*, 485 F.3d 463,

26   486-87 (9th Cir. 2007).  As noted above, even accepting the complaint in the light most favorable

1  to plaintiffs, the officers here reasonably believed they were entitled to arrest the plaintiffs for

2  trespassing after plaintiffs acknowledged they did not have a permit for their protest activities and

3  then refused to leave the premises.  Because the officers are immune, Cal Expo is as well:

4  Government Code § 815.2(b) provides "[e]xcept as otherwise provided by statute, a public entity

5  is not liable for an injury resulting from an act or omission of an employee of the public entity

6  where the employee is immune from liability." *Tacci v. City of Morgan Hill*, No. C-11-04684

7  RMW, 2012 WL 195054, at *9 (N.D. Cal. Jan. 23, 2012).

8       C.  Bane Act (Eighth Claim)

9            California's Bane Act, Civil Code § 52.1, provides that a person "whose exercise

10  or enjoyment" of constitutional rights has been interfered with "by threats, intimidation, or

11  coercion" may bring a civil action for damages and injunctive relief.   The essence of such a claim

12  is that "the defendant, by the specified improper means . . . tried to or did prevent the plaintiff

13  from doing something he or she had the right to do under the law or force the plaintiff to do

14  something he or she was not required to do." *Austin B. v. Escondido Union School Dist.*, 149 Cal.

15  App. 4th 860, 883 (2007).

16            Defendants first argue that the complaint alleges only that Bartosik received a fax

17  and that May talked to plaintiffs about their intention to protest.  Accordingly the complaint does

18  not show that these two defendants interfered with plaintiffs' rights, much less by "threats,

19  intimidation or coercion." *See Kenner v. Kelly*, No. 11-CV-2520 BEN (BGS), 2012 WL 553943,

20  at *2 n.3 (S.D. Cal. Feb. 21, 2012) (speech alone does not qualify as threat, coercion or

21  intimidation).

22            Defendants next argue they are immune as to any portion of the claim based on the

23  arrest or confiscation of materials.  As noted above, defendants have not shown that any

24  immunity for false arrest under Penal Code § 847(b)(2) extends to derivative claims or that any

25  arrest was based on an invalid enactment.   To the extent that this cause of action is based on the

26  retention of plaintiffs' protest materials, Civil Code § 821.6 provides immunity to the individual

defendants and Civil Code § 815.2(b) provides immunity to Cal Expo. *Gillan*, 147 Cal. App. 4th at 1050; *Robinson v. County of Solano*, 278 F.3d 1007, 1016 (9th Cir. 2002).

This claim is granted as to Bartosik and May for failing to state a claim and as to all defendants because they are immune to liability for their retention of plaintiffs' materials. It is denied as to plaintiffs' claims for improper arrest and confiscation of their materials.

VIII. <u>Punitive Damages</u>

Finally, defendants argue that plaintiffs have not adequately pleaded their entitlement to punitive damages.

Punitive damages are available in a civil rights action under § 1983 when defendants' conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). In California, punitive damages are available where clear and convincing evidence establishes that a defendant is guilty of oppression, fraud, or malice. CAL. CIV. CODE § 3294(a). In light of the fact that plaintiffs are being given leave to amend certain portions of their complaint, any evaluation of their claim for punitive damages is premature. Defendants' motion in this respect is denied without prejudice.

IT IS THEREFORE ORDERED that:

1. Defendants' motion to dismiss is granted in part and denied in part as set forth in the body of this order; and

2. Plaintiffs' amended complaint is due within twenty-one days of the filing date of this order.

DATED: September 17, 2012.

_____
UNITED STATES DISTRICT JUDGE