1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH P. CUVIELLO, et al.,

12            Plaintiffs,                         Civ. No. S-11-2456 KJM EFB

13       vs.
                                                  ORDER
14   CAL EXPO, et al.,

15            Defendants.
                                          /
16

17            This case was on calendar on May 10, 2013 for argument on plaintiffs' motion for

18   a preliminary injunction.

19             Plaintiff Joseph Cuviello appeared pro se; Gilbert Leigh and Matthew Springman

20   appeared for plaintiffs Deniz Bolbol and Shannon Campbell and appeared specially for plaintiff

21   Mark Ennis, who was present; George Acero and David King appeared for defendants Cal Expo,

22   Norbert Bartosik, Brian May, Robert Craft, Craig Walton, Robert Whittington, Larry Menard,

23   Everest Robillard and John Tatarakis; and Matthew Liedle appeared telephonically for Rocky

24   Mayes.

25            After the motion had been submitted, counsel for defendant submitted a copy of

26   Cal Expo's newly revised free speech guidelines.  ECF No. 99.  Plaintiffs have asked to file

1

1 | supplemental briefing concerning the impact of the revisions.   ECF No. 97.   Supplemental

2 | briefing is allowed, as discussed and limited below.

3 | I. <u>BACKGROUND</u>

4 |        A.     Complaint and Pending Motion

5 |        Plaintiffs Joseph Cuviello, Deniz Bolbol, Shannon Campbell and Mark Ennis are

6 | members of Humanity Through Education, a group that seeks to educate the public about the

7 | abuse and mistreatment of animals, including tigers and Asian elephants, used by circuses and

8 | other entertainment groups.   First Amended Complaint (FAC), ECF No. 30, ¶¶ 20, 22.   As part

9 | of their educational activities, they hold signs and banners, offer informational leaflets and show

10 | video footage of the mistreatment of circus animals.   *Id.* ¶ 21.   Cal Expo is "a separate entity in

11 | state government," governed by its own Board of Directors.   *Arnold v. California Exposition &*

12 | *State Fair*, 125 Cal. App. 4th 498, 504 (2004); CAL. FOOD & AGR. CODE § 3301.

13 |        The Carson and Barnes Circus leased Parking Lot A on the Cal Expo ground for

14 | performances from May 20-22, 2011.   ECF No. 30 ¶ 30.   Without securing the permit required

15 | by Cal Expo's Free Speech Guidelines, plaintiffs arrived at Cal Expo on May 20 and protested at

16 | Parking Lot A, near the entrance to the circus.   *Id.*  ¶¶ 34, 43.   They were eventually arrested for

17 | trespassing.   *Id.* ¶¶ 58, 61.   They returned to protest the circus on May 21 and 22, but remained

18 | on the sidewalk and did not attempt to go onto Cal Expo's grounds.   *Id.* ¶¶ 79, 89.   They filed

19 | suit alleging a number of causes of action, including a facial and as applied challenge to Cal

20 | Expo's Free Speech guidelines.

21 |        On March 25, 2013, plaintiffs filed a motion for a preliminary injunction seeking

22 | the following relief:

23 |           •     to enjoin defendants from enforcing its policy of

24 |                designating free speech zones and afford plaintiffs equal

25 |                access to all areas accessible to the public at large;

26 | /////

1        •        to strike the 72-hour notice requirement and the

2                 requirement that protestors seek approval from and provide

3                 identifying information to Cal Expo management before

4                 engaging in free speech activities;

5        •        to strike the following time, place and manner regulations:

6                          •        confining protestors
                                    to free speech zones;

7
                                 •        imposing registration, notice
8                                         and approval requirements;

9                                •        imposing size restrictions on
                                          banners and signs; and
10
                                 •        requiring protestors to secure
11                                        prior approval for the use of
                                          sound devices.
12

