1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH P. CUVIELLO, et al.,

11           Plaintiffs,                      No. 2:11-CV-2456 KJM EFB

12       vs.
                                             ORDER
13   CAL EXPO, et al.,

14           Defendants.
     _____/

15

16          This case was on calendar on March 15, 2013 for argument on motions to dismiss

17   filed by defendant Mayes and by defendants Bartosik, May, Craft, Walton, Whittington, Menard,

18   Robillard and Tatarakis (collectively "Defendants"), as well as for a motion for reconsideration

19   filed by plaintiffs Bolbol, Campbell, Ennis and Cuviello.

20          Plaintiff Joseph Cuviello appeared pro se; Gilbert Leigh appeared for plaintiffs

21   Deniz Bolbol and Shannon Campbell; Matthew Siroka appeared telephonically for plaintiff

22   Mark Ennis; George Acero and David King appeared for defendants Cal Expo, Norbert Bartosik,

23   Brian May, Robert Craft, Craig Walton, Robert Whittington, Larry Menard, Everest Robillard

24   and John Tatarakis; and Matthew Liedle appeared for Rocky Mayes.

25          After considering the parties' argument, the court DENIES the motion for

26   reconsideration and GRANTS in part and DENIES in part the motions to dismiss.

I.  BACKGROUND

On September 16, 2011, plaintiffs filed a complaint alleging violations of federal and state constitutional rights and state statutes stemming from their arrest on May 20, 2011 at Cal Expo as they protested treatment of circus animals.  Although defendant Cal Expo did not move to dismiss plaintiffs' challenge to its free speech guidelines, the individual defendants sought to dismiss the claims against them.

On September 19, 2012, the court granted the motions to dismiss plaintiffs' Fourth Amendment and false arrest claims, a claim under 42 U.S.C. § 1985, a claim stemming from the officers' retention of plaintiffs' protest materials, a claim of false imprisonment, all without leave to amend.  The court also dismissed with leave to amend claims against Menard, Robillard, Bartosik and May, namely, conspiracy claims under 42 U.S.C. § 1983, and claims of intentional infliction of emotional distress.  The court denied the motion insofar as plaintiffs claimed that defendants' actions interfered with their First Amendment rights to speech, were undertaken in retaliation for their protest, violated their right to be free of malicious prosecution and the right to equal protection, and also as to plaintiff Bolbol's claim of excessive force and a claim concerning the confiscation of plaintiffs' protest materials.

Plaintiffs filed their First Amended Complaint (FAC) on October 10, 2012.  Defendants and Mayes filed motions to dismiss on October 24, 2012; plaintiffs filed their motion for reconsideration on November 16, 2012.

II.  THE FIRST AMENDED COMPLAINT

Plaintiffs Joseph Cuviello, Deniz Bolbol, Shannon Campbell and Mark Ennis are members of Humanity Through Education, a group that seeks to educate the public about the abuse and mistreatment of animals, including tigers and Asian elephants, used by circuses and other entertainment groups.  FAC, ECF No. 30 ¶¶ 20, 22.[1]  As part of their educational activities,

---

[1]  Further references in this section are to the First Amended Complaint unless otherwise specified.

2

1   they hold signs and banners, offer informational leaflets and show video footage of the

2   mistreatment of circus animals.  ¶ 21.

3         The Carson and Barnes Circus leased Parking Lot A on the Cal Expo ground for

4   performances from May 20-22, 2011.  ¶ 30.  Plaintiffs, who had protested against Carson and

5   Barnes in other venues, planned to demonstrate at the Cal Expo performances and so Cuviello

6   downloaded and read Cal Expo's Free Speech guidelines, which require protestors to obtain a

7   permit at least 72 hours before a planned protest.  ¶ 34.  Around 3:00 p.m. on May 20, plaintiffs

8   faxed a letter to Norm Bartosik, Cal Expo General Manager, and Robert Craft, Cal Expo's Chief

9   of Police, informing them of plaintiffs' intent to demonstrate and plaintiffs' opinion that the

10   permit requirement was unconstitutional.  *Id.*  The fax was routed to Brian May, Deputy General

11   Manager, who called Bolbol and Cuviello and told them they would not be allowed to protest

12   because they had not obtained a permit.  ¶ 36.

13         When Cuviello, Bolbol, Ennis and Campbell walked on to Cal Expo property,

14   they were greeted by Cal Expo Police Officer Mayes, who asked if they had a permit for their

15   protest.  ¶¶ 41, 43.  Mayes told them they were not allowed onto Cal Expo property without a

16   permit but could protest on the sidewalk.  ¶ 43.  Mayes told Ennis that if plaintiffs entered Cal

17   Expo property, they would be asked to leave and arrested for trespassing if they did not leave.

18   ¶ 44.  Plaintiffs moved toward the circus tent set up in Parking Lot A.  ¶ 43.  Mayes contacted

19   Chief Craft and informed him of his exchange with plaintiffs.  ¶ 45.

20         Plaintiffs reached Parking Lot A, near the entrance of the circus tent, an area

21   where tickets were being collected. ¶ 47.  Other demonstrators told Cuviello that they had been

22   told they could not be on the property.  ¶ 48.

23         Officer Tatarakis approached Cuviello and said demonstrators could demonstrate

24   on the sidewalk but were not allowed on Cal Expo grounds without a permit.  ¶ 48.  Cuviello

25   said he would leave if Tatarakis was going to arrest him; Tatarakis said it all depended on what

26   /////

3

the chief wanted. *Id.* When Cuviello asked if the police would warn or inform him of any planned arrest, Tatarakis said, "Consider yourself warned." ¶ 48.

Plaintiffs remained in Parking Lot A for about an hour-and-a half, holding signs, offering leaflets to circus patrons and videotaping the animals. ¶ 50. During this time Menard, Robillard, Walton and Whittington arrived and met with Craft and Mayes; Craft determined that plaintiffs should be arrested rather than cited and released. *Id.*

Before leaving, Ennis and Campbell walked down a road connected to Parking Lot A in order to videotape the animals.   There were no barriers along the road; indeed, a man on a bicycle was travelling on the road and a different man walked a dog along the road. ¶¶ 51-52.

Around 7:40 p.m., plaintiffs packed up their signs, banners and leaflets and began to leave Parking Lot A.  ¶¶ 53-54.  Tatarakis identified plaintiffs to other officers and Craft told the officers to arrest plaintiffs.  ¶ 54.  Bolbol called Ennis and Campbell and said police had surrounded her and Cuviello. *Id.*

During this time, Tatarakis pointed out three women who had been demonstrating with defendants; Mayes talked to the women but did not arrest them. *Id.*

Craft and Walton asked Cuviello and Bolbol for identification. ¶ 55.  Craft told Bolbol they were being detained because they were trespassing.  ¶ 56.  When Cuviello asked Whittington if they were being arrested, Whittington said he did not know. *Id.*  However, Mayes told Cuviello he was being arrested for trespassing and told him to put the camera down. *Id.* Robillard and Whittington assisted Mayes in arresting Cuviello. *Id.*  Mayes refused to tell Cuviello what provision of California Penal Code section 602 was the basis for his arrest. *Id.* Craft and Menard twisted Bolbol's arms behind her back and pushed her to the ground. *Id.*

Craft instructed Walton to arrest Ennis, who was videotaping Bolbol's arrest; Walton forced the camera out of Ennis's hands.  ¶ 58.  Craft said "602," as he pointed at Bolbol, /////

1   Ennis, Campbell and Cuviello.  ¶ 61.  They were taken to the Cal Expo Police Station, where

2   they were handcuffed to a bench.  ¶¶ 62, 64.

3          While the officers were conferring on the citations, the property confiscated from

4   plaintiffs was brought to the police station.  ¶ 66.  Mayes told Cuviello plaintiffs would be given

5   a receipt for the protest materials and that they could pick up the rest during business hours.

6   ¶ 67.  Nevertheless, Mayes refused to issue them a receipt for the three videotapes seized and

7   plaintiffs never received a receipt for the signs, banners and leaflets that police had confiscated.

