UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO, et al., | No. 2:11-CV-2456 KJM EFB |
| Plaintiffs, | |
| v. | ORDER |
| CAL EXPO, et al., | |
| Defendants | |

On December 20, 2013, the court heard argument on the parties' joint motion for vacatur. Plaintiff Cuviello appeared in propria persona; G. Whitney Leigh and Matthew Springman appeared for plaintiffs Bolbol and Campbell; Matthew Siroka appeared for plaintiff Ennis; Erich Lidl appeared telephonically for defendant Mayes; and George Acero appeared telephonically for defendant Cal Expo and the remaining individual defendants. After considering the parties' arguments, and Cal Expo's filing of January 10, 2014, the court GRANTS the motion.

I.  BACKGROUND

On September 16, 2011, plaintiffs filed a complaint alleging violations of federal and state constitutional rights and state statutes stemming from their arrest on May 20, 2011 at Cal Expo as they protested the treatment of circus animals. Although defendant Cal Expo did not

/////

1

move to dismiss plaintiffs' challenge to its free speech guidelines, the individual defendants sought to dismiss the claims against them.

On September 19, 2012, the court granted the motions to dismiss plaintiffs' Fourth Amendment and false arrest claims, a claim under 42 U.S.C. § 1985, a claim stemming from the officers' retention of plaintiffs' protest materials and a claim of false imprisonment, all without leave to amend. The court also dismissed with leave to amend claims against Menard, Robillard, Bartosik and May, namely, conspiracy claims under 42 U.S.C. § 1983, and claims of intentional infliction of emotional distress. The court denied the motion insofar as plaintiffs claimed that defendants' actions interfered with their First Amendment rights to free speech, were undertaken in retaliation for their protest, violated their right to be free of malicious prosecution and the right to equal protection, and also as to plaintiff Bolbol's claim of excessive force and a claim concerning the confiscation of plaintiffs' protest materials. ECF No. 29.

Plaintiffs filed their First Amended Complaint (FAC) on October 10, 2012. Defendants and Mayes filed motions to dismiss on October 24, 2012; plaintiffs filed their motion for reconsideration of the order dismissing the complaint on November 16, 2012.

On June 14, 2013, plaintiffs filed a motion for a temporary restraining order and preliminary injunction based on their professed desire to protest at the upcoming State Fair. ECF No. 103.

On July 12, 2013, the court granted the motion for a temporary restraining order in part and denied it in part and on July 27, 2013, entered a more detailed order on the requests for injunctive relief. ECF Nos. 124, 125.

On July 29, 2013, the court denied plaintiffs' November 2012 motion for reconsideration. It granted defendants' motion to dismiss plaintiffs' Fourth Amendment, due process, and malicious prosecution claims without leave to amend, and the equal protection claim with leave to amend. It also granted the motion to dismiss defendants Bartosik and May without leave to amend. ECF No. 126. The court denied the motion to dismiss the conspiracy claim as to defendants Craft, Walton, Whittington, Robillard, Tartarkis and Mayes; denied the motion to dismiss defendants Mayes and Tartarkis from the action completely; and dismissed the claims for

2

1  damages for a violation of the free speech provisions of the California Constitution, for
2  intentional infliction of emotional distress, and for a violation of the Bane Act, all without leave
3  to amend. *Id.*
4         Plaintiffs filed their Second Amended Complaint ("SAC") on August 19, 2013.
5  ECF No. 131. Defendants filed a motion to dismiss it on September 5, 2013. ECF No. 134. At
6  the argument on that motion, the court asked the parties whether they had explored settlement.
7  They explained they had engaged in some discussions but wanted a ruling on the motion to
8  dismiss before returning to settlement talks. ECF No. 141. Nevertheless, the court received the
9  notice of tentative settlement before it finalized the order addressing the motion. ECF No. 142.
10        In the notice of tentative settlement, the parties informed the court they were
11 waiting for approval of the terms by Cal Expo's Board of Directors and that the settlement is
12 contingent on the court's agreement to vacate certain orders. *Id.*
13        On December 16, 2013, the parties filed a stipulation and proposed order
14 shortening time to hear the parties' joint motion for vacatur, which the court granted, setting the
15 hearing for December 20, 2013.   ECF No. 143.
16        On December 17, 2013, the parties filed their joint motion, seeking to vacate the
17 court's order on the motion to dismiss the original complaint and on the motion to dismiss the
18 First Amended Complaint. *See* ECF No. 146. They represent that the settlement includes
19 payment, Cal Expo's agreement to amend its Free Speech Guidelines, and the parties' stipulation
20 jointly to request vacatur. They confirm the agreement is conditioned upon this court's granting
21 this latter request. *Id.* at 2.
22 II. ANALYSIS
23        In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29
24 (1994) ("*Bonner Mall*"), the Supreme Court held that appellate court vacatur of district court
25 judgments in the context of settlement agreements should be granted only in "exceptional
26 circumstances." Those exceptional circumstances "do not include the mere fact that the
27 settlement agreement provides for vacatur." *Id*. The Court emphasized the importance of
28 considering the public interest when contemplating the equitable remedy of vacatur: "Judicial

3

precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). Thus, "quite apart from any considerations of fairness to the parties," vacatur disturbs the "orderly operation of the federal judicial system" by deviating from the primary route Congress has prescribed for parties who seek relief from the legal consequences of judicial judgments: appeal as of right and certiorari. *Id.* at 27.