13   ECF No. 65 at 7.[1]

14          B.      Original and Revised Free Speech Guidelines

15          Plaintiffs and Cal Expo provided copies of the challenged Free Speech

16   Guidelines.   Defs.' Request for Judicial Notice, ECF No. 76; Decl. of G. Whitney Leigh, ECF

17   No. 66.  These provided in relevant part:

18          The California Exposition and State Fair (Cal Expo) hereby finds that
            these guidelines are intended to set forth in writing Cal Expo's long-
19          standing policy governing the conduct of Cal Expo employees as well as
            members of the public under the First Amendment to the United States
20          Constitution and Article 1 of the California Constitution on Cal Expo's
            grounds.
21
            These guidelines . . . do not represent any admission that the
22          facilities of Cal Expo are open as a public forum.  It is the policy
            of Cal Expo to allow within the parameters set forth herein,
23          reasonable access to its grounds and designated free speech
            expression zones for demonstrations for free speech activity . . . .
24
     ECF No. 66-1 at 1.  The definitions included the following:
25

26
            [1] The court refers to the pagination assigned by its ECF system.

                                              3

1

2

3

4

5

6
 
 3.  On-Site Registration: Organizations or individuals desiring to engage in free speech activity on-site which is provided on a "first come, first serve basis," need to register with Cal Expo prior to the event.  The purpose of registration is not to censor in any way or review discretionarily the content of the speech involved, but to allow sufficient opportunity for Cal Expo to assign space for free speech activities . . . . .  A request for registration may be made <u>72 hours prior to the planned event</u>, but not more than 30 days prior to the planned event at the offices of Cal Expo.  Interested parties should apply at the Administration office Monday through Friday from 8 a.m. to 5 p.m.  Information to be provided shall include:

7
 (a) The time of the planned event;

8
 (b) The nature of the planned activity;

9

10
 (c) The approximate number of persons proposed to be involved provided that no more than 10 shall be assigned to a zone from each group or organization; and

11

12
 (d) A designated contact person, including a means of communication of said person such as address or phone number.

13
 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

14

15

16

17
 In evaluating the registration, Cal Expo will not discriminate on the basis of content of ideas or beliefs.  Cal Expo may, however, require certain individuals or organizations to engage in free speech activities in different areas of the fairground or to maintain a reasonable distance from other individuals or associations, if there is a reasonable belief. . . that there may be conflict among or between various individuals or groups . . . .

18

19  *Id.* at 1-4 (emphasis in original).  The Guidelines also limited protestors to designated

20  free expression zones, restrict the size of banners and signs, and require a permit for the use of

21  sound devices.  *Id.*

22   The new Guidelines, which the court understands entirely supersede the prior

23  guidelines,  maintain Cal Expo's finding that the grounds constitute a public forum only during

24  /////

25  /////

26  /////

4

1   the State Fair, but now provide:

2           3.  On-site Registration: Organizations or affiliated groups of
    persons desiring to engage in free speech activity on-site in large
3   groups should register with Cal Expo prior to the event.  For
    purposes of these guidelines, it shall be presumed that a group of
4   more than 25 protestors shall be a large group requiring
    registration.  Registration is not mandatory for affiliated persons
5   not meeting the definition of a large group.  However, early
    registration may allow the applicant to select the desired free
6   speech zone which are allotted on a "first come, first serve basis."
    The purpose of registration is not to censor in any way or review
7   discretionarily the content of the speech involved, but to allow
    sufficient opportunity for Cal Expo to assign space for free speech
8   activities and to provide the participants with copies of those rules
    governing the use of free expression zones.  Registration will be
9   granted on a first-come, first serve basis.  A request for registration
    may be made 48 hours prior to the planned event, but not more
10  than 30 days prior to the planned event at the offices of Cal Expo.
    Interested persons may obtain an application online or at the Cal
11  Expo Administration office Monday through Friday from 8 a.m. to
    5 p.m.  Completed applications may be submitted by fax, email, or
12  in person.  Information to be provided shall include:

13          (a) The time of the planned event;

14          (b) The nature of the planned activity;

15          (c) The approximate number of individuals in the
            group being registered, provided that no more than
16          10 individuals shall be assigned to a free expression
            zone from each group or organization; and

17
            (d) A designated contact person, including a means
18          of communication of said person such as a street
            address, email address, and/or phone number.