8   ¶¶ 69, 71.  Mayes said that any personal property that would fit into an eight-by-eight-inch bag

9   would be booked into Sacramento County Jail with plaintiffs and returned to them upon release

10  ¶ 67.  Craft told May about the arrests and May in turn informed Bartosik about the arrests.  ¶ 70.

11         Around 10:00 p.m., plaintiffs were booked into Sacramento County Jail and when

12  they were released early the next morning, they were given Notices To Appear, listing the

13  charges as violations of California Penal Code §§ 602(o), 602.1(a) and 602.6.  ¶¶ 72-73.

14         Because the day of their release was a Saturday, they were not able to retrieve the

15  protest materials directly targeting Carson and Barnes and so when they returned for protests on

16  May 21, they had only generic protest materials.  ¶¶ 76-77.  Plaintiffs remained on the sidewalk

17  outside Cal Expo even though they could see "multiple public events taking place on the

18  property."  ¶ 79.  Even though plaintiffs were on the sidewalk, Craft told Cuviello to move a bag

19  of signs away from the light pole where Cuviello had leaned the bag, claiming the light pole was

20  on state property.  ¶ 80.  Craft also told Cuviello that if any of the protestors came on to state

21  property, they would be arrested.  *Id.*  Craft and Robillard told plaintiffs a property line ran down

22  the middle of the sidewalk and the protestors were not allowed to cross it, but then refused to

23  mark the line.  ¶ 81.  Craft told Ennis he was on state property when Ennis used a cross walk.

24  ¶ 82.

25         Plaintiffs returned to Sacramento on Sunday, May 22, for further protests, again

26  without the materials specific to Carson and Barnes Circus.  ¶ 88.  The absence of the specific

1    materials hampered plaintiffs' efforts to disseminate their message, as did the fact that they could

2    not move beyond the sidewalk.  ¶ 89.

3             On May 23, Cuviello and Bolbol traveled to Cal Expo to retrieve their protest

4    materials in anticipation of a protest against Carson and Barnes that evening in Solano County.

5    They were told to call on May 24 about their materials.  ¶¶ 92-93.  Cuviello called Cal Expo on

6    May 24, but no one from Cal Expo called him back on that day or on May 25.  ¶¶ 95-97.  On

7    May 26, Walton told Cuviello and Bolbol they could retrieve two banners and a plastic bag of

8    signs anytime before 10:30 that evening or on Saturday May 28 but that he did not know

9    anything about the leaflets.  ¶ 100.  Bolbol said she did not want to retrieve the materials

10   piecemeal.  *Id.*  The Cal Expo police department did not return plaintiffs' materials until the

11   charges against plaintiffs were dropped, on June 15, 2011.  ¶ 103.

12            Plaintiffs further allege that defendants Bartosik, May and Craft failed in their

13   duty to train officers on protestors' rights to free speech at Cal Expo and failed to supervise them

14   in their dealings with protestors; because of Cal Expo's history of violating protestors' rights, the

15   instant violations were foreseeable.  ¶¶ 106-108, 113-117.

16            Plaintiffs make seven claims:  (1) a Section 1983 action by all plaintiffs against

17   all defendants, based on the Fourth Amendment right to be free from unreasonable seizures; the

18   right to be free from interference with and retaliation for their exercise of their First Amendment

19   rights; the rights to equal protection and due process; the right to be free from malicious

20   prosecution; and by plaintiff Bolbol against Craft and Menard, based on the right to be free from

21   excessive force; (2) a Section 1983 claim by all plaintiffs against all defendants, based on a

22   conspiracy to violate plaintiffs' rights under the First and Fourteenth Amendments and Article 1,

23   section 2(a) of the California Constitution; (3) a claim by all plaintiffs against all defendants

24   alleging a violation of Article 1, section 2(a) of the California Constitution, guaranteeing liberty

25   of speech; (4) a facial and as applied challenge to California Penal Code section 853.6(i)(7) by

26   all plaintiffs against the State of California; (5) a facial and as applied challenge to Cal Expo's

1   Free Speech guidelines, by all plaintiffs against Cal Expo; (6) intentional infliction of emotional

2   distress by all plaintiffs against the Cal Expo police officers, Craft, Walton, Mayes, Whittington,

3   Menard, Robillard and Tatarakis; and (7) a claim alleging violation of California Civil Code

4   section 52.1 (Bane Act).

5   III.  PRELIMINARY MATTERS

6           A.      The State as a Defendant

7                   Defendants have moved to dismiss all of the claims with the exception of the

8   fourth claim challenging Penal Code section 853.6(i)(7), brought against the State of California

9   only, and the fifth claim challenging the Free Speech Guidelines.  There is no indication that the

10  State was served with summons and the complaint and the State has not appeared in this action.

11  *See* ECF Nos. 4, 31 (the summonses issued list only individual defendants and Cal Expo on the

12  first and defendant Tartarakis on the second).

13                  Under Rule 4(m) of the Federal Rules of Civil Procedure, service on defendants

14  must be made within 120 days of the filing of the complaint.  Service of process is the

15  mechanism by which a court "acquires the power to enforce a judgment against the defendant's

16  person or property."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (internal quotation,

17  citation omitted).  If a plaintiff does not show good cause for failure timely to effect service, the

18  court has the discretion to dismiss the complaint.  *Lemoge v. United States*, 587 F.3d 1188, 1198

19  (9th Cir. 2009).  It is plaintiff's burden to demonstrate good cause.  *Habib v. General Motors*

20  *Corp.*, 15 F.3d 72, 73 (6th Cir. 1994), *superseded on other grounds by rule 4(m) on other*

21  *grounds as recognized in Wise v. Dept. of Defense*, 196 F.R.D. 52 (S.D. Ohio 1999).  "At a

22  minimum, 'good cause' means excusable neglect."  *Full Circle Sales, Inc. v. Organic Alliance,*

23  *Inc.*, No. 10-CV-01615 LHK, 2010 WL 3324707, at *1 (N.D. Cal. Aug. 20, 2010).

24                  In this case, the 120 days for service of the summons and complaint has long

25  passed, whether the time began to run with the original or the amended complaint.  Plaintiffs are

26  /////

1    directed to show cause within fourteen days of the date of this order why the State of California

2    and the fourth claim in the FAC should not be dismissed.

3        B.    <u>Plaintiffs' Failures to Comply with the Local Rules and the Court's Standing
             Order</u>

4

5            Plaintiffs' motion for reconsideration exceeds this court's page limit for motions.

6    The court did grant plaintiffs' belated request to exceed the page limit, submitted weeks after the

     motion was filed.  ECF Nos. 35, 41.

7

8            Plaintiffs supported the motion for reconsideration with portions of deposition

9    transcripts, without providing copies of the complete transcripts as required by Local Rule

     133(j).

10

11           Defendants have moved to dismiss all the claims against them.  Plaintiffs have not

12   addressed defendants' challenge to the claims for intentional infliction of emotional distress or

13   damages for a violation of Article I, Section 2(a ) of the California Constitution.  ECF Nos. 52,

14   53.  Local Rule 230(c) requires a party "who has no opposition to the granting of [a] motion [to]

15   serve and file a statement to that effect . . . ."  It was not until the hearing on the motion that

     plaintiffs notified the court of their non-opposition.

16

17           Finally, plaintiffs' oppositions to the motions to dismiss were due at a time when

18   the court's ECF system was unavailable.  Although plaintiffs properly filed their documents on

19   the next business day following the outage, they did not serve the oppositions on opposing

20   counsel on the original due date, as required by Local Rule 134(c)(2); *see* ECF No. 57.

21           Although the court granted plaintiffs' belated request to exceed the page limits,

22   plaintiffs' other failures to comply with the local rules have not been excused.  Plaintiffs'

23   counsel and plaintiff Cuviello are cautioned that further failures to comply with the local rules

     may result in sanctions for non-compliance.