However, in *American Games, Inc. v. Trade Products, Inc.*, the Ninth Circuit distinguished *Bonner Mall* by holding that district courts, due to the "fact-intensive nature of the inquiry required," enjoy "greater equitable discretion when reviewing [their] own judgments than do appellate courts operating at a distance." 142 F.3d 1164, 1170 (9th Cir. 1998). Therefore, a district court in this circuit, even in the context of mootness by settlement, may vacate one of its own judgments absent exceptional circumstances. *See id.* at 1168-69. The proper standard is the "equitable balancing test," which balances the hardships of the parties and the public interests at stake. *Id.* at 1166; *Zinus, Inc. v. Simmons Bedding Co.*, No. C 07-3012 PVT, 2008 WL 1847183, at *1 (N.D. Cal. Apr. 23, 2008). Some courts have said that in applying this balancing test, a court should consider "the parties' desire to avoid any potential preclusive effect; the parties' interest in conserving their resources; the public interest in the orderly operation of the federal judicial system; and the potential to conserve judicial resources." *White v. Shen*, No. C09-0989 BZ, 2011 WL 2790475, at *1 (N.D. Cal. Jul. 13, 2011); *Cisco Sys., Inc. v. Telcordia Tech., Inc.*, 590 F. Supp. 2d 828, 831 (E.D. Tex. 2008) (same).

Both *Bonner Mills* and *American Games* considered requests to vacate judgments, rather than orders, as part of settlements. The instant case has not reached judgment and the parties are asking the court to vacate two interlocutory orders. Some courts have recognized that in a situation such as this "[a] court has complete power over interlocutory orders . . . and has authority to revise them when it is 'consonant with equity' to do so." *De La O v. Arnold-Williams*, Nos. CV-04-0192 EFS, CV-05-0280 EFS, 2008 WL 4192033, at *1 (E.D. Wash. Aug.

27, 2008) (quoting *Simmons v. Brier Bros. Co.*, 258 U.S. 82 (1922)); FED. R. CIV. P. 54 (stating that a court may modify "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *see also Persistence Software, Inc. v. The Object People, Inc.*, 200 F.R.D. 626, 627 (N.D. Cal. 2001) (stating the standard for vacatur under Rule 54(b) is less rigid than that under Rule 60); *Midmountain Contractors, Inc. v. Am. Safety Idem. Co.*, No. C10-1239JLR, 2013 WL 5492952, at *4 (W.D. Wash. Oct. 1, 2013 (stating that district courts have "'complete power' over non-final orders and may vacate or revise them 'at any time,' if doing so would be 'consonant with equity'") (quoting *United States Gypsum Co. v. Pac. Award Metals, Inc.*, No. C-04-04941 JSW, 2006 WL 1825705, at *1 (N.D. Cal. July 3, 2006)).

When parties ask a court to vacate an interlocutory order, the court should consider several factors: "whether all the parties involved in the ruling(s) request and agree to vacatur as a condition of a proposed settlement of the action; . . . whether a former party to the action would be adversely affected by a vacatur; and whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement of the action." *De La O*, 2008 WL 4192033, at *1.

However the court characterizes a party's request, it must be guided by equitable considerations in resolving it. In this case, all parties urge the court to vacate its two orders, noting the general judicial policy favoring settlement and this court's specific inquiries about the possibilities for settlement in this case, the parties' desire to conserve resources, the judicial resources that further litigation would consume, and the fact-specific nature of the two orders under consideration.

Although under *Bonner Mall* "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur," 513 U. S. at 29, in making its equitable determination, this court should give some weight to the fact that the settlement is conditioned upon vacatur. *Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.*, 150 F.3d 149,

/////

5

1  152 (2d Cir. 1998) (relying in part on the fact that "the victor in the district court wanted a
2  settlement as much as, or more than, the loser did"); *De La O*, 2008 WL 4192033, at *1.

3         The parties observe that as this case is still in the pleading phase, should the court
4  reject vacatur, they will undertake further discovery and motion practice, resulting in greatly
5  increased fees.  The court notes also that the defendants have not yet answered, as the complaint
6  and the amended complaints have drawn motions to dismiss.  If the parties do not settle, the case
7  will almost certainly proceed to cross-motions for summary judgment.  If the case is not resolved
8  on summary judgment, plaintiff estimates a several week trial, based on their experience of a trial
9  of a similar claim in the Northern District.  ECF No. 146 at 6 n.1.