19
            (e) In order to protect patrons from fraudulent
20          solicitations or deceptive false speech, if funds are
            solicited, a description of how the voluntary
21          contributions be used [*sic*].

22          In review of registration Cal Expo will not discriminate on the
    basis of content of ideas or beliefs.  Cal Expo may, however,
23  require certain individuals or organizations to engage in free
    speech activities in different areas of the fairgrounds or to maintain
24  a reasonable distance from other individuals or associations, if
    there is a reasonable possibility that there may be conflict among
25  or between various individuals or groups that will disturb the
    peace, interfere with the flow of pedestrian or vehicle traffic, or
26  otherwise pose a threat to the health and safety of any person.

1
2
3

> In order to accommodate the maximum number of people in
> groups within the free expression zone, commensurate with safety,
> the number of individuals in a group will be limited.  In addition,
> an exclusive area within the zone, six feet by six feet, will be
> assigned for use by an individual or group.

4

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6
7
8
9

> 6.  Spontaneous Expression: Notwithstanding the 48 hour
> registration requirement for large groups, such a registration will
> not be required for persons or groups engaging in spontaneous
> expression.  For purposes of these guidelines, "spontaneous
> expression" shall mean expressive activity in response to events
> coming into public knowledge within the past forty-eight hours.

10  ECF No. 99 at 6-7.  The revised Guidelines have abandoned the permit requirement for the use

11  of sound devices and the restrictions on the size of signs and banners, but as the quoted portions

12  suggest, have maintained the free expression zones as the only place for free speech activities.

13  *Id*. at 5-7.

14         C.        Evidence Presented In Connection With Motion

15         Plaintiffs supported their motion attacking the original guidelines with the

16  declaration of plaintiff Cuviello, who avers he is a member of Humanity Through Education, a

17  grassroots group "dedicated to the humane treatment of animals and to the education of the

18  public about the abuse and mistreatment of animals in circuses."  Decl. of Joseph Cuviello, ECF

19  No. 67 ¶ 2.  He identifies plaintiffs Deniz Bolbol, Shannon Campbell, and Mark Ennis as

20  members of the organization.  *Id*. He avers that [i]n addition to our focus upon animal

21  mistreatment in the circus and entertainment industry, HTE does public education regarding the

22  abuse and mistreatment of animals by other industries, including animals used by laboratories,

23  farmed animals and animals killed for fur."  *Id*. ¶ 3.  "HTE's demonstration activity includes

24  holding signs and banners, videotaping and exhibiting video footage of various circuses'

25  treatment of different animals, and leafleting."  *Id*.  He describes events during the group's

26  protest of the Carson and Barnes Circus at Cal Expo in May 2011 as well as their protests against

1    Carson and Barnes "in numerous California cities." *Id*. ¶¶ 8-19.   Cuviello says that he will

2    "continue organizing demonstrations at Cal Expo events at which animals are utilized for

3    entertainment purposes.  This includes, but is not limited to, further circus and California State

4    Fair events." *Id*. ¶ 20.   He closes by saying that he plans "to organize and engage in similar free

5    speech activity" during the State Fair, scheduled to begin on July 12, 2013, "wherein animals

6    giving birth are displayed for the public." *Id*.

7              Defendants provided the declarations of Rick Pickering, Cal Expo's Chief

8    Executive Officer, and Robert Craft, Cal Expo's Chief of Police.  Pickering describes Cal Expo

9    as encompassing eighteen venues over 869 acres, including manmade lakes, RV campgrounds,

10   concert facilities, a miniature golf course, a water park, a horse racing track, and 15,000 parking

11   spaces.  Decl. of Rick Pickering, ECF No. 77, ¶ 6.   Cal Expo is not open to the public: when

12   there is an event, there is generally a fee to enter and a fee to park; the fairgrounds are fenced

13   and part of the parking lot is fenced; and members of the public cannot come onto Cal Expo

14   grounds or parking lots whenever they please.  *Id.* ¶ 20; ECF No. 76-2 ¶¶ 3-4.