24   /////

25   /////

26

                                              8

1        C.      Plaintiffs' Submission of Additional Authority

2        On April 12, 2013, plaintiffs filed a motion for leave to submit supplemental

3 authority in support of their motion for reconsideration, contending that in researching the

4 impact of a newly decided Ninth Circuit case they found *Hamburg v. Wal-Mart Stores, Inc.*, 116

5 Cal. App. 4th 497 (2004), which they say "is directly on point with the present case," "more so

6 than any other case previously presented to the Court." ECF No. 71 at 2.  They do not explain

7 why they did not find this case earlier or how researching a recent Ninth Circuit case on a

8 different topic, which does not cite *Hamburg,* led them to it.  Defendants note the belated

9 submission, but argue the case is not relevant.  ECF No. 74.  The court DENIES the motion.

10        On the same day, plaintiffs submitted a notice of recent authority, citing to

11 *Edgerly v. City and County of San Francisco*, 713  F.3d. 976 (9th Cir. 2013).  ECF No. 72.   As

12 defendants observe, it is unclear why plaintiffs have proffered this case, as it concerns the

13 application of California Penal Code section 853.6 to arrests for infractions, whereas plaintiffs

14 were arrested for misdemeanor trespassing.  The court declines to consider this iteration of the

15 *Edgerly* litigation.

16        Finally, on April 17, 2013, plaintiffs submitted a second "notice of recent

17 decision in support of plaintiffs' motion for reconsideration," offering the decision of *Cuviello v.*

18 *City and County of San Francisco*, ___ F. Supp. 2d ___, 2013 WL 1615606 (N.D. Cal. Apr. 15,

19 2013), and arguing it is relevant to the Bane Act issue pending in the motion for reconsideration.

20 ECF No. 75.  As defendants observe, the motion for reconsideration does not include any Bane

21 Act issues, though defendants' motion to dismiss does challenge the Bane Act claim in the First

22 Amended Complaint.  This notice is disregarded.

23 IV. PLAINTIFFS' MOTION FOR RECONSIDERATION

24        A.      Standard for a Motion for Reconsideration

25        "A district court's power to rescind, reconsider, or modify an interlocutory order

26 is derived from the common law, not from the Federal Rules of Civil Procedure."  *City of Los*

1   *Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *McConnell v. Lassen*

2   *County*, No. CIV. S-05-0909 FCD DAD, 2008 WL 4482853, at *2 (E.D. Cal. Oct. 3, 2008)

3   ("Where reconsideration of a non-final order is sought, the court has 'inherent jurisdiction to

4   modify, alter, or revoke it.'" (quoting *United States v. Martin*, 226 F.3d 1042, 1048-49 (9th Cir.

5   2000)).  In addition, Federal Rule of Civil Procedure 54(b) authorizes courts to revise "any order

6   or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of

7   fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the

8   claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); *Regents v. University of*

9   *Calif. v. Bernzomatic*, No. CIV. 2:10-cv-1224 FCD GGH, 2011 WL 666912, at *2 (E.D. Cal.

10   Feb. 11, 2011) (relying on Rule 54 in deciding whether to reconsider the denial of summary

11   judgment).  Reconsideration is appropriate where there has been an intervening change in

12   controlling law, new evidence has become available, or it is necessary to correct clear error or

13   prevent manifest injustice.  *Cachil Dehe Band of Wintun Indians v. California*, 649 F. Supp. 2d

14   1063, 1069 (E.D. Cal. 2009) (citing *School Dist. No. 1J Multnomah County,  Oregon v. AC&S*

15   *Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

16          Plaintiffs argue that the court's earlier ruling on their Fourth Amendment claims

17   has been undercut by the officers' deposition testimony, which shows the officers did not

18   understand the law of trespass or the First Amendment and how they intersect and also shows

19   they did not truly believe they had probable cause to arrest plaintiffs.  Plaintiffs also argue that

20   the court's analysis of the law was incorrect, in that it did not focus on California's law of public

21   fora, which is broader than federal law.

22          Defendants counter that plaintiffs are taking snippets of deposition testimony out

23   of context and that whatever the depositions say, both the probable cause and qualified immunity

24   analyses are objective rather than subjective.  They also argue that the officers had probable

25   cause for the arrests and are entitled to qualified immunity.

26   /////

1   Although plaintiffs have provided excerpts from defendants' depositions, as noted

2   above, they have not lodged the complete depositions; the court therefore declines to consider

3   the excerpts out of context.  In addition, both the probable cause and qualified immunity

4   inquiries are objective: what would a reasonable officer understand or know?  *See United States*

5   *v. Struckman*, 603 F.3d 731, 740 (9th Cir. 2010) ("Probable cause is an objective standard[,] and

6   the officer's subjective intention in exercising his discretion to arrest is immaterial in judging

7   whether his actions were reasonable for Fourth Amendment purposes." (internal citations,

8   quotation marks omitted)); *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013)

9   ("Whether qualified immunity applies . . . turns on the objective legal reasonableness of the

10   action, assessed in light of the legal rules that were clearly established at the time it was taken.")

11   (internal citations, quotation marks omitted).  Accordingly, plaintiffs' reliance on the officers'

12   testimony ultimately does not advance their argument.  To the extent plaintiffs claim they are

13   entitled to reconsideration because of "new or different facts," they are mistaken.

14   Plaintiffs also argue that the court failed to consider California law on public fora

15   as it shapes an officer's response to people exercising their free speech rights and, given that

16   law's broad interpretation, no reasonable officer could have believed he had probable cause for

17   arrest, and no reasonable officer could have believed that an arrest was proper, so as to entitle

18   defendants to qualified immunity.

19   B.   Public Fora, Trespass and Cal Expo's Free Speech Guidelines

20   i.  Background

21   Article I, section 2(a) of the California Constitution provides that "[e]very person

22   may freely speak, write and publish his or her sentiments on all subjects, being responsible for

23   the abuse of this right.  A law may not restrain or abridge liberty of speech or press."  California

24   courts have uniformly said that this liberty of speech clause "is broader and more protective than

25   the free speech clause of the First Amendment." *Los Angeles Alliance for Survival v. City of*

26   *Los Angeles*, 22 Cal. 4th 352, 366-67 (2000).  As part of this enhanced protection, California has

adopted a broader definition of public fora for free speech activities.  *See Fashion Valley Mall,*

*LLC v. Nat'l Labor Relations Bd*., 42 Cal. 4th 850, 862 (2007) (recognizing that California has

determined a shopping mall to be a public forum for free speech activities).  However, the

California Supreme Court has recognized that "the question of whether the public property

constitutes a public forum" is "sometimes difficult" to resolve, a sentiment echoed by the Ninth

Circuit.  *Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*, 48 Cal. 4th

446, at 455 n.5 (2010); *Int'l Soc'y of Krishna Consciousness of Cal., Inc. v. City of Los Angeles*,

530 F.3d 768, 775 (9th Cir. 2008) ("[H]ow to articulate California's public forum test, and how

that test differs from its federal counterpart, are not abundantly clear.").  As a result, "[t]repass

law in California is complex . . . ."  *Planned Parenthood Ass'n of San Mateo Cnty. v. Holy*

*Angels Catholic Church*, 765 F. Supp. 617, 625 (N.D. Cal. 1991).  In addressing the issues raised

by plaintiffs' motion for reconsideration, this court does not ultimately decide questions of

public fora but rather examines the law as a backdrop to determining what a reasonable officer

would have understood.

    The court previously has taken judicial notice of Cal Expo's Free Speech

Guidelines, which are integral to plaintiff's complaint.  These Guidelines provided, at the time of

plaintiffs' arrests:[2]

> The California Exposition and State Fair (Cal Expo) hereby finds
> that these guidelines are intended to set forth in writing Cal Expo's
> long-standing policy governing the conduct of Cal Expo
> employees as well as members of the public under the First
> Amendment to the United States Constitution and Article 1 of the
> California Constitution on Cal Expo's grounds.

/////

/////

/////

_____

    [2] The guidelines have since been revised, as the court has recognized in litigation of
plaintiffs' separate motions for preliminary injunction.  *See, e.g.,* ECF No. 102.

> These guidelines . . . do not represent any admission that the
> facilities of Cal Expo are open as a public forum.  It is the policy
> of Cal Expo to allow within the parameters set forth herein,
> reasonable access to its grounds and designated free speech
> expression zones for demonstrations for free speech activity . . . .

ECF No. 32-4 at 1.