10         The parties' desire to conserve resources segues into a consideration of the judicial
11  resources that further litigation would consume.  The orders that the parties seek to vacate are 23
12  and 34 pages long respectively; the draft of the order addressing the most recent motion to
13  dismiss, now withheld, is 19 pages long.  Further litigation would likely result in more lengthy
14  hearings and orders, consuming significant judicial resources.

15         Balanced against these considerations is the impact of vacating the orders on the
16  orderly progress of litigation.  Although a district court's order is not precedential, "there is a
17  'systemic' interest in preserving district court judgments because 'they play a significant role in
18  the development of decisional law by providing guidance to private parties with respect to the
19  availability of remedies and to litigation strategy,' and they 'can also be useful to the courts of
20  appeals in rendering decisions." *Philip Servs. Corp. v. City of Seattle*, Civil Action No. H-06-
21  2518, 2007 WL 3396436 (S.D. Tex. Nov. 17, 2007) (quoting *Cater v. Rosenberg & Estis*, No. 95
22  CIV. 10439(DLC), 1999 WL 13036, at *3 (S.D.N.Y. 1999)).  Even though plaintiffs suggest the
23  basis of their request is not disagreement with the court's orders, they are seeking vacatur of an
24  order they challenged through reconsideration as well as the order denying reconsideration. "To
25  allow a party who steps off the statutory path [of appeal following an unfavorable judgment] to
26  employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment
27  would . . . disturb the orderly operation of the federal judicial system." *Bonner Mall*, 513 U.S. at
28  27.  While the court is not fully persuaded that plaintiffs' request is not a disguised attack on the

resolution of issues contrary to plaintiffs' position, the request is tempered by the fact that vacatur will not cause the orders to vanish: they will remain in electronic research databases, albeit flagged, and so available for whatever guidance they may give to parties and other courts.

The court must also consider the public interest. Courts generally characterize this interest as "protecting district court precedents from 'a refined form of collateral attack . . . .'" *NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007) (quoting *Bonner Mall,* 513 U.S. at 26). There also is a "'significant public interest' in upholding free speech principles" and in regulations that do not infringe free expression. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002)).  Accordingly, the court asked Cal Expo to provide a copy of its proposed amendments to the Free Speech Guidelines.

In the current guidelines, Section III, provision 4(a), provides generally that no individual, group, sign, banner or activity shall block or obstruct passage to and from the fairgrounds. The proposed revision to the guidelines provides instead as follows:

> Persons engaging in free expression activity shall not, individually or as a group, or with the use of signs, banners, or other items, obstruct the ingress or egress of persons or interfere in any way with those providing emergency services. Nor shall persons engaging in free expression activity act in a matter that is reasonably likely to obstruct the ingress or egress of persons or interfere in anyway with those providing emergency services. Further, any signs or banners shall not be rigid or contain sharp corners.  If the signs or banners contain sticks or poles, the following rules shall apply:  (1) no metal sticks or poles can be used; (2) no rectangular sticks or poles of more than ¼ inch thick and 2 inches wide can be used; (3) no non-rectangular sticks or poles thicker than ¾ may be used. Signs or banners meeting the above criteria may be taken outside of the free expression zones, so long as, additionally, the signs or banners do not exceed the width of 2 foot by 2 foot or contain sticks or poles longer than 3 feet.

*Id*. at 4.

/////
/////
/////
/////

1       There also are proposed changes to provision 4(m) of Section III, which limits

2  leafleting to designated Free Expression Zones.  The proposed amended provision reads:

> Individuals or groups utilizing the free expression zones may distribute leaflets, pamphlets or other materials to be handed to the public.  These leaflets, pamphlets or other materials may be distributed from outside the confines of the free expression zone space, so long as the persons engaging in leafleting do not obstruct the ingress or egress of persons or interfere in any way with those providing emergency services. Further, leaflets or other material distributed by persons engaging in free expression activity shall not be placed on cars, left unattended in a manner that can cause the leaflets to be blown away, or discarded in locations other than waste or recycling receptacles.

*Id*.

The amendments to provision 4(m) reflect this court's order granting plaintiffs' request for a temporary restraining order , allowing them to leaflet outside the free expression zones during the State Fair, as the court found the First Amendment required. ECF No. 124.  The changes to 4(a) will provide clarity to those groups who seek to augment any vocal protest with advocacy materials and so promote First Amendment values.  While Cal Expo might adopt the proposed provisions in any event, approving the settlement now will ensure these changes are in place before the 2014 State Fair.

Considering all of the relevant factors, the court finds the parties' desire to conserve their resources, the potential to conserve judicial resources, and the public interest in vindicating free speech rights favor granting the vacatur.

IT IS THEREFORE ORDERED:

1. The parties' joint motion for vacatur, ECF No. 146, is granted;

2. The court vacates its orders of September 19, 2012, ECF No. 29, and July 29, 2013, ECF No. 126;

3. Defendants' motion to dismiss the second amended complaint, ECF No. 134, is denied as moot; and

/////

/////

/////

    4. The parties are directed to file dispositional documents within thirty days of the date of this order.

DATED: April 8, 2014.

_____
UNITED STATES DISTRICT JUDGE