15             Cal Expo hosts "dozens of events year round," with many events occurring

16   simultaneously in multiple venues, such as gun shows, home and garden shows, dog shows,

17   horse racing, the Sacramento County Fair and the State Fair, which is the most attended event.

18   ECF No. 77 ¶¶ 7-8.  In 2012, approximately 691,822 people attended the State Fair. *Id*. ¶ 7.

19   Although Cal Expo has leased its facilities to circuses in the past, no circus events are currently

20   scheduled.  *Id*. ¶ 9.

21             According to Pickering, the Guidelines' registration requirement allows protestors

22   to reserve space in one of the free speech zones, gives Cal Expo notice about the number of

23   protestors so it can determine the appropriate level of security, and allows Cal Expo to determine

24   whether those soliciting contributions are legitimate charitable organizations.  ECF No. 77 ¶ 16.

25   Cal Expo asks for the identity of a single contact person so that it knows where to direct any

26   questions that may arise.  *Id*. ¶ 17.

1    Along with plaintiffs' reply, plaintiffs Bobol and Ennis filed declarations averring

2  that they intend to "engage in educational protests involving the mistreatment of animals" at Cal

3  Expo when "such events are scheduled" and identifying "such events" as "horse shows, dog

4  races, and similar events, as well as the circus and the state fair."   ECF Nos. 84 & 85 ¶ 1.   They

5  say they "need to stand where the public will be able to see" and "need to be able to move freely

6  about to handout [*sic*] leaflets . . . ."  *Id*. ¶ 2.   They claim they "intend to use large signs and

7  banners" and "video playback devices, as well as amplified sound devices . . . ."  *Id*. ¶ 3.   Finally,

8  they aver that at HTE demonstrations they "frequently express our views in the form of

9  vocalized catch phrases directed to the public by multiple members of the group."  *Id*. ¶ 4.

10 Plaintiff Cuviello has submitted an additional declaration, averring that the free expression zones

11 identified on the map and photographs accompanying Pickering's declaration are nowhere near

12 Parking Lot A, where Cuviello  was protesting the Carson and Barnes Circus.  ECF No. 83 ¶ 2.

13 Finally, plaintiffs submit the declaration of their counsel, who attaches a page from Cal Expo's

14 website promoting tailgate parties on May 11, 2013 in the Cal Expo parking lot in connection

15 with a Race for the Cure event.  ECF No. 82 ¶ 7.

16 II.  STANDARDS FOR A PRELIMINARY INJUNCTION

17    Injunctive relief is an extraordinary remedy that may only be awarded upon a

18 clear showing that the moving party is entitled to such relief; it is never ordered as of right.

19 *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Lopez v. Brewer*, 680 F.3d

20 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy,

21 one that should not be granted unless the movant, *by a clear showing*, carries the burden of

22 persuasion.") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

23 The party seeking injunctive relief must show it "is likely to succeed on the merits, . . . is likely

24 to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in

25 [its] favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.

26    Before the *Winter* decision, the Ninth Circuit employed a "sliding scale" or

8

1    "serious questions" test, which allowed a court to balance the elements of the test "so that a

2    stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild*

3    *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Clear Channel Outdoor, Inc. v.*

4    *City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).  Recently, the Circuit has found that its

5    "serious question" sliding scale test survived *Winter*: a court may issue a preliminary injunction

6    when the moving party raises serious questions going to the merits and demonstrates that the

7    balance of hardships tips sharply in its favor, so long as the court also considers the remaining

8    two prongs of the *Winter* test.  *Cottrell*, 632 F.3d at 1134-35.  However, a court need not reach

9    the other prongs if the moving party cannot as a threshold matter demonstrate a "fair chance of

10   success on the merits." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (quoting