> The guidelines included definitions:

- "A public forum is an event wherein the facilities are available to members of the public for a free and open discussion of political and social issues;"

- a "limited public forum" is defined as "an event wherein the public is allowed access to a facility . . .  for specific purposes and where any public debate or discussion on political and social issues is focused on a particular subject or subjects.  A limited public forum is not intended . . . to generate a public forum . . . ;"

- "on-site" is defined as "any activities occurring within the grounds or parking lot of Cal Expo."

The Guidelines further provided, "Cal Expo finds, with the exception of the annual State Fair, no public forum events are sponsored or take place upon the grounds of Cal Expo . . . ."  Among other things, the guidelines required those wishing to engage in free-speech activities on-site to register with Cal Expo 72 hours in advance of the event.  ECF No. 32-4 at 2-4.

After plaintiffs protested without securing a permit, defendants arrested plaintiffs for violating California Penal Code section 602.  ECF No. 30 ¶¶ 56, 60.  When plaintiffs were released from Sacramento County Jail, they were charged with violating California Penal Code §§ 602(o), 602.1(a) and 602.6.  ECF No. 30  ¶¶ 72-73.  Plaintiffs argue that defendants did not have probable cause under any of these statutes and that a reasonable officer could not believe the arrest was lawful given California's protection of free speech activities in public fora.  Defendants counter that probable cause existed under any of the trespass statutes or under Section 4956 of Title 14 of the California Code of Regulations and that, given the complexity of the law, a reasonable officer would not have understood his actions were unlawful.

/////

1    "In California, an officer has probable cause for warrantless arrest if the facts

2 known to him would lead a person of ordinary care and prudence to believe and conscientiously

3 entertain an honest and strong suspicion that the person is guilty of a crime." *Blankenhorn v.*

4 *City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (internal citations & quotations marks

5 omitted); *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001) ("Probable

6 cause exists when, under the totality of the circumstances known to the arresting officers (or

7 within the knowledge of the other officers at the scene), a prudent person would believe the

8 suspect had committed a crime." ).  "Probable cause need only exist as to any offense that could

9 be charged under the circumstances." *Blakenhorn*, 485 F.3d at 473 (internal citations &

10 quotation marks omitted); *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 953 (9th

11 Cir. 2010).

12    In determining Fourth Amendment reasonableness, the court asks "whether 'the

13 circumstances, viewed objectively, justify [the challenged] action. . . .'  If so, that action was

14 reasonable *'whatever* the subjective intent' motivating the relevant officials." *Ashcroft v. al-*

15 *Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2080 (2011) (citations omitted; emphasis in original).

16    Even if the officers' assessment of probable cause was incorrect, "qualified

17 immunity shields [them] from a suit for damages if 'a reasonable officer could have believed [the

18 arrests] to be lawful in light of clearly established law and the information the [arresting] officers

19 possessed.'" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483

20 U.S. 635, 641 (1987)).  Indeed, if the officers' conclusion was reasonable, it does not matter that

21 "the opposite conclusion was also reasonable, or even more reasonable. . . ." *Conner v. Heiman*,

22 672 F.3d 1126, 1132 (9th Cir. 2012).

23    To determine whether an officer is shielded by qualified immunity, a court must

24 consider two questions. The first is, taken in the light most favorable to the party asserting the

25 injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v.*

26 *Katz*, 533 U.S. 194, 201 (2001).  A negative answer ends the analysis. *Id.*  If a constitutional

1   violation occurred, a court must further inquire "whether the right was clearly established." "If

2   the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful,

3   summary judgment based on qualified immunity is appropriate." *Id.* at 202. The district court

4   may decide the second question first, in accordance with fairness and efficiency and in light of

5   the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

6          In determining whether the law put a defendant on notice, a court does "not

7   require a case directly on point, but existing precedent must have placed the statutory or

8   constitutional question beyond debate." *al-Kidd*, 131 S.Ct. at 2083.   The court must "survey the

9   legal landscape," including "all available decisional law" if there is no binding precedent.

10   *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996) (internal quotation marks omitted).

11          The court need not reach the alleged violations of Penal Code section 602.1(a) or

12   602.6:  On the facts presented by the First Amended Complaint, defendants had probable cause

13   or are entitled to qualified immunity for arresting plaintiffs for a violation of Penal Code section

14   602(o), as explained below.

15          ii.  Penal Code Section 602(o) and First Amendment Activities

16          Under section 602(o), a person is guilty of a misdemeanor trespass in the

17   following circumstances:

> Refusing or failing to leave land, real property, or structures
> belonging to or lawfully occupied by another and not open to the
> general public, upon being requested to leave by (1) a peace officer
> at the request of the owner, the owner's agent, or the person in
> lawful possession, and upon being informed by the peace officer
> that he or she is acting at the request of the owner, the owner's
> agent, or the person in lawful possession, or (2) the owner, the
> owner's agent, or the person in lawful possession. The owner, the
> owner's agent, or the person in lawful possession shall make a
> separate request to the peace officer on each occasion when the
> peace officer's assistance in dealing with a trespass is requested.
> However, a single request for a peace officer's assistance may be
> made to cover a limited period of time not to exceed 30 days and
> identified by specific dates, during which there is a fire hazard or
> the owner, owner's agent, or person in lawful possession is absent
> from the premises or property. In addition, a single request for a
> peace officer's assistance may be made for a period not to exceed

1  six months when the premises or property is closed to the public
2  and posted as being closed. However, this subdivision shall not be
   applicable to persons engaged in lawful labor union activities
3  which are permitted to be carried out on the property by the
   Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations
4  Act of 1975 (Part 3.5 (commencing with Section 1140) of Division
   2 of the Labor Code) or by the National Labor Relations Act. For
5  purposes of this section, land, real property, or structures owned or
   operated by any housing authority for tenants as defined under
6  Section 34213.5 of the Health and Safety Code constitutes
   property not open to the general public; however, this subdivision
7  shall not apply to persons on the premises who are engaging in
   activities protected by the California or United States Constitution,
8  or to persons who are on the premises at the request of a resident
   or management and who are not loitering or otherwise suspected of
   violating or actually violating any law or ordinance.

9

10  CAL. PENAL CODE 602(o).

11         By quoting selectively from the last sentence, plaintiffs argue this section contains

12  an exception for those engaging in activities protected by the California or United States

13  Constitution.  ECF No. 35 at 19.  As the statute reflects, however, the phrase on which plaintiffs

14  rely is separated by a semi-colon from a phrase declaring that public housing is not open to the

15  general public; this means these joined sentences are related.  *See In re Jones' Estate*, 55 Cal. 2d

16  531, 536 (1961) ("A semicolon is used in a 'co-ordinating function between major sentence

17  elements, separating them with more distinctness than a comma. * * *'" (internal citation

18  omitted)), *overruled in part on other grounds by Parsons v. Bristol Development* Co., 62 Cal.2d

19  861 (1965).  Accordingly, the exception for free speech activities is not an exemption that

20  applies to the subsection generally.  W. Strunk & E. White, THE ELEMENTS OF STYLE (Illustrated

21  Ed. 2005) at 11 ("If two or more clauses grammatically complete and not joined by a conjunction

22  are to form a single compound sentence, the proper mark of punctuation is the semi-colon.").

23         iii.  Property Not Open to the General Public and Public Fora

24         As noted above, a person does not trespass within the meaning of section 602(o)

25  unless the premises are closed to the general public.  Plaintiffs argue that defendants could not

26  have objectively or reasonably believed that plaintiffs were trespassing because Cal Expo's

1   parking lot was open to the general public as a public forum.  ECF No. 35 at 19-20.  They also

2   contend that this court was required to accept as true their claim that Cal Expo was a public

3   forum because they so pleaded in their complaint.  *Id.* at n.34.  This court is not required,

4   however, to accept plaintiffs' assertion as fact merely because it was included in their complaint;

5   whether Cal Expo is a public forum is a legal conclusion.  *Iqbal*, 556 U.S. at 678–79  (court need

6   not accept as true legal conclusions couched as factual assertions).