11   *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2008)) (internal quotations omitted).  "In the

12   First Amendment context, the moving party bears the initial burden of making a colorable claim

13   that its First Amendment rights have been infringed, or are threatened with infringement, at

14   which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of*

15   *San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011)

16          Depending on the nature of the relief sought, injunctions are either "prohibitory"

17   or "mandatory."  A prohibitory injunction preserves the status quo pending the outcome of the

18   litigation while a mandatory injunction "goes well beyond simply maintaining the status quo,"

19   by ordering a party to take action. *Meghrig v. KFC W.*, 516 U.S. 479, 484 (1996);  *Stanley v.*

20   *Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).  In this context, the status quo is "the last,

21   uncontested status which preceded the pending controversy." *Marlyn Nutraceuticals v. Mucos*

22   *Pharma GmbH & Co*, 571 F.3d 873, 879 (9th Cir. 2009).  A court "should be extremely

23   cautious" about issuing a mandatory injunction. *Martin v. Int'l Olympic Comm.*, 740 F.2d 670,

24   675 (9th Cir. 1984).  Accordingly, a court should not issue a mandatory injunction "unless both

25   the facts and the law clearly favor the moving party and extreme or very serious damage will

26   /////

1   result." *Franck v. Yolo Cnty.*, No. CIV. S–11–2284 LKK/GGH,  2012 WL 3292406, at \*2 (E.D.

2   Cal. Aug. 13, 2012).

3   III.  ANALYSIS

4              Plaintiffs have argued they are likely to succeed on the merits of their facial and

5   as applied challenges to the Guidelines because the Guidelines restrict speech in a public forum.

6   They also argue that the Guidelines are void for vagueness and overly broad.

7              Defendants have argued that plaintiffs Bolbol, Ennis and Campbell lack standing

8   to seek injunctive relief because they have not said they intend to protest at Cal Expo in the

9   future; that Cuviello's standing is limited to alleging that the Guidelines are improper in relation

10  to the State Fair; and that he does not have standing to seek an injunction against the free

11  expression zones or the restriction on the use of sound devices or the size of signs.  Defendants

12  also argue that plaintiffs are unlikely to succeed on the merits of their underlying challenge

13  because Cal Expo is not a public forum except during the State Fair and, during the State Fair,

14  the Guidelines are reasonable time, place and manner restrictions.

15       A.  Standing

16            "To seek injunctive relief, a plaintiff must show that he is under threat of

17  suffering 'injury in fact' that is concrete and particularized; the threat must be actual and

18  imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of

19  the defendant; and it must be likely that a favorable judicial decision will prevent or redress the

20  injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

21            1.  Bolbol, Ennis and Campbell

22            Defendants argue that Bolbol, Ennis and Campbell have not established standing

23  to seek injunctive relief because they did not submit declarations stating they intend to return to

24  Cal Expo.  Plaintiffs Bolbol and Ennis counter that the court may rely on the declarations they

25

26

1  have submitted in reply.[2]  They also argue that Cuviello's declaration establishes the other

2  plaintiffs' standing because Cuviello averred that he intends "to continue organizing

3  demonstrations at future Cal Expo events . . . ."  ECF No. 67 ¶ 20.  According to plaintiffs,

4  Cuviello's use of the word "organize," coupled with his  description of HTE activities, is a

5  sufficient articulation of all plaintiffs' intention to protest.   ECF No.  92 at 5.

6           As a threshold matter, the court declines to consider the declarations submitted by

7  Bolbol and Ennis.  *See, e.g., Zamani v. Carnes,* 491 F.3d 990 (9th Cir. 2007) (court need not

8  consider arguments raised for the first time in a reply brief); *Coleman v. Brown*, __ F. Supp. 2d

9  __, 2013 WL 1397335, at *24 n.35 (E.D. Cal. Apr. 5, 2013) (stating that "the time and place" for

10 a movant to submit evidence in support of the motion is with the motion, not the reply); *USF Ins.*

11 *Co. v. Smith's Food and Drug Ctr.*, __ F. Supp. 2d __, 2013 WL 438585, at *13 n.1 (D. Nev.