7          Apart from their discussion of Cal Expo's parking lot as a public forum, plaintiffs

8   do not cite to a definition of "not open to the general public" as used in the trespass statutes.  In

9   *James v. City of Long Beach*, the court found no California case defining the term and concluded

10  that for purposes of section 602(o), "the California Supreme Court would define 'property not

11  open to the general public' to include property only open to ticket-buyers."  18 F. Supp. 2d

12  1078;[3] *see also People v. Pereira*, 207 Cal.App.3d 1057, 1063 (1980) (Generally "[a] statute is to

13  be given a reasonable and common sense construction . . . .").  The court concluded that even

14  though a baseball stadium was in a public park, it was not open to the public because one needed

15  a ticket for entry.  In addition, in *Blankenhorn*, the Ninth Circuit concluded that a venue

16  generally open to the public may be rendered "not open to the public" when a representative of

17  that venue has barred a person from the premises.  485 F.3d at 474.

18         In this case, an officer of reasonable prudence could have concluded that the Cal

19  Expo parking lot was not "open to the general public" because it was leased to the circus at the

20  time.  This same officer could have concluded that the Cal Expo parking lot, although generally

21  open to the public, was not open to the protestors after defendant May told plaintiffs they would

22  not be allowed to protest without a permit.  ECF 30 ¶ 36.  Without deciding whether plaintiffs

23  were trespassing, the court concludes that a reasonable officer who knew the parking lot was

24

_____

25     [3]  At the time *James* was decided, the provision was labeled section 602(n).  Section 602
    was amended in 2003 and at that time the provision was designated section 602(o).  *See*
26  *Sherman v. City of Davis*, No. CIV S-04-2320 LKK EFB PS, 2008 WL 553632, at *7 n.9 (E.D.
    Cal. Feb. 26, 2008).

leased to a private agency, that May had told plaintiffs they needed a permit and that Mayes had told plaintiffs they would be asked to leave if they entered Cal Expo's grounds, would have probable cause to believe plaintiffs had violated section 602(o).   Plaintiffs' desire to engage in free speech activities does not defeat defendants' reasonable belief there was probable cause to arrest them for trespassing.

Even if there was no probable cause, defendants are entitled to qualified immunity if "'a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information the . . . officers possessed.'" *Blankenhorn*, 485 F.3d at 476 (quoting *Peng v. Mei Chin Penghu*, 335 F. 3d 970, 980 (9th Cir. 2003)). "Because probable cause is a complex question here, it is appropriate to proceed beyond the threshold question." *Id.*

As noted, plaintiffs have not provided authority for their conflation of the law of public fora and the notion of "open to the public," yet they appear to be arguing that because they were exercising their free speech rights in an area they insist was a public forum no reasonable officer could have believed that relying on Cal Expo's free speech guidelines, either to conclude that the area was not a public forum or that the permit requirement was valid, was lawful.  *See James*, 18 F. Supp. 2d at 1085 n.7 ("It is important to distinguish between the questions of whether an area is a First Amendment public forum, and whether it is open to the public for purposes of the applying the trespass statute.  The fact that property is open to the public may be a factor in determining that it is a public forum." (internal citations omitted)). Plaintiffs rely chiefly on two cases.

In *Carreras v. City of Anaheim*, 768 F.2d 1039 (9th Cir. 1985), *abrogated on other grounds as recognized in Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850 857 n.8 (9th Cir. 2004), the Ninth Circuit interpreted California's law on public fora to conclude that the exterior walkways and parking areas of the Anaheim Convention Center and Anaheim Stadium were public fora because "the public is free to come and go: at the stadium and convention center, the

1    public travels over the parking lot and walkways to attend sporting events or exhibitions" and the

2    areas facilitate parking and "the free flow of pedestrian and vehicular traffic." *Id*. at 1045.

3           In *Kuba*, the Ninth Circuit interpreted California's law on public fora to include

4    the parking lots and pedestrian walkways around the Cow Palace for purposes of California's

5    Liberty of Speech Clause. *Id*. at 857.  The court observed, however, that its holding did not give

6    demonstrators "free rein" at the Cow Palace.  *Id*.

7           Both *Carerras* and *Kuba* said that the test for evaluating whether an area is a

8    public forum under California law is whether "the communicative activity is basically

9    incompatible with the normal activity of a particular place at a particular time." *Carreras,*

10   768 F.2d at 1045; *Kuba* 387 F.3d at 857.  Neither *Carrerras* nor *Kuba* considered whether

11   parking lots around public stadia retained their character as public fora when leased to a private

12   entity or whether free speech activities would be incompatible with a particular use at a

13   particular time.

14          Two district court cases, decided after *Carreras* and *Kuba*, have considered the

15   issue.  In *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1107 (N.D. Cal. 2010), the plaintiff

16   sued after getting into an altercation with an officer as she filmed animals behind a barricade at

17   the Carson and Barnes Circus, which had rented the Cow Palace parking lot.  Relying on

18   *Carreras* and *Kuba*, the court applied the basic incompatibility test and determined that under

19   California law, the parking lot remained a public forum even though it had been leased to the

20   circus. *Id*. at 1105.  However, in *Cuviello v. City of Oakland*, No. C 06-5517, 2009 WL 3707014,

21   at *1, 8 (N.D. Cal. Nov. 3, 2009), the court determined that it would not have been clear to an

22   officer that areas outside the Oakland Coliseum that had been leased to the Ringling Brothers

23   Circus were public fora.  *See also Sistrunk v. City of Strongville*, 99 F.3d 194 (6th Cir. 1996)

24   (recognizing that town commons might lose their character as a public forum when leased to a

25   private group); *see Am. Civil Liberties Union v. City of Las Vegas*, 466 F.3d 784, 791 (9th Cir.

26   2006) (musing whether area loses identity as public forum when leased to private party).

California cases also suggest that the parking lot might not be a public forum when it is leased to a private entity.  In *Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003), the state Court of Appeal considered whether the area around a supermarket in a shopping center was a public forum and concluded even though a shopping center itself may be a public forum under California law, discrete areas within the shopping center did not necessarily share that designation; it noted that the entrance to the store was not "a place where people choose to come and meet and talk and spend time." *Id*. at 121.

The law at the time of plaintiffs' arrests was less than clear on the question whether the parking lot retained its character as a public forum when leased to a private entity. Given the state of this law, the officers could reasonably have concluded that plaintiffs' failure to secure a permit as required by the Free Speech Guidelines and plaintiffs' refusal to leave when warned they were subject to arrest rendered them subject to arrest for trespassing.

Moreover, as noted in the court's original order, an officer's reliance on a violation of policy to give rise to probable cause to arrest entitles him to qualified immunity.  In *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010), *cert. denied*, __ U.S. ___, 132 S.Ct. 112 (2011), Norse was removed from a Santa Cruz City Council meeting and arrested after he gave a Nazi salute.  In a subsequent meeting he was ejected for whispering to another person in attendance.  He sued city officials challenging the council's decorum policy, facially and as applied, and the sergeant-at-arms who ejected him, claiming false arrest and excessive force. The court recognized that to prevail on a claim of false arrest brought under § 1983, a plaintiff must demonstrate there was no probable cause for the arrest.  *Id*. at 978.  Plaintiff's complaint had alleged that he had spoken in violation of the rules of decorum as the council attempted to eject him.  The court concluded that a reasonable officer could have believed that probable cause existed to arrest Norse for causing a disturbance of a public meeting or assembly because the violation of the council's rules gave rise to probable cause to arrest for a violation of a penal statute.  *Id*.; *see also Lushbaugh v. Home Depot U.S.A., Inc*., 93 Cal. App. 4th 1159, 1167 (2001)

1   (stating that persons who come into areas that are not public fora without permission "may be

2   treated as trespassers without regard to their desire to engage in free expression").[4]

3        C.        Defendants' Refusal to Issue On-Site Permits

4               Plaintiffs argue there was no probable cause for arrest because defendants could

5   have issued on-site permits.  ECF No. 35 at 32-33.  As plaintiffs could have, but did not, raise

6   this originally in opposition to the motion to dismiss, the court will not consider it as part of the

7   motion for reconsideration.  *Rodela v. Guild Mortg. Co.* No. CV F11-2126 LJO BAM, 2012 WL

8   691788, at *2 (E. D. Cal. Mar. 2, 2012) ("Reconsideration may not be used to raise arguments or

9   present evidence for the first time when they could reasonably have been raised earlier in the

10  litigation." (internal citation & quotation marks omitted)).