12 Feb. 4, 2013) (declining to consider new evidence movant "improperly introduced" with a

13 reply); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 309 n.5 (N.D. Cal. 2005) (stating that

14 movants' attempt to introduce new evidence in connection with their reply papers is improper).

15          Second, Cuviello's vaguely expressed intention "to continue organizing

16 demonstrations," does not establish standing for the other three plaintiffs.  Even assuming that

17 the other plaintiffs could rely on Cuviello's declaration to establish their intention, the

18 declaration does not suggest that Cuviello always demonstrates with the other plaintiffs or

19 identify them by name as part of his organizing efforts.  *Whitaker v. Garcetti*, 486 F.3d 572, 580

20 (9th Cir. 2007) (stating that "each plaintiff" must establish standing); *Adams v. Freedom Forge*

21 *Corp*., 204 F.3d 475, 488 (3d Cir. 2000) (concluding that injunctive relief for a group of people

22 is not appropriate in the absence of evidence that all the parties who seek injunctive relief are

23 similarly threatened).

24 /////

25

26          [2] Although plaintiffs claim Campbell has provided a declaration in connection with the
reply, the court has not located it in the record.

11

1          Third, plaintiffs rely on California cases holding that past harm may be a

2    sufficient basis for the issuance of an injunction.  However, "a plaintiff whose cause of action is

3    perfectly viable in state court under state law may nonetheless be foreclosed from litigating the

4    same cause of action in federal court, if he cannot demonstrate the requisite injury" to support

5    Article III standing. *Lee v. Am. Nat'l Ins. Co*, 260 F. 3d 997, 1001-02 (9th Cir. 2001); *Cantrell v.*

6    *City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001).  Under federal law, past injury by itself

7    does not establish standing.  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010); *Mayfield v.*

8    *United States*, 599 F.3d 964, 970 (9th Cir. 2010), *cert. denied* 131 S.Ct. 2456 (2011) ("Once a

9    plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a

10   'real or immediate threat . . . that he will again be wronged in a similar way.'" (quoting *City of*

11   *Los Angeles v. Lyons*, 461 U.S. 95,  111 (1983))).  Plaintiffs Bolbol, Ennis and Campbell have

12   not demonstrated any immediate threat.

13          Accordingly plaintiffs Bolbol, Ennis and Campbell do not have standing to seek a

14   preliminary injunction.

15          2. Cuviello

16          In the declaration submitted with the moving papers, Cuviello describes his past

17   protest activities, which involved holding signs and banners of unidentified size, leafleting, and

18   exhibiting video footage of the treatment of circus animals, with no suggestion the video footage

19   includes sound. ECF No. 67 ¶¶ 4, 12.  He avers he intends to engage in "similar free speech

20   activity" at other events using animals for entertainment, including animal live birth exhibits at

21   the upcoming State Fair as well as any circuses. [3] *Id.* ¶ 20.  He provides no information

22   suggesting that he will protest at other currently scheduled events.  In addition, Cuviello does not

23   say where he intends to protest live birth exhibits or whether he will use any sound devices or

24   signs exceeding the Guidelines' size restrictions.  He similarly does not say that he intends to

25

26   _____

     [3] Plaintiff has presented no support for his claim that there will be such exhibits at this
     year's State Fair.   Nevertheless, as Cal Expo does not challenge this omission, the court accepts
     plaintiff's implied claim that there will be such exhibits.

1   eschew applying for a permit.  Given his belief that the permit requirement is unconstitutional, it

2   is reasonable to assume he will act in accordance with those beliefs.  ECF No. 30 ¶ 34.

3            Even if the court considers Cuviello's reply declaration, it adds nothing to

4   Cuviello's professed desire to protest during the State Fair.  It says only that had Cuviello been

5   confined to the free speech zones during the circus protest, he would not have encountered circus

6   patrons.  ECF No. 83 ¶ 2.  In addition, in reply plaintiffs argue that "the signs Mr. Cuviello

7   intends to use are those that are displayed in the exhibits to his declaration."  ECF No. 92 at 7.