11  V.  THE MOTIONS TO DISMISS

12              The instant motions to dismiss do not challenge plaintiffs' fourth cause of action,

13  challenging Penal Code section 853.6(i)(7), discussed below, or the fifth cause of action against

14  Cal Expo, raising a facial and as applied challenge to the Free Speech Guidelines.

15       A.        Standards for a Motion to Dismiss

16              Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

17  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

18  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

19  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

20  1990).

21              Although a complaint need contain only "a short and plain statement of the claim

22  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

23

24        [4] Even if the court were to consider plaintiffs' late-submitted case of *Hamburg v. Wal-Mart Stores, Inc.*, 116 Cal. App. 4th 497 (2004), the analysis would not change.  That case upheld the denial of summary judgment to defendants when there was a dispute over whether

25  plaintiff's refusal to abide by Wal-Mart's time, place and manner requirements caused an interference with business necessary to support an arrest for violating Penal Code § 602.1(a).

26  The case does not say as a matter of law that the refusal to comply with such requirements can never give rise to an arrest for trespassing.

1    to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

2    claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

3    1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint

4    must include something more than "an unadorned, the-defendant-unlawfully-harmed-me

5    accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

6    action.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will

7    survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the

8    reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  Ultimately,

9    the inquiry focuses on the interplay between the factual allegations of the complaint and the

10    dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

11          In making this context-specific evaluation, this court must construe the complaint

12    in the light most favorable to the plaintiff and  accept as true the factual allegations of the

13    complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

14    conclusion couched as a factual allegation,'"  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

15    (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject

16    to judicial notice" or to material attached to or incorporated by reference into the complaint.

17    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).

18          A court's consideration of documents attached to a complaint or incorporated by

19    reference or as a matter of judicial notice will not convert a motion to dismiss into a motion for

20    summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parks Sch. of*

21    *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. CNN*, 284 F.3d

22    977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

23    dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).  In this case,

24    defendants have provided a copy of Cal Expo's Free Speech Activities Guidelines in effect at the

25    relevant time in conjunction with their motion to dismiss.  As plaintiffs challenge those

26    guidelines both facially and as applied, their complaint depends on the contents of these

guidelines and the court's consideration of them does not convert the motion to dismiss into motions for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

As Mayes' motion raises challenges similar to those raised by the group of Cal Expo defendants, the court considered the motions together.

B.     Section 1983 Action (First Cause of Action)

Mayes and the Defendants argue that plaintiffs' complaint does not state a claim for any of the alleged violations of constitutional rights.

i.  Fourth Amendment

This claim is addressed above in connection with the motion for reconsideration. For those reasons the defendants' motions are granted without leave to amend.

ii.  First Amendment Retaliation

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  To state a claim for retaliation in violation of the First Amendment, plaintiff must allege that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action that would chill a person of ordinary firmness from continuing to undertake the activity; and (3) there was a substantial causal relationship between the protected activity and the adverse action. *Id.*; *see also Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir.  2013) (stating that a plaintiff must be able to prove that the officers' desire to chill speech was a but-for cause of their actions).

Defendants argue they are entitled to qualified immunity on the retaliation claim, and cite to *Hartman v. Moore*, 547 U.S. 250 (2006) and *Reichle v. Howard*, ___ U.S. ___, 132 S. Ct. 2088 (2012).  In *Hartman*, the Supreme Court held that when a plaintiff alleges he was prosecuted in retaliation for an exercise of his First Amendment rights, he must plead and prove that defendant lacked probable cause.  In *Reichle*, the Court declined to answer whether *Hartman* should be extended to First Amendment retaliation claims stemming from arrest, but

1   did say that the right was not clearly established by its precedent nor was it clearly established in

2   Tenth Circuit precedent, "[a]ssuming arguendo that controlling Court of Appeals' authority

3   could be a dispositive source of clearly established law." *Reichle*, 132 S.Ct. at 2094.

4           In *Skoog v. Clackamas*, 469 F. 3d 1221, 1234-35 (9th Cir. 2006), the Ninth

5   Circuit interpreted *Hartman* narrowly, concluding that a plaintiff need not plead an absence of

6   probable cause for arrest to plead a First Amendment retaliation claim when there is no

7   subsequent prosecution. Despite *Reichle*, given the state of the law in this circuit at the time of

8   plaintiffs' arrest, none of the defendants is entitled to qualified immunity. *See Moore v.*

9   *Hartman*, 704 F. 3d 1003 (D.C. Cir. 2013) (looking to circuit precedent for qualified immunity

10  analysis in wake of *Reichle*).

11          Mayes and the Defendants also suggest that plaintiffs have not adequately

12  pleaded defendants' intent to chill their speech. However, plaintiffs' description of the officers'

13  reaction to plaintiffs' presence on subsequent days is sufficient circumstantial evidence of intent,

14  at least at this stage in the proceedings. *Mendocino Envtl. Ctr. v. Mendocino Cnty*., 192 F.3d

15  1283, 1302 (9th Cir. 1999). Mayes also argues that plaintiffs' speech clearly was not chilled, as

16  they returned to Cal Expo for further circus protests. However, the standard here as well is

17  objective: would the arrests have chilled a person of ordinary firmness from pursuing future First

18  Amendment activities. *Id*. at 1300. This claim is sufficiently pleaded.

19          iii. Equal Protection

20          Defendants and Mayes argue that plaintiffs have not pleaded an equal protection

21  violation because they have not shown they were treated differently from other similarly situated

22  individuals based on an impermissible classification or that the defendants collectively acted

23  with discriminatory intent. Plaintiffs counter that they are raising a "class of four" challenge,

24  based on the officers' "irrational and wholly arbitrary" arrest of plaintiffs when defendants'

25  actions violated plaintiffs' First Amendment rights, the "trespass codes . . . actually protected

26  /////

Plaintiffs [*sic*] free speech activity; defendants waited to arrest plaintiffs until the demonstration had concluded; and the officers permitted three other demonstrators to leave."  ECF No. 52 at 15.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (internal quotation and citation omitted).  In the usual case, a plaintiff must allege that the state actor's different treatment stemmed, at least in part, from plaintiff's membership in a protected group.  *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir.), *cert. denied* 131 S.Ct. 2964 (2011).

In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the Supreme Court recognized as viable "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she had intentionally been treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  To make a "class of one" equal protection claim plaintiffs must meet three elements: the defendants "(1) intentionally, (2) treated [plaintiffs] differently than other similarly situated [demonstrators], (3) without a rational basis." *Gearhart v. Lake County, Mont*., 637 F. 3d 1013, 1022 (9th Cir.), *cert denied*, ___ U.S. ___, 132 S. Ct. 249 (2011).  Although the "similarly situated" analysis does not lend itself to formulas, courts have said that "dismissal at the pleading stage is appropriate where the plaintiff fails to allege facts tending to show that it was similarly situated to any one of the comparators." *Nordmeyer v. Cundiff*, No. 10–cv–792–DRH, 2011 WL 4529422, at *5 (S.D. Ill. Sep. 28, 2011); *see also Lindquist v. City of Pasadena Texas*, 669 F. 3d 225, 233 (5th Cir. 2012) (stating that the requirement that comparators be similarly situated is not "susceptible to rigid, mechanical application" and is case specific).

Plaintiffs have alleged only that three other demonstrators, also leaving Cal Expo at the end of the day, were not arrested.  They do not address the "factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision."

1   *Lindquist*, 669 F.3d at 234 (internal citations, quotation omitted).  Most relevant, of course,

2   would be whether the other demonstrators had a permit, a subject plaintiffs do not address.

3   *Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007) ("the proponent of the equal protection

4   violation must show that the parties with whom he seeks to be compared have engaged in the

5   same activity vis-à-vis the government entity without such distinguishing or mitigating

6   circumstances as would render the comparison inutile").  At the hearing, however, plaintiffs said

7   they could plead that the other demonstrators, who were not arrested, similarly did not have a

8   permit.  Although this claim is not adequately pleaded, plaintiffs will be given leave to amend it,

9   if they are able.