8   These show Cuviello and others holding signs and banners of various sizes denouncing Carson

9   and Barnes Circus.  Cuviello cannot credibly claim that he will use these signs to protest live

10  animal births.

11           Defendants argue that Cuviello has not provided sufficient detail to show that any

12  protest he intends to mount would be affected by the provisions of the Guidelines he seeks to

13  enjoin and that, if an injunction is appropriate, it should not apply to anything but the State Fair,

14  as Cuviello has not identified any other events that will draw his protests.

15           Although "constitutional challenges based on the First Amendment present

16  unique standing considerations," plaintiffs must still show an actual or imminent injury to a

17  legally protected interest. *Lopez v. Candaele*, 630 F.3d at 785 (internal citations, quotation

18  marks omitted).  To do so, they must show "with some degree of concrete detail," that they

19  intend to violate the challenged law and that there is a credible threat of enforcement.  *Id*.  To

20  show a "credible threat of enforcement" plaintiffs must show "a concrete plan to violate the law

21  in question by giving details about their future speech such as when, to whom, where, and under

22  what circumstances."  *Id*. at 787 (interior citation, quotation marks omitted).   A plaintiff must

23  demonstrate standing "for each claim he seeks to press and for each form of relief sought."

24  *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 968 (9th Cir. 2009) (internal quotations & citations

25  omitted); *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 893 (9th Cir. 2007) (stating

26  that standing is addressed on a claim by claim basis).

1    Apart from the State Fair in July, Cuviello has not identified any specific events

2 he will attend for purposes of protest.  To show imminent future injury, "some day intentions––

3 without any description of concrete plans, or indeed any specification of *when* the some day will

4 be––do not support standing." *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1255 (9th Cir. 2010);

5 *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (emphasis in

6 original; finding that plaintiffs' "wish and inten[t]" to violate the law without providing "any

7 particular time or date" did not establish standing); *Thomas v. Anchorage Equal Rights Comm'n*,

8 220 F.3d 1134, 1139 (9th Cir. 2000) (stating that "even if 'concrete plan' does not mean cast in

9 stone, the Constitution requires something more than a hypothetical intent to violate the law");

10 *but see Wong v. Bush*, 542 F.3d 732 (9th Cir. 2008) (finding plaintiffs had standing when they

11 alleged they would enter the water to protest should the high speed ferry return to a certain

12 location).

13    Plaintiff relies on *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346

14 (9th Cir. 1994) to argue that the Ninth Circuit has found standing when a plaintiff challenges "an

15 overall plan, and the agency controls the time and location of the plan's implementation."  ECF

16 No. 92 at 6.  In *Salmon River*, the plaintiffs alleged that the Forest Service's plan for herbicide

17 spraying did not comply with the National Environmental Protection Act (NEPA).  In discussing

18 ripeness, rather than standing,[4] the court rejected the Forest Service's argument that the action

19 would not be ripe until the District Forester scheduled an application of herbicide.  The court

20 said, "'[t]o the extent the plan pre-determined the future, it represents a concrete injury . . . ." and

21 "to the extent the [Final Environmental Impact Statement] FEIS here sets guidelines that

22 determine future herbicide applications, the Service's failure to comply with NEPA represents a

23 concrete injury."  *Id*. at 1355.  These statements were not made in a vacuum:  plaintiffs presented

24

25    [4] This court recognizes, however, the relationship between ripeness and standing.  *Alcoa,*
*Inc. v. Bonneville Power Admin*., 698 F.3d 774, 793 (9th Cir. 2012) (characterizing the ripeness
26 inquiry when compared to standing as "standing on a timeline") (internal quotation, citation
omitted).

1 detailed declarations about their regular past visits and projected future use of the forests subject

2 to the herbicide plan.  *Id*. at 1351-52.  In light of the plaintiffs' regular use  of the forests, any

3 implementation of the plan could cause them injury.