10              To the extent that plaintiffs' claim is based on their somewhat opaque argument

11  that defendants denied plaintiffs protection for their constitutionally guaranteed free speech

12  rights by arresting plaintiffs and then forbidding them access to Cal Expo, their claim is

13  unavailing.   They rely on cases that consider whether there is a right to have police protective

14  services, such as investigation of crime or arrest of suspects, applied in a non-racially

15  discriminatory manner.  *See Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th Cir. 2010);

16  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 n.3 (1989) ("The State

17  may not, of course, selectively deny its protective services to certain disfavored minorities

18  without violating the Equal Protection Clause.").  Plaintiffs have not alleged they were denied

19  protective services in a racially discriminatory manner.  This portion of the equal protection

20  claim is dismissed without leave to amend.

21              iv.  Due Process

22              Defendants argue that plaintiffs were not deprived of any liberty interest because

23  they were properly arrested and then released the next day.  In opposition, plaintiffs argue that

24  their claim is based on California Penal Code section 4003, which recognizes a person's interest

25  in property confiscated during an arrest and provides a process by requiring that the seizing

26

1   officer issue a receipt.[5]  *Hourihan v. Lafferty*, 58 F. Supp. 2d 10, 15 (N.D.N.Y. 1999) (stating

2   that officer's failure to give receipt for property seized under a warrant did not rise to level of a

3   constitutional violation).  Plaintiffs have not alleged that defendants' failure to provide a

4   complete receipt deprived them of a meaningful opportunity to challenge the seizure of their

5   property; California law provides for both statutory and non-statutory motions for return of

6   property, post-deprivation process that seems more adequate than the issuance of a receipt.  *See*

7   *People v. Hopkins*, 171 Cal. App. 4th 305, 307-08 (2009).  This claim is dismissed without leave

8   to amend.

9                   v.  Malicious Prosecution

10                  In *Lacey v. Maricopa Cnty.*, the Ninth Circuit opined that "'an action for

11  malicious prosecution will not lie unless some further step [beyond the arrest] is taken, such as

12  bringing the accused before a magistrate for determination whether he is to be held.'" 693 F. 3d

13  896, 919-20 (9th Cir. 2012) (quoting Restatement (Second) of Torts § 654, cmt. e).  Plaintiffs

14  allege that when they appeared for arraignment, the charges against them were dismissed.  They

15  cannot on these facts "recast the false arrest claim as a claim for malicious prosecution."  *Id.* at

16  920.

17                  vi.  Mayes

18                  Defendant Mayes concedes he asked the protestors about their permit, arrested

19  Cuviello, and drove Ennis and Cuviello to the Cal Expo police station, but argues that the arrest-

20  related claims against him should be dismissed because he was just following orders.

21                  Mayes relies on *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012), but cites

22  only to the Ninth Circuit's admonition that plaintiffs should tie factual allegations to particular

23

24        [5]  Section 4003 provides: "Whenever any weapon or other personal property is taken
     from an arrested person, it shall be the duty of the desk clerk or other proper officer of any city,
25   county or city and county jail, to which such person is committed for detention, to give a receipt
     to such person without delay for the property taken."

26

1    defendants to enable individual analysis.  He has not borne his burden of arguing that his "just

2    following orders" claim entitles him to dismissal.

3                    vii.  Tatarakis

4            Defendant Tatarakis argues he should be dismissed as he did not participate in the

5    arrests themselves.  Plaintiffs contend that he is liable on the theory of integral participation.

6            The doctrine of integral participation "extends liability to those actors who were

7    integral participants in the constitutional violation, even if they did not directly engage in the

8    unconstitutional conduct themselves."  *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009),

9    *cert. denied*, 130 S.Ct. 2342 (2010).  Application of the rule "does not require that each officer's

10   actions themselves rise to the level of a constitutional violation."  *Boyd v. Benton Cnty.*, 374 F.3d

11   773, 780 (9th Cir. 2004).  "Integral participant requires some *fundamental involvement* in the

12   conduct that allegedly caused the violation."  *Monteilh v. Cnty. of Los Angeles*, 820 F. Supp. 2d

13   1081, 1089 (C.D. Cal. 2011) (emphasis in original).  The Ninth Circuit has declined to find an

14   officer to be an integral participant when he was not present at the scene of the arrest, had not

15   instructed anyone to arrest the suspect, and did not consult with others before they made the

16   arrest.  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).  In addition, it has

17   refused to find an officer responsible for an illegal arrest when the evidence showed he was

18   interviewing witnesses outside the house as the others broke into a suspect's house and there was

19   no evidence he participated in planning the search.  *Hopkins*, 573 F.3d at 769-70.

20           Viewing the amended complaint in the light most favorable to plaintiffs, the court

21   concludes they have adequately pleaded Tatarakis was an integral participant: he warned

22   plaintiffs they would be arrested if they did not leave, he was in touch with Craft about the

23   progress of the protest and he identified plaintiffs to the other officers.  This sufficiently alleges

24   his participation in the planning of the alleged retaliatory arrests.

25   /////

26   /////

viii.  Bartosik and May

Defendant Bartosik alleges he should be dismissed from the action because the complaint alleges only that he was informed of the arrests after they occurred.  Defendant May asserts that the allegations are similarly insufficient as to him: he received plaintiffs' fax about the upcoming protest, told Cuviello and Bolbol about the permit requirement, failed to contact the Attorney General assigned to Cal Expo to inquire about the case law Cuviello had cited in the fax, and notified Craft about the planned protest.  Bartosik and May argue that as there is no respondeat superior liability under section 1983, their lack of involvement in the events of May 20 means they should be dismissed from the action.  Plaintiffs contend that both Bartosik and May had the authority to override Craft's decision to enforce the permit requirement and failed to determine whether their policy was constitutional in light of the case law Cuviello faxed to them.  They also argue that Bartosik and May are liable because their failure to act was the first in a series of events that led to plaintiffs' arrest.

A person deprives another of a constitutional right within the meaning of section 1983 if he commits an affirmative act, participates in another's affirmative act or omits to perform an act that he is legally required to do and thereby causes the deprivation of which the plaintiff complains.  *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988).  Thus, a supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc).  Accordingly, if plaintiffs' rights were violated, then Bartosik and May are liable if they set in motion a series of acts by others or knowingly refused to terminate a series of acts by others they knew or reasonably should have known would cause others to inflict a constitutional injury.  *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

/////

1    Plaintiffs' claims are too tenuous to support Bartosik's and May's liability.  Even

2  assuming that May had a duty to contact the Attorney General's office when he received

3  Cuviello's facts, there is nothing in plaintiff's complaint allowing the court to draw the

4  reasonable inference that the deputy attorney general would have told May or Bartosik to allow

5  the protest to proceed.  Moreover, to the extent plaintiffs claim that these defendants should have

6  overridden Craft's decision to enforce the permit requirement, the complaint is insufficient in

7  that there is nothing suggesting either Bartosik or May knew or should have known about Craft's

8  reaction to the planned demonstration in violation of the Free Speech Guidelines.

9    Finally, to the extent plaintiffs allege Bartosik and May failed to train Cal Expo

10  employees properly, the complaint is too conclusorily pleaded: "where a 'complaint does not

11  identify what the training . . . practices were, how the training . . . practices were deficient, or

12  how the training . . . practices caused [p]laintiffs' harm,'" the complaint is not sufficient.

13  *Ramirez v. Cnty. of Alameda*, NO. C12-4852 MEJ, 2013 WL 257087, at *3 (N.D. Cal. Jan. 23,

14  2013) (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009)).  These

15  claims are dismissed without leave to amend.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552

16  F.3d 981, 1007 (9th Cir. 2009) (recognizing the district court's discretion to deny leave to amend

17  when plaintiff has previously been given leave to amend and has failed to add the necessary

18  particularity to the claims).