4          In this case, in contrast, Cuviello has presented evidence of a single visit to Cal

5 Expo, in connection with a circus protest, and a proposed visit to the State Fair to protest the live

6 birth exhibits; he does not suggest that the Guidelines have deterred him from undertaking

7 protests he otherwise would have mounted.  Thus, the Guidelines do not harm him unless he

8 decides to protest an event at the State Fair.  Even assuming injury in the *Salmon River* case is

9 the same as the injury in this case, plaintiff has not provided the type of evidence presented to

10 the court in *Salmon River* to support his claim of injury here.  *See Lopez*, 630 F.3d at 792

11 ("[O]ur inquiry into injury-in-fact does not turn on the strength of plaintiffs' concerns about a

12 law, but rather on the credibility of the threat that the challenged law will be enforced against

13 them.").

14          In addition, as plaintiff  has not shown he will be using banners or sound devices

15 during the State Fair or suggested that he plans to protest outside the free speech zones, he lacks

16 standing to challenge these provisions.  *See Carrico v. City and Cnty. of San Francisco*, 656 F.3d

17 1002, 1007 (9th Cir. 2011) (stating that "[w]ithout any description of intended speech or

18 conduct," the court could not analyze what plaintiffs were likely to do and could not determine

19 whether "what they would like to do even arguably falls within the scope" of the challenged

20 ordinance); *Lopez*, 630 F.3d at 790 (stating that because plaintiff had given only "few details

21 about his intended future speech," the court could not evaluate whether it would violate the

22 challenged policy); *see also Cuviello v. City & Cnty. of San Francisco*, ___ F. Supp. 2d ___, 2013

23 WL 1615606, at *7 (N.D. Cal. Apr. 15, 2013) ("In order to have standing, Plaintiffs must allege

24 facts showing 'concrete plans' to violate each restriction of section 7.15.").

25          As Cuviello desires to protest, however, and has expressed his belief that the

26 permit requirement is unconstitutional, he has standing to challenge that aspect of the Guidelines

1    in this proceeding.  *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022

2    (9th Cir. 2006) (finding that organization that organized protests had standing to challenge

3    permit requirement for protests).   Because Cuviello avers that he will protest, the court rejects

4    Cal Expo's argument that his failure to say anything about the size of future protests undercuts

5    his showing:  he has sufficiently alleged that he will mount an individual protest.

6             B. Likelihood of Success on the Merits

7                   Plaintiff argues that the permit requirement is an unconstitutional prior restraint

8    and is vague because it provides no rubric for the grant or denial of permits to protest.  ECF

9    No. 65 at 18-20, 23.

10                  Defendant counters that because Cal Expo is not a public forum at all times,

11   plaintiff cannot show that the Guidelines are unconstitutional in every conceivable aspect.   ECF

12   No. 76 at 10-14, 22.

13                  In light of the recent changes to the Free Speech Guidelines' registration

14   requirement, the court's analysis of Cuviello's likelihood of success on the merits may be

15   different than it would have been had these provisions not be amended.  Accordingly the court

16   will allow plaintiff Cuviello, who has established his standing to challenge the registration

17   requirement, and defendant Cal Expo to submit supplemental briefing addressing the impact of

18   these changes on the pending motion, as limited by this order.  The court will not consider any

19   additional declarations in the absence of an explanation as to why the party offering a declaration

20   could not have provided it earlier in the litigation.

21                  Accordingly, IT IS THEREFORE ORDERED that:

22                  1. Within fourteen days of the date of this order, plaintiff Cuviello and defendant

23   Cal Expo may file simultaneous briefs, limited to ten pages each, discussing the impact of the

24   revised Guidelines on plaintiff's challenge to the permit requirement; and

25   /////

26   /////

1          2. Plaintiff Cuviello's request to be allowed to use the court's ECF system is

2   granted.

3   DATED:  June 12, 2013.

4

5                                                    _____
                                                     UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26