19    C.    Conspiracy (Second Cause of Action)

20    The elements of a conspiracy claim under section 1983 are (1) the existence of an

21  agreement, either express or implied, to deprive plaintiffs of their constitutional rights and (2) a

22  deprivation of rights resulting from the agreement.  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir.

23  2010).  In addition, although the conspiratorial agreement need not be overt, a complaint must

24  include some factual basis to support the inference that defendants' acts were propelled by the

25  agreement.  *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th

26  Cir. 1999); *Harris v. Clearlake Police Dept.*, No. 12-0864-YGR, 2012 WL 3042942, at *9 (N.D.

1   Cal. July 25, 2012).  The plaintiffs "must state specific facts to support the existence of the

2   claimed conspiracy." *Burns v. County of Kings*, 883 F.2d 819, 821 (9th Cir. 1989); *Buckey v.*

3   *County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  If there is no underlying

4   constitutional violation, no cause of action for conspiracy lies.  *Hart v. Parks*, 450 F.3d 1059,

5   1070-71 (9th Cir. 2006).  As the court has found that plaintiffs state a claim only as to their First

6   Amendment retaliation claim, any viable conspiracy theory may be based only on that claim.

7           Plaintiffs allege that the defendants collectively conspired to adopt the

8   "'trespassing' speech-denial policy" and arrested and confiscated plaintiffs' protest material.

9   ECF No. 30 ¶¶ 146-147.  They also allege that when May learned of plaintiffs' determination to

10  protest the circus, he contacted Craft and informed him of plaintiffs' plans.  ECF No. 30 ¶¶ 37,

11  39.  After plaintiffs' interaction with Mayes, Mayes contacted Craft.  ECF No. 30 ¶ 45.  At some

12  point, Craft told Tatarakis that plaintiffs would be present at Cal Expo.  ECF No. 30 ¶ 48.  When

13  plaintiffs asked if they would be arrested, Tatarakis said that was up to Craft.  *Id.*  Tatarakis

14  provided regular updates on the situation to Craft, who gave Tatarakis instructions.  ECF No. 30

15  ¶ 49.  As the protest continued, Menard, Robillard, Walton and Whittington arrived and met with

16  Craft and Mayes about the arrest.  ECF No. 30 ¶ 50.  Thereafter, Tatarkis pointed out Bolbol and

17  Campbell to the other officers, who then surrounded the plaintiffs and ultimately arrested them.

18  ECF No. 30 ¶¶ 54-59.  These claims are adequately pleaded as to Mayes and the other officers,

19  but not as to May and Bartosik.  The conspiracy claim against the latter two is dismissed with

20  leave to amend.

21          Defendants also argue that this claim is barred by the intracorporate conspiracy

22  doctrine, which provides that a conspiracy "requires 'an agreement among two or more persons

23  or distinct business entities.'" *United States v. Hughes Aircraft Co., Inc.*, 20 F.3d 974, 979 (9th

24  Cir. 1994) (internal citation omitted).  The Ninth Circuit has not decided whether to extend this

25  doctrine to civil rights case.  *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993).

26  /////

This court similarly declines to extend the doctrine in this case.  *See Ibarra v. City of Watsonville*, No. 5:12–CV–02271–EJD, 2013 WL 623045, at *8 (N.D. Cal. Feb. 15, 2013).

D.      Violation of California Constitution, Article I, Section 2(a) (Third Cause of Action)

As noted above, plaintiffs conceded at hearing that they could not maintain an action for damages based on the California Constitution's Liberty of Speech Clause.  Their claim for damages is dismissed but they may proceed with their request for injunctive relief based on this section.

E.      Intentional Infliction Of Emotional Distress (Sixth Cause of Action)

Also at hearing, plaintiffs agreed that this claim was not adequately pleaded.  It is dismissed without leave to amend.

F.      Bane Act (Seventh Cause of Action)

Plaintiffs allege that defendants interfered with the enjoyment of their First and Fourteenth Amendment rights, the right to due process and equal protection, the right to be free from illegal arrest and seizure and the corresponding rights under the California Constitution by threats, intimidation and coercion.

California's Bane Act, Civil Code § 52.1, provides that a person "whose exercise or enjoyment" of constitutional rights has been interfered with "by threats, intimidation, or coercion" may bring a civil action for damages and injunctive relief.  The essence of such a claim is that "the defendant, by the specified improper means . . . tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or force the plaintiff to do something he or she was not required to do."  *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007).

Defendants argue that this claim is insufficiently pleaded as a matter of law because the element of coercion requires more than the arrest and impoundment of the protest materials.  They rely on *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012) to

1    argue that when coercion is inherent in the alleged constitutional violation, there can be no Bane

2    Act violation.  In *Shoyoye*, the plaintiff had been lawfully arrested and held in jail for three days,

3    but the jail negligently held him for an additional sixteen days because he was confused with

4    another inmate.  *Id.* at 951.

5           In *Gant v. Cnty. of Los Angeles*, 765 F. Supp. 2d 1238 (C.D. Cal. 2011), the

6    district court recognized the split in the case law on the question whether a false arrest or

7    imprisonment without more satisfies the coercion element of section 52.1 and concluded that the

8    coercion element is not met merely because the constitutional violation itself is inherently

9    coercive.  *Id.* at 1253.

10          As plaintiffs do not have the right to be free of an arrest if the arrest is supported

11   by probable cause, the arrest here cannot be considered to have interfered with the enjoyment of

12   rights protected by the Fourth Amendment.  Moreover, as the purpose of the Bane Act is "to

13   specifically target unlawful conduct motivated by discriminatory animus that interferes with the

14   victim's enjoyment of statutory or constitutional civil rights," a lawful arrest cannot be deemed

15   coercive within the meaning of the Act.  *See D.C. v. Harvard-Westlake Sch.*, 176 Cal.App.4th

16   836, 858-59 (2009).

17          Even if plaintiffs are relying on the officers' harassment during the days

18   following the arrest, they still fail to state a claim.  Under section 52.1(f), "[s]peech alone is not

19   sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing

20   that the speech itself threatens violence against a specific person or group of persons; and the

21   person or group of persons against whom the threat is directed reasonably fears that, because of

22   the speech, violence will be committed against them or their property and that the person

23   threatening violence had the apparent ability to carry out the threat."  A "threat" under this

24   section means "an 'expression of an intent to inflict evil, injury, or damage to another.'"  *McCue*

25   *v. So. Fork Union Elementary Sch.*, 766 F. Supp. 2d 1003, 1011 (E. D. Cal. 2011) (quoting *In re*

26   *M.S.*, 10 Cal.4th 698, 710 (1995)).  Even viewing the complaint in the light most favorable to the

1   plaintiffs, defendants' harassment on subsequent days does not suggest that plaintiffs will be

2   subjected to violence.  *See Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1177 (N.D. Cal.

3   2010) (finding Bane Act claim sufficiently pleaded when circus employees urged others to attack

4   plaintiffs and plaintiffs were in fact attacked).  This claim is dismissed without leave to amend.

5          IT IS THEREFORE ORDERED:

6          1.  Plaintiffs' request to submit supplemental authority, ECF No. 71, is denied.

7          2   Plaintiffs' motion for reconsideration, ECF No. 35, is denied.

8          3.  Defendants' motions to dismiss, ECF Nos. 32 & 33, are granted in part and

9   denied in part:

10         a.  granted without leave to amend as to the Fourth Amendment, due process,

11  malicious prosecution, violation of the California Constitution, intentional infliction of emotional

12  distress, Bane Act, and conspiracy claims;

13         b.  granted with leave to amend as to the equal protection claim;

14         c.  granted without leave to amend as to defendants May and Bartosik;

15         d.  denied as to defendants Mayes and Tatarkis; and

16         e.  denied as to the First Amendment retaliation claim.

17         4.  Plaintiffs' second amended complaint is due within twenty-one days of the

18  date of this order.

19         5.  Plaintiffs are directed to show cause within fourteen days of the date of this

20  order why the State of California should not be dismissed as a defendant and the fourth claim

21  dismissed as alleged in the First Amended Complaint.

22  DATED:  July 27, 2013.

23

24  _____

25  UNITED STATES DISTRICT JUDGE